

IT IS ORDERED

Date Entered on Docket: September 20, 2017

*Robert H. Jacobvitz* (signature)

**The Honorable Robert H Jacobvitz**
**United States Bankruptcy Judge**

---

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW MEXICO

In re:

**LAS UVAS VALLEY DAIRIES,**
a New Mexico general partnership,

        Debtor.

No. 17-12356-11

### ORDER ON DEBTOR'S EMERGENCY MOTION
### FOR AUTHORITY TO USE CASH COLLATERAL

THIS MATTER coming on for emergency hearing on the Debtor's Emergency Motion for Authority to Use Cash Collateral (Doc. No. 4), the Court FINDING:

    a. The motion was filed herein on September 15, 2017, and that notice of the motion and of the preliminary hearing thereon was served on all known Cash Collateral Claimants, on all creditors included on the list filed pursuant to Rule 1007(d), and on the U.S.Trustee, by Debtor in the fashion set out in the certificate of service filed herein by Debtor, and that such notice was adequate under the circumstances;

    b. As more particularly set out in the Declaration of Mitchell Horton in Support of the

Motion, and in such other evidence as was presented at the preliminary hearing, irreparable harm to the estate and Debtor will result if Debtor is not authorized to use cash collateral as provided herein during the period prior to the Court holding a final hearing on an application of Debtor for long term authority to use cash collateral, or such other hearing on cash collateral as any party in interest herein might request and obtain;

c. The creditors Metropolitan Life Insurance Company ("MetLife") and Production Credit Association of Southern New Mexico, a wholly owned subsidiary of Farm Credit of New Mexico, ACA ("FCA"), collectively referred to as "Cash Collateral Claimants" are the only known creditors with claims secured by cash collateral;

d. The interests of the Cash Collateral Claimants in cash collateral can be adequately protected during the emergency authority period, as more particularly set out in the Debtor's motion, and below:

IT IS HEREBY ORDERED as follows:

1. Debtor is authorized to use cash collateral to pay the expenses set out in the exhibit attached hereto, in the amounts provided there, plus up to 10% for any specific expenditure.

Notwithstanding the foregoing provision allowing the debtor to expend up to 10% more than any given line item budget amount, the total of all expenditures shall not be more than 5% of the total of all budgeted amounts, adjusted for any amounts by which the debtor's budget is modified by the terms of this order.

2. The authority granted herein shall remain in effect until the earlier of (1) a subsequent order of this Court, (2) October 16, 2017, at 11:59 pm MDT.

3. Notwithstanding any other provision hereof or in the Debtor's emergency motion, if

2

the Debtor and the Cash Collateral Claimants agree, in writing (including email), to the use of cash collateral for any other business purpose, or in an amount exceeding the amounts specified in the Debtor's emergency motion, Debtor shall be so authorized.

4. Nothing set out or provided for herein shall constitute a waiver of any claim, objection or other right or remedy of any party hereto, or of any other party in interest herein.

5. As adequate protection of the Cash Collateral Claimants' security interests in Debtor's cash collateral assets, the Cash Collateral Claimants are granted post-petition and continuing replacement liens on all similar assets acquired post-petition, and on the proceeds, profits and offspring thereof, with such post-petition liens having the same validity and priority as the liens of the respective Cash Collateral Claimants that existed at the time of the filing of the petition, and with such "replacement" post-petition liens surviving the conversion of this case to chapter seven or the dismissal of this case, with the same validity and priority as the liens that existed pre-petition.

6. As additional adequate protection to the Cash Collateral Claimants, Debtor shall provide the following information to each and take the following actions:

    (a) Debtor will ask Dairy Farmers of America to send MetLife and FCA directly copies of the creamery reports that accompany the Debtor's milk checks, and if the coop will not do so, Debtor will e-mail copies of such reports to Met Life and FCA within three (3) business days.

    (b) Copies of all financial statements and reports prepared by or at the direction of Debtor pursuant to the guidelines established by the United States Trustee for the District of New Mexico within ten (10) days after the report is filed;

3

(c) A monthly herd summary report, in a form reasonably acceptable to MetLife and FCA, covering, among other items, the milk production from the dairy herd, the size and type of the herd, the birth, cull and death rates for the herd, to be provided on or before the fifth day of each month for the prior month;

(d) Within five days of entry of this order Debtor shall provide to MetLife's counsel copies of its monthly financial statements, including balance sheet, income statement, and cash flow statement, and its general ledger for the months of May, June and July, 2017.

(e) Within two days of entry of this order Debtor shall provide to MetLife's and FCA's counsel evidence of general liability and casualty insurance coverage as to the Debtor's real property improvements, equipment, inventory and other personal property.

(f) Debtor shall prepare and send to both MetLife and FCA a "rations report" generated from Debtor's dairy software program for each class of cows in form reasonably acceptable to FCA every two weeks.

(g) Debtor shall prepare and submit to MetLife and FCA a report of the variance between its actual expenditures and the budget amounts set out in Exhibit 1, attached hereto, as such budget amounts are modified by the terms of this order.

(h) Debtor shall prepare and submit to MetLife and FCA reports and information on a monthly basis as required by the respective loan documents and agreements.

7. As additional adequate protection to the Cash Collateral Claimants, each claimant is authorized, on 48 hours notice, to visit and inspect the Debtor's dairy and farming operations.

8. As additional adequate protection to the Cash Collateral Claimants, Debtor shall make

monthly principal and interest payments to MetLife, and weekly interest payments to FCA, as well as payment to FCA of the proceeds of all cattle sales (except Bull Calf sales) as noted below in Paragraph 9b, at the non-default rates provided in the loan documents of each respective claimant, on the respective due dates of such payments. MetLife's and FCA's agreement to the terms of this Interim Cash Collateral Order is without prejudice to, and MetLife and FCA expressly reserve, all rights under that certain Subordination and Intercreditor Agreement and Consent to Encumbrance dated February 26, 2016, executed by the Debtor, MetLife, FCA, and the guarantors of the MetLife Loan.

9. Debtor's cash budget, attached hereto as Exhibit 1, is further modified as follows:

(a). Line item No. 7, is increased by $35,000.00 per week for each of the four weeks to pay for harvesting silage on Debtor's farms.

(b) All proceeds received from September 15, 2017, to October 16, 2017, of Cull Cow Sales, as described in Line Item No. 3 of the budget, and of any other livestock sales, excepting Bull Calf Sales, shall be promptly turned over to FCA and applied to reduce the principal balance of FCA's revolving line of credit loan to the Debtor. FCA. Debtors shall not attempt to delay receipt of those proceeds and shall give FCA written notice (within 3 business days) of when Cattle are shipped and who they are shipped to. The Debtor shall regularly update their "Cattle Shipment Log" (which showed as of September 17, 2017, 289 head shipped but payment not yet received) and provide the same to FCA (within 3 business days of shipping).

(c) Line item No. 17, Partners' Salaries, is reduced to $50,000.00.

(d) Line item No. 1, Milk Sales, is increased to reflect the fact that the Debtor has received the "cheese profit" payment of approximately $387,000.

5

10. Debtor shall not "trade" or otherwise dispose of cattle other than through sales, with the proceeds of those sales being applied as noted in Paragraph 9b, above.

###end of order###

Askew & Mazel, LLC
Counsel for Debtor
s/ submitted electronically
George M. Moore
1122 Central SW, Ste. 1
Albuquerque, NM 87102
(505) 433-3097
Fax: 717-1494
georgemoore@askewmazelfirm.com

Roggow Law, LLC
Counsel for Farm Credit Association of Southern New Mexico
/s approved electronically
James A. Roggow
205 W. Boutz, Bldg. 2, Ste. C
Las Cruces, NM 88005
(575) 526-2448
jaroggow@qwestoffice.net

Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
Counsel for Metropolitan Life Insurance Company
s/ approved electronically, except as to Paragraph 9b
Susan C. Mathews
1301 McKinney Street, Suite 3700
Houston, Texas 77010
Telephone: (713) 650-9700
Facsimile: (713) 650-9701
smathews@bakerdonelson.com

Samuel K. Crocker
United States Trustee
/s approved electronically
Alice N. Page
Trial Attorney
Office of the United States Trustee
P. O. Box 608
Albuquerque, New Mexico 87103

(505) 248-6548 Fax: 248-6558
alice.n.page@usdoj.gov

# Las Uvas Valley Dairies 4 week cash budget

|   | | Week of<br>September 18th | Week of<br>September 25th | Week of<br>October 2nd | Week of<br>October 9th | |
|---|---|---:|---:|---:|---:|---:|
| 1 | Milk Sales | $ 1,700,000 | $ 1,700,000 | | | $ 3,400,000 |
| 2 | Bull Calf Sales | $ 8,500 | $ 8,500 | $ 8,500 | $ 8,500 | $ 34,000 |
| 3 | Cull Cow Sales | $ 70,000 | $ 70,000 | $ 70,000 | $ 70,000 | $ 280,000 |
| 4 | **Total Income** | $ 1,778,500 | $ 1,778,500 | $ 78,500 | $ 78,500 | $ 3,714,000 |
| 5 | Heifer replacements | - | - | - | - | |
| 6 | Silage | - | - | - | - | |
| 7 | Dairy Forage | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 100,000 |
| 8 | Grains & Minerals | $ 282,250 | $ 282,250 | $ 282,250 | $ 282,250 | $ 1,129,000 |
| 10 | Feed Hauling | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 20,000 |
| 12 | Farming | $ 37,500 | $ 37,500 | $ 37,500 | $ 37,500 | $ 150,000 |
| 14 | Farm Credit Interest | $ 28,750 | $ 28,750 | $ 28,750 | $ 28,750 | $ 115,000 |
| 15 | MetLife P/I payment | $ 224,000 | | | | $ 224,000 |
| 16 | Salaries & Wages | $ 128,000 | $ 128,000 | $ 128,000 | $ 128,000 | $ 512,000 |
| 17 | Partners Salaries | $ 60,000 | | | | $ 60,000 |
| 18 | Equipment Lease | $ 106,000 | | | | $ 106,000 |
| 30 | Lab Supplies | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 6,000 |
| 31 | Supplies - Other | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 200,000 |
| 34 | Repairs and Maintenance | $ 40,000 | $ 40,000 | $ 40,000 | $ 40,000 | $ 160,000 |
| 38 | Disposal | $ 3,300 | | | $ 3,300 | $ 6,600 |
| 39 | Electric | $ 60,000 | $ 81,000 | | | $ 141,000 |
| 40 | Gas | $ 57,000 | | | $ 57,000 | $ 114,000 |
| 41 | Phone | $ 4,000 | | | | $ 4,000 |
| 44 | Inspection Fees | $ 950 | $ 950 | $ 950 | $ 950 | $ 3,800 |
| 45 | Employee Health Insurance | $ 24,000 | | | | $ 24,000 |
| 46 | General Liability | $ 41,000 | | | | $ 41,000 |
| 47 | Worker comp Insurance | $ 35,000 | | | | $ 35,000 |
| 48 | Shipping & Freight | $ 400 | $ 400 | $ 400 | $ 400 | $ 1,600 |
| 49 | Fuel and Oil | | $ 35,000 | | $ 35,000 | $ 70,000 |
| 50 | Consulting | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 60,000 |
| 53 | Medicine | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 80,000 |
| 54 | Veterinary and Breeding | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 60,000 |
| 57 | Cattle Hauling | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 16,000 |
| 58 | Miscellaneous | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 40,000 |
| 59 | **Total expences** | $ 1,287,650 | $ 779,350 | $ 663,350 | $ 758,650 | $ 3,489,000 |
| 60 | **Net** | $ 490,850 | $ 999,150 | $ (584,850) | $ (680,150) | $ 225,000 |