UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:
**LAS UVAS VALLEY DAIRIES**,
A New Mexico General Partnership,
    Debtor(s).                                       Case No. **17-12356-t11**

## DEBTOR'S MOTION FOR ORDER AUTHORIZING
## SALE OF COLLATERAL

      The Debtor, through Askew & Mazel LLC, (Daniel J. Behles, of Counsel), its attorneys, hereby requests the entry of order authorizing the sale of collateral outside the ordinary course of business, pursuant to 11 USC 363, and states:

      1.      On October 20, 2017 this Court authorized the debtor's use of cash collateral secured to MetLife and PCA. (Doc. #70, the "Cash Collateral Order"). MetLife and PCA are the only known claimants to cash collateral. PCA has the first lien on cash collateral which is the proceeds of the debtor's livestock and equipment.

      2.      The debtor regularly culls older and lame, sick or diseased cows from its dairy herd. In order to maintain the size of the herd and to maintain the quantity of milk produced, to insure a revenue stream sufficient to operate profitably and make payments under its proposed Ch. 11 Plan to creditors, debtor must obtain replacement cattle for those culled from the herd. The proceeds of culled cattle and bull calves are regularly used, as permitted by the cash collateral order, to purchase replacement cattle, but those proceeds are insufficient to maintain the current size of the herd.

      3.      The Debtor presently has on hand approximately 3500 young heifer calves which are not producing animals. Prior to the filing of the Chapter 11 case the debtor would, in the ordinary course, raise these calves to maturity so that they could be used to replace cattle culled from the dairy herd. Subsequent to the bankruptcy filing the debtor has determined that it lacks

sufficient liquidity to raise these cattle to maturity, since they will be required to be cared for and fed for approximately 24 months, on average, before they can be bred and become producing dairy animals. The debtor estimates it will cost approximately $250,000 per month to raise these existing calves to maturity. In addition, the debtor owns several thousand calf "hutches", shelters used to house the calves from birth until maturity. Many of these hutches are no longer necessary to the debtor's operations if it stops raising heifers to maturity.

4.	In order to obtain the number of cattle necessary to replace the older dairy cows routinely culled from the herd, the debtor proposes to sell the 3500 heifers and 1900 hutches, and use the proceeds to buy springers, older heifers which have been bred, will soon have their first calf and will become producing dairy cattle. The value of the heifers to be sold is approximately $800,000, and the value of the hutches is approximately $285,000. Debtor estimates the proceeds of the sale will be sufficient to purchase approximately 700 springers.

5.	PCA has a first lien on the existing heifer calves and the proceeds thereof, and on the hutches. PCA will have a replacement first lien on the replacement springers purchased with the proceeds. PCA will also have a first lien on the milk proceeds realized from the production of the replacement springers. The value of the replacement collateral (springers and their production) exceeds the value of the collateral (heifer calves & hutches) proposed to be sold. (See Ex. A attached hereto). PCA's collateral value would not be impaired by authorizing the sale of the heifer calves and hutches and the purchase of replacement springers.

6.	The Unsecured Creditors Committee approves of such sales and the purchase of replacement springers. PCA opposes the purchase of replacements by using the proceeds of the young heifers and hutches.

7.	The debtor has already negotiated and can quickly arrange for the sale of the

calves and hutches. It is in the best interest of all creditors to authorize such sales, to eliminate the cost of the care and feeding of these animals, and to use the proceeds to buy replacement springers. The animals to be sold are not milk-producing and do not generate revenue for the debtor's operations, and the replacements will allow the debtor to maintain its revenue stream. The hutches are surplus.

8. Because it will take approximately 45 days after purchase of replacement springers for those animals to become-milk-producing, debtor requests that the Court shorten the time for filing objections.

WHEREFORE the debtor requests the Court to enter an Order approving the section 363 sale of non-producing heifer calves and hutches, and authorizing the debtor to use the proceeds to buy replacement springers, with PCA's lien attaching to the replacement animals; the debtor also requests the Court to shorten the objection deadline and schedule a hearing as soon as possible.

Respectfully submitted:

ASKEW & MAZEL, LLC

/s/ filed electronically
Daniel J. Behles
1122 Central SW, Ste. 1
Albuquerque, NM 87102
505-433-3097 – Fax 505-717-1494
danbehles@askewmazelfirm.com

*Attorneys for Debtor*

I certify that a true copy of the foregoing pleading was served upon all counsel of record in this case via the court's CM/ECF electronic noticing system on the date that this pleading was filed with the Court.

/S/ Daniel J. Behles