# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW MEXICO

IN RE:                                                            No. 17-12356-t11
Las Uvas Valley Dairies.
    Debtor.

## UNITED STATES TRUSTEE'S OBJECTION TO METROPOLITAN LIFE INSURANCE COMPANY, PRODUCTION CREDIT ASSOCIATION OF SOUTHERN NEW MEXICO, AND UNSECURED CREDITORS COMMITTEE'S FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION FILED MAY 9, 2018 (DOCKET NO. 376)

Ilene J. Lashinsky, the United States Trustee for Region 20, in furtherance of her administrative responsibilities imposed pursuant to 28 U.S.C. § 586(a)(3)(B), files this objection to Metropolitan Life Insurance Company, Production Credit Association of Southern New Mexico, and Unsecured Creditors Committee's First Amended Chapter 11 Plan of Liquidation filed May 9, 2018 ("the Plan") (Doc. No. 376). In support of her objection, the U.S. Trustee respectfully states as follows:

1. On September 15, 2017, Las Uvas Valley Dairies ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code and has since acted as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. Pursuant to 28 U.S.C. § 586(a)(3), the U. S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the U. S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d

294, 295-96 (3d Cir. 1994) (noting that the "U. S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the "U. S. Trustee as a "watchdog"). Pursuant to 28 U.S.C. § 586(a)(3)(B), the U. S. Trustee has the duty to monitor plans and disclosure statements filed in Chapter 11 cases and to comment such plans and disclosure statements.

4. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on this objection.

## FACTUAL BACKGROUND

5. On May 9, 2018, Metropolitan Life Insurance Company, Production Credit Association of Southern New Mexico, and Unsecured Creditors Committee filed the Metropolitan Life Insurance Company, Production Credit Association of Southern New Mexico, and Unsecured Creditors Committee's First Amended Chapter 11 Plan of Liquidation ("the Plan") (Doc. No. 376). The Plan is the seventh plan or amended plan filed in this case.

6. The Plan provides for the transfer of the Debtor's assets to a Liquidating Trust to be sold by a liquidating trustee and a minimum $1,000,000.00 distribution to unsecured creditors. The liquidating trustee will be authorized to operate the Debtor's dairy business pending the sale of the livestock. All livestock will be auctioned within 45 days of the Effective Date, and all remaining personal property (inventory and equipment) will be auctioned within 45 days of the confirmation date. The Debtor's real property will be immediately listed for sale with a broker after the Confirmation Date, and will be marketed for 8 months. If the real property has not been sold by the end of the marketing period, it will be auctioned by a broker pursuant to the terms and conditions of the sale procedures outlined in the plan. Sale proceeds are to be paid to secured creditors first. With regard to the Class 8 unsecured creditors, a distribution of at least $1,000,000 will be made on or before September 30, 2018.

2

The initial distribution will be comprised of proceeds obtained by the sale of unencumbered assets (a residence and titled vehicles), plus any amounts needed to reach the amount of $1,000,000, which amounts will be funded by MetLife and Production Credit.

## **PLAN OBJECTIONS**

7. The plan proponent has the burden of demonstrating that all of the requirements of 1129(a) are met. *In re Revco, Inc.*, 131 B.R. 615, 620 (Bankr. N.D. Ohio 1990). Requirements of confirmation include:

   (1) The plan complies with applicable provisions of this title.

   (2) The proponent of the plan complies with the applicable provisions of this title.

   11 U.S.C. § 1129(a)(1), and (2).

### **Post-Confirmation Management**

8. The Plan must disclose and the court must approve the identity and affiliations of any individuals who will serve as post-confirmation management not only of the debtor, but also of "a successor to the debtor under the plan." 11 U.S.C. § 1129(a)(5)(A-B).

9. Although the identity of the Liquidating Trustee is provided in section 8.01 of the Plan, the compensation payable to the liquidating trustee is not described or detailed in the Plan. The Liquidating Trust Agreement is attached to the Plan as Exhibit A and provides on page 15 in paragraph 6.1 the "[t]he Liquidating Trustee will be compensated for his or her services as Liquidating Trustee on an hourly basis, the following hourly rate:_____. The Liquidating Trustee may also utilize other attorneys or staff of his Firm at the rates set forth in the schedule. The Liquidating Trustee may pay from the Liquidating Trust Assets reasonable salaries of employees, fees and expenses of the Liquidating Trustee." The

3

figure for the hourly rate is not provided, and no schedule of attorneys or other staff and their applicable billing rates is attached to Exhibit A.

## Best Interests of Creditors Test

10. Section 1129 of the Bankruptcy Code provides in pertinent part that:

   (a) The court shall confirm a plan only if all of the following requirements are met:

   **(7)** With respect to each impaired class of claims or interests—

   **(A)** each holder of a claim or interest of such class—

   **(i)** has accepted the plan; or

   **(ii)** will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

   11 U.S.C. §1129(a)(7)(A). The Plan provides for a guaranteed $1 million distribution to the Class 8 unsecured creditors, but the liquidation analysis included as Exhibit C to the Amended Disclosure Statement For Metropolitan Life Insurance Company, Production Credit Association of Southern New Mexico, and Unsecured Creditors Committee's First Amended Chapter 11 Plan of Liquidation filed on May 9, 2018 (the "Disclosure Statement") (Doc. No. 377) stated that the estimated amounts for distribution to the general unsecured creditors was $1,227,483.04. At this point, the Court has not yet determined whether this class has accepted the Plan. If this class does not accept the Plan, it will be necessary for the Plan to meet the requirements of Section 1129(a)(7)(A), as the unsecured creditors may not receive at least what they would receive in a Chapter 7 liquidation.

## Exculpation and Release Provisions

11. An exculpation provision is a limited form of release and is intended to shield retained professionals and estate fiduciaries, including creditors' committees, from liability to both

4

debtors and non-debtors for certain conduct taken during a chapter 11 case. *See In re Exide Technologies*, 303 B.R. 48, 74-75 (Bankr. D.Del. 2003); *In re Tribune Co.*, 464 B.R. 126, 189 (Bankr. D. Del. 2011). Non-fiduciaries, including secured creditors and creditor plan proponents are excluded from protection and release under exculpation clauses in Chapter 11 plans. *In re Midway Gold US, Inc. et al*, 575 B.R. 475, 513 (Bankr. D. Colo. 2017); *In re Tribune Co.*, 464 B.R. at 189.

12. The Plan's exculpation provision in section 12.3 states that "[t]he Plan Proponents, together with its officers, directors, employees, agents, representatives and professionals, shall have or incur no liability to any of the (a) Debtor, (b) each person who has filed a proof of claim, (c) each person that has held or now holds a claim or interest and who has received notice of this Bankruptcy Case, for any act or omission, in connection with, or arising out of, the Bankruptcy Case, the pursuit of Confirmation of this Plan, or the consummation of this Plan." Not only does the Plan seek to exculpate non-fiduciaries from a broad range of claims without any exception for actions involving willful misconduct or gross negligence, but it arguably seeks to extend the exculpation to prepetition and post-confirmation conduct as well. These broad release, discharge and exculpation provisions violate Tenth Circuit law and the Bankruptcy Code. *In re Western Real Estate Fund, Inc.*, 922 F.2d 592, 600 (10th Cir.1990*), modified on rehearing sub nom.*, *Abel v. West*, 932 F.2d 898, 899 (10th Cir. 1991); *In re Midway Gold US, Inc. et al*, 575 B.R. at 510-514.

**Personal Property Auction and Dairy Equipment**

13. The Plan provides in section 2.4 that all Personal Property is to be auctioned within 45 days of the Effective Date. The Disclosure Statement provides on page 1 that "This [auction of Personal Property] does not include any milking equipment at Las Uvas Dairies and any

5

irrigation equipment which are part of the MetLife collateral". The Plan does not include this limitation in sections 2.4 and 2.5, so if this is the Plan Proponents' intent, the Plan should be modified or amended to so provide.

**Attorney Fees and Other Costs of Class 3 and Class 4 Claims**

14. The Plan description of the Class 3 claim of MetLife is as follows: "The Allowed Secured Claim of MetLife ("Allowed MetLife Claim") includes the following: (i) principal, accrued interest and the yield maintenance fee in the aggregate amount of $28,187,302.33 as of the Petition Date; plus interest at the non-default rate of 4.65% per annum accrued from the Petition Date to the Closing Date, plus post-petition reasonable attorney's fees and costs as may be applicable; less (ii) adequate protection payments made prior to the Closing Date and proceeds received by MetLife from the sale(s) of any Real Property to the Effective Date. " The Plan provides that MetLife "shall be paid from the Net Proceeds from the sale of the Real Property, within 14 days after the Closing Date" and receive " payments of $223,948.77 on the 5th day of each month on the first month following the Confirmation Date through the date of receipt of the final check for Milk Proceeds."

15. The Plan description of the Class 4 claim of PCA in section 4.4 is as follows: "The Allowed Secured Claims of Production Credit ("Allowed Production Credit Claim") includes the following: (i) principal and interest in the amount of $17,016,650.42 as of the Petition Date; interest at the non-default rate of 7.95% per annum accrued from the Petition Date to the Sale Date, plus post-petition reasonable attorney's fees and costs as may be applicable, and less (ii) adequate protection payments made prior to the Sale Date and proceeds received by Production Credit from the sale of any of its collateral prior to the Effective Date." The Plan provides in section 4.4 that the Class 4 claim "shall be paid from the Net Proceeds from the

sale of the Production Credit Collateral, within 14 days after the Sale Date" and "Production Credit shall receive payments of $110,000.00 on the 5th day of each month on the first month following the Confirmation Date until the Production Credit Collateral is sold."

16. Neither MetLife nor PCA have stated in the Plan whether their claims are fully secured, oversecured, or undersecured. If these claims are undersecured, MetLife and PCA are not entitled to payment of Post-petition interest, attorneys' fees, and costs. *See* 11 U.S.C. §506(b). The Plan contemplates the possibility that MetLife and PCA may be undersecured, as described in sections 4.3 and 4.4.[1]

### Distribution of Water Rights Litigation Proceeds

17. The Plan also describes the litigation pending in an adversary proceeding concerning the perfection or non-perfection of MetLife's lien on certain water rights but does not clearly indicate what happens to any proceeds from avoidance of MetLife's lien on the water rights if the Litigation Committee is successful in the litigation. The Water Rights Avoidance Action Claim could result in at least another $1 million or more available for distribution to creditors under the Plan,[2] so the distribution of these proceeds should be made explicit in the Plan.

---

[1] Section 4.3 states that "[i]f the Property does not sell for an amount in excess of the Allowed MetLife Claim, the Net Proceeds of the Sale will be paid to the holder of the Class 3 Allowed Secured Claim, and the balance of the Allowed Claim in Class 3, as provided by the Bankruptcy Code, will be included in Class 8 and paid as provided for Allowed Claims in such Class. Section 4.4 states that "If the Property does not sell for an amount in excess of the Allowed Production Credit Claim as provided herein, the Net Proceeds of the Sale will be paid to the holder of the Class 4 Allowed Secured Claim, and the balance of the Allowed Claim in Class 4, as provided by the Bankruptcy Code will be included in Class 8 and paid as provided for Allowed Claims in such Class."

[2] The Disclosure Statement stated that in connection with the Debtor's sale of the Columbus Farm, the order approving the sale required "if the Court enters an order in the Adversary Proceeding which determines that the water rights being sold from this sale is avoidable, MetLife shall, within 30 days thereof, pay to the registry of the Court $1,000,000, which shall be disbursed upon further order of the Court" and "[t]he order approving sale also provided that it is without prejudice to any party with regard to the value of the water rights or the proper allocations of the proceeds of the sale of the Columbus Farm property." Disclosure Statement, pages 17-18.

## Payment of Administrative Expenses

18. The treatment of administrative expenses is contrary to the requirement of § 1129(a)(9)(A) that the expenses be paid in full on the effective date. The Plan provides in section 5.3 that administrative expense claims would be paid as follows:

"Allowed Administrative Claims (excluding Professional Fee Claims) shall be paid from the Debtor's Available Cash and Trustee's Available Cash, subject to the security interests of MetLife and Production Credit as provided herein**.** Each Holder of an Allowed Administrative Claim against the Debtor shall receive the amount of their Allowed Administrative Claim on the earlier of (i) the Effective Date for Administrative Claims approved by the Bankruptcy Court prior to the Confirmation Date, **to the extent of available funds**; or (ii) within 30 days after such an Administrative Claims becomes an Allowed Administrative Claim **subject to available funds**; or (iii) according to such terms are as agreed upon by the holder of the Administrative Claim; provided, however, that the payment of an Allowed Administrative Claim representing a right to payment under Sections 365(b)(1)(A), 365(b)(1)(B), or 365(d)(3) of the Bankruptcy Code may be made in one or more Cash payments over a period of time as the Bankruptcy Court determines to be appropriate."

19. The Disclosure Statement states on pages 16 and 17 (Administrative Claims) that the estimated unpaid professional fees are $353,000 and allowed Section 503(b)(9) claims are $197,823.94, which totals $550,823.94. In addition, $72,398.09 is owing for additional quarterly fees for the first quarter of 2018 (due to the closing in March of the sale of the Columbus Farm and distribution of the net proceeds), and quarterly fees will be owing shortly after the Effective Date for the second quarter of 2018. Based on the April monthly operating report showing disbursements of approximately $3.9 million for the month, the total disbursements for the second quarter could be $11 million to $12 million, resulting in the a quarterly fee for the second quarter of $110,000 to $120,000.[3] The Administrative Claims could exceed $730,000 based on these figures alone.

---

[3] See 28 U.S.C. § 1930(a)(6) as amended, effective January 1, 2018. Monthly disbursements per the monthly operating reports have been in the range of $3.9 to $4 million. The quarterly fee for disbursements of $1 million or more for the quarter is 1% of disbursements or $250,000, whichever is less. The Plan contemplates operating the dairy for a short period after the Effective Date.

20. The Plan contemplates that the case will not be closed by a final decree for more than 120 days after the Effective Date, as section 5.1 provides for a 90 day deadline for filing administrative claims, with a 30 day objection deadline, and section 7.5 provides for the deadline of 120 days after the Effective Date to file claims objections. If the Chapter 11 case is still open on September 30, calculation of quarterly fees will include disbursement of the $1 million Initial Distribution and the sales proceeds of the estimated $17,258,600 Personal Property, as well as any Real Property sales proceeds disbursed on or before September 30.[4]

21. The Class 8 unsecured claims are to be paid the guaranteed Initial Distribution on or before September 30, 2018. "On or before" could mean potentially any time after confirmation of the Plan, including a date prior to the date when the administrative expenses are paid. Unsecured creditors should not be paid prior to payment of administrative expense claims.

22. Since MetLife is providing Exit Financing in the maximum amount of $750,000, it is possible that there may be a shortage of funds available to pay administrative and priority claims under the Plan.

## Technical Objections

23. The definition of MetLife Exit Financing makes reference to section 2.2 of the Plan. Section 2.2 of the Plan describes certain expenses that may be paid from the MetLife Exit Financing, but section 7.2 (Funding for Plan Payments) provides in more detail what may be paid from the MetLife Exit Financing, as well as the terms of such financing. The definition of MetLife Exit Financing should also include reference to section 7.2 of the Plan.

24. The Plan contains terms that appear to be defined terms but are not included in the defined terms in article 1. These include: Plan Document (sections 3.1 and 14.7), Professional Fee

---

[4] The liquidation analysis attached to the Disclosure Statement as Exhibit C estimates Personal Property at $17,258,600 and Real Property at $20,679,375.

9

Claim[5] (sections 5.1, 5.4), and GUC Fund (section 7.5(g) and (h)). Including definitions for these terms would make the Plan clearer.

25. The Plan does not provide that adequate notice will be provided to executory contract rejection claims or unexpired lease rejection claims. Instead, it provides in section 10.2 that such claimants have thirty days after receipt of notice of rejection to file a claim and that "[s]ervice of a copy of this Plan, after filing, on the lessor under any Executory Contract or Lease rejected under this Plan shall constitute notice of rejection of such Executory Contract or Lease not expressly assumed herein." A separate notice of rejection should be provided to such creditors to provide adequate notice both of rejection and the bar date for filing rejection claims.

WHEREFORE, the United States Trustee respectfully requests that the Court deny approval of the Plan unless and until it is amended or modified for the reasons set forth above, and for such other and further relief as this Court deems just and proper.

    ILINE J. LASHINSKY
    United States Trustee

    <u>/s/ electronically filed on June 5, 2018</u>
    ALICE NYSTEL PAGE
    LEONARD MARTINEZ-METZGAR
    Trial Attorney
    Office of the U.S. Trustee
    P.O. Box 608
    Albuquerque, NM 87103
    (505) 248-6550 and (505) 248-6548

---

[5] "Professional" and "Fee Application" are defined.

CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2018, a true and correct copy of the foregoing pleading was electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

s/ Alice Nystel Page
Alice Nystel Page