# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re: LAS UVAS VALLEY DAIRIES,
a New Mexico General Partnership

        Case No. 17-12356-11

    Debtor.

## MARCUS' OBJECTION TO DONA ANA COUNTY'S MOTION TO AMEND PROOF OF CLAIM AND FOR ADMINISTRATIVE EXPENSES

    Plaintiff Robert Marcus, not individually but solely in his capacity as Liquidating Trustee of the Las Uvas Valley Dairies Liquidating Trust, ("Marcus") by and through his attorneys Modrall Sperling Roehl Harris & Sisk, P.A. (Paul M. Fish) objects to the Dona Ana County Treasurer's ("DAC Treasurer") Motion to Amend Proof of Claim and Application for Payment of Administrative Expenses [Doc 586] ("Motion to Amend and Application").

    DAC Treasurer's application to amend his proof of claim must be denied. The Motion does not even purport to show excusable neglect or that the original proof of claim gave adequate notice of the new claim. DAC Treasurer's argument is that there are no 2017 pre-petition personal property taxes owed. He asserts they were all post-petition. That is simply wrong.

    DAC Treasurer's argument on the post-petition claims must also fail. The "gating issue" that must be addressed before any substance of the purported claims – whether the post-petition claims are barred as *res judicata* based on the DAC Treasurer's inarguable receipt of all notices of the plan – resolves the issue.

    The DAC Treasurer's interpretation of the Plan is also misplaced. DAC Treasurer lists the provisions that allow the Liquidating Trustee to pay taxes, but it ignores the key provision that specifies how tax and all other administrative claims **must be asserted**. Moreover, if the argument on the 2017 personal property taxes is correct (which it is not), the estate incurred no 2018 personal

property taxes because the cattle were all sold prior to September of 2018. The estate cannot be taxed on something it did not own.

### I. DAC Treasurer Timely Received All Plan Documents and Accepted All Payments Provided for Under the Plan

The Court should deny the Motion to Amend and Application because the DAC Treasurer admits that it timely received all requisite plan documents and accepted all payments from the Debtor provided for under the Plan. On May 27, 2020, the Court entered the *Order Relating to Cross-Motions for Summary Judgment on Dona Ana County's Proof of Claim* [Docket No. 585] (the "Order"). Paragraph 6 of the Order outlined items the Court will require the parties to address at the hearing on the Motion to Amend and Application. The first substantive topic (after two procedural inquiries) is "Whether the County disputes receipt of the chapter 11 plan, disclosure statement, notice of deadline to object, and confirmation order." Order, at ¶ 6.

Based on the applicable U.S. Supreme Court precedent and supporting law from this district, the Court's inquiry should end and it should deny the Motion to Amend and Application upon the DAC Treasurer's admissions thatthe DAC Treasurer timely received all of the relevant plan documents. This inquiry, as shown by the Order, is the "gating issue" as to whether any further inquiry is necessary as, based on the cases cited in the Order, the Motion to Amend and Application and barred by *res judicata*. *See United Student Aid Funds, Inc., v. Espinosa*, 559 U.S. 260 (2010).

The Court *In re Otero County Hosp. Assoc.*, 560 B.R. 551 (Bankr. D. N.M. 2016), citing to *United Student Aid Funds, Inc., v. Espinosa*, could not have expressed this proposition more clearly:

> Even if a plan contains provisions contrary to the requirements of the Bankruptcy Code, the provisions of a confirmed plan are binding and enforceable, provided all parties in interest had sufficient notice and an opportunity to object and the order confirming the plan is a final order not stayed pending appeal.

2

*Otero County Hosp. Assoc.*, 560 B.R. at 561 (citing *United Student Aid Funds, Inc., v. Espinosa*, 559 U.S. 260 (2010)).

DAC Treasurer received notice of the Plan, did not object to the Plan. *See* Plan, at § 4.5 ("The Real Property shall be sold, and the Class 5 Claims [of DAC Treasurer] shall be paid from the Net Proceeds from the sale of the Real Property securing the respective secured tax claim, within 30 days after the Closing Date"); *compare* Motion to Amend and Application, at ¶ I.c ("On March 22, 2019, DAC Treasurer received a check from Las Cruces Abstract and Title Company in the amount of $339,611.59 for payment in full of all taxes, interest, and penalties owed by Debtors on all the real estate and the two mobile homes."). As dictated by the U.S. Supreme Court and supporting case law in this district, the DAC Treasurer is now barred from challenging the terms of the Plan or attempting to file an administrative claim.

DAC Treasurer does not dispute that a confirmed Plan is *res judicata*. He also admits the Plan is clear and unambiguous. The underlying basis of his argument appears to be merely that taxes are inevitable and governmental units are not bound by court decisions. He then tries to argue that various Plan provisions will override the requirement that he was required to timely file an application for the administrative claim. Those efforts all fail.

The 2018 personal property taxes became the "personal obligation" of the bankruptcy estate on January 1, 2018. NMSA §7-38-47 and NMSA §7-36-21.A. The Plan was confirmed on June 14, 2018. Doc 440. The Plan became effective June 17, 2018. The personal property taxes for 2018 (and 2017) were not taxes incurred by the Liquidating Trustee. They were post-petition but pre-confirmation taxes.

The term "Administrative Claim" is defined in Article I, p. 2, to include "any cost or expense of administration of the Bankruptcy Case arising or allowable under Section 503(b) of the

3

Bankruptcy Code . . ." Section 503(b)(1)(B)(i) specifically lists property taxes as one of the types of taxes covered by §503(b). DAC Treasurer is asserting an Administrative Claim.

The Plan then provides on p. 2, "'Allowed Administrative Claim' means any Administrative Claim which is an Allowed Claim, provided however that a Holder of any Administrative Claim arising prior to the Effective Date[1] . . . **must** file a request for payment . . . in order for such Administrative Claim to be considered as an Allowed Administrative Claim." (Emphasis added)

Article X, §5.1 requires the filing of the Administrative Claim. DAC Treasurer has finally done so, but it is too late.

The Plan provisions cited by DAC Treasurer do not change the result.

Article VIII, §8.2 of the Plan provides the first duty of the Liquidating Trustee is act for the benefit of Creditors holding Allowed Claims. DAC Treasurer does not hold such a claim. The subsection cited regarding preparing tax returns does not apply. There is no tax return for property taxes. The section also provides that the Liquidating Trustee is to "object to Disputed Claims." Section 7.5(a) states in bold in the original, "**Notwithstanding any other provision of the Plan, no Cash or other property shall be distributed under the Plan on account of any Disputed Claim . . .**" The claim of DAC Treasurer is a "Disputed Claim" as that term is defined in the Plan.

Article V applies to "All Administrative Claims" Section 5.1 requires the Holder of an Administrative Claim to file an application for that claim. It states, "Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged."

The provisions regarding the payment by the Liquidating Trustee or the Liquidating Trust paying taxes they incur are not relevant. The personal property tax was incurred long before the

---

[1] The Effective Date of the Plan was three days after the Order confirming the Plan was entered on June 14, 2018, or June 17, 2018. As explained above, the 2018 tax obligation arose January 1, 2018, prior to confirmation.

4

Plan was confirmed, Liquidating Trustee was appointed, or the Liquidating Trust was created. By November of 2018, when the lien for property taxes would have attached, according to p. 5 of the Motion to Amend and Application, the livestock had long been sold and was no longer property of the Liquidating Trust.

The facts here are a good example of why the Plan required the filing of an application for payment of an administrative claim. The Liquidating Trustee was liquidating the assets and, when the liquidation of the livestock (the subject of the personal property tax claim) and other assets was completed, he entered into negotiations with the secured creditors. Had DAC Treasurer properly filed his personal property tax claim, his doing so would have reduced the amount to be paid to the secured creditors on their secured claims. Now that DAC Treasurer has belatedly come forward, the Liquidating Trustee has no ability to reverse the clock and recover money from Metropolitan Life Insurance Company ("MetLife"). If the tax claim is required to be paid – which it should not be paid – it will all come at great prejudice from the unsecured creditors and will result in a substantially smaller distribution than if DAC Treasurer had properly and timely filed his administrative claim in compliance with the Plan.

The Liquidating Trustee is obligated to pay taxes he incurs, but he did not incur these taxes. They were personal obligation to incur the taxes arose when the debtor was in the middle of its contested Chapter 11 proceeding on January 1, 2018.

The inclusion by DAC Treasurer of the duty of the Liquidating Trustee to "(c) Enforce all provisions of the Plan;" as he quotes on page 11 of the Motion to Amend and Application is relevant. The Plan provides for payment of "Allowed Administrative Claims" in Section 5.2 on page 24, but there is no provision for paying Administrative Claims that were not timely filed and allowed. Payment of such would violate the Plan.

5

The reference to the obligation of the Liquidating Trustee to pay all taxes imposed on the Liquidating Trust or its assets is not relevant. As detailed below, the personal property taxes were imposed as a personal obligation of Las Uvas Valley Dairies on January 1, 2018. The Liquidating Trustee was not appointed until almost six months later. DAC Treasurer has not asserted a lien on the livestock.

The 2018 personal property tax became the "personal obligation" of Las Uvas Valley Dairies on January 1, 2018, in the midst of the on-going Chapter 11 case. The Plan very sensibly required that any party seeking an administrative claim must file an application so the Liquidating Trustee could respond to it appropriately. In this case, had DAC Treasurer filed its claim timely, then payment could have been made without prejudice to the unsecured creditors. For that matter, had the secured creditors been paid in full, the delay would not have prejudiced the unsecured creditors. In this instance, however, when MetLife was not paid in full but did receive all of the proceeds of the liquidation, the late claim of DAC Treasurer is prejudicial.

The original Response [Doc 570] filed by DAC Treasurer to the Partial Objection to Claim filed by Marcus argues in paragraph 5 on page 2 that "the Debtors have had actual knowledge since the inception of these proceedings" of the personal property claim. That makes the point. The Liquidating Trustee is not the Debtor. In fact, the Plan was confirmed over vehement objections by the Debtor [Doc 416] and the Hortons individually [Doc 417]. Marcus is currently suing the Hortons individually in Case No. 19-01077-t and Case No. 20-01004-t. The Liquidating Trustee has not been able to rely on the cheerful cooperation of the Hortons as he performs his duties, and the Plan recognized that possibility. It was crucial that the Liquidating Trustee, a newcomer to Las Uvas Valley Dairies, be provided the information for all claims so the estate could be properly administered. Parties seeking money from a bankruptcy estate, even

6

governmental entities, must pay attention for the system to work. DAC Treasurer failed to do so, and it is now too late. He cannot prejudice the other parties by his negligence.

## II. Types of Taxes Claimed, Paid and Still Owed

The DAC Treasurer recitation of facts establishes that for 2016, the personal property tax on the "large inventory of livestock" was $8,877.22. §I.a. and Exhibit A to Motion to Amend and Application. The amount DAC Treasurer still claims is solely for personal property taxes on the livestock. §1.b. of Motion to Amend and Application.

## III. The Motion to Amend the Proof of Claim and the Application Must be Denied.

The Motion to Amend and Application asserts as a primary position that the 2017 personal property taxes are post-petition, but they are not, as explained below. That primary position must fail.

The "alternative position" that DAC Treasurer is entitled to an administrative claim also must fail, even if it is for the 2017 as well as 2018 personal property taxes.

## IV. The 2017 Personal Property Taxes Are a Pre-Petition Claim.

DAC Treasurer properly filed his claim for the 2017 real property taxes as a pre-petition claim. He failed to include the personal property taxes so he now argues he was wrong to file Proof of Claim #16. The law is clear that both the 2017 real and personal property tax claims are pre-petition claims.

Dropping any substantive claim that he should be allowed to amend Proof of Claim # 16, the Motion to Amend and Application argues that the 2017 personal property taxes are post-petition rather than pre-petition.

The detailed analysis by DAC Treasurer of the various tax statutes fails to discuss the key part of the key statute that answers the question. In the Order Relating to Cross-Motions for

7

Summary Judgment on Dona Ana County's Proof of Claim [Doc 585], the Court in ¶6, fifth bullet point asked the parties to be prepared to address, "The accrual date of New Mexico real and personal property taxes, i.e., **the date the taxpayer first become liable for the tax.**" (Emphasis added.) The answer is the combination of two statutes as follows:

"Property taxes imposed are the **personal obligation** of the person owning the property **on the date on which the property was subject to valuation for property taxation purposes . . ."** NMSA §7-38-47 (emphasis added).

"A. All livestock located in the state on January 1 of the tax year shall be valued for property taxation purposes as of January 1." NMSA §7-36-21.

The valuation date is determinative because the statute specifies that the property taxes become the personal obligation of the property owner – the tax obligation is incurred – on the valuation date.

The New Mexico statute is essentially identical to the Texas statute quoted by DAC Treasurer. In Texas, quoting Tex. Tax Code §32.07(a), DAC Treasurer tells us, "property taxes are the personal obligation of the person who owns or acquires the property on January 1 of the year for which the tax is imposed." In New Mexico, that is modified slightly. As stated above, the New Mexico statute states, "Property taxes imposed are the personal obligation of the person owning the property on the date on which the property was subject to valuation for property taxation purposes. . ." NMSA 7-38-47. Here in New Mexico, we require the court to then look at another statute, NMSA §7-36-21.A. to see that for livestock, that date is January 1. A little longer, but same result.

DAC Treasurer's reliance on *City of White Planes v. A&S Galleria Real Estate, Inc., (In re Federated Dep't Stores, Inc.)* 270 F.3d 994 (6th Cir. 2001) is misplaced. As the decision notes, the date that the tax debt is incurred is a question of state law. The Court found, "As previously

8

discussed, under New York law, an owner of property does not become liable for real property taxes on the tax status date. . . . Personal liability for the tax does not occur until the taxes are levied." *City of White Planes v. A&S Galleria Real Estate, Inc., (In re Federated Dep't Stores, Inc.)* 270 F.3d at 1005.

In New Mexico, that the taxes are the "personal obligation of the person owning the property on the date on which the property was subject to valuation for property tax purposes" NMSA §7-38-47, which is January 1 of the tax year. Different state laws result in different results when state law is determinative.

DAC Treasurer argues that the tax debt is not a lien until November 10, but the issue on the date the taxpayer became obligated for the tax is not when the lien was created. Although relevant to show that when a lien could have been created for the 2018 tax the Liquidating Trust no longer owned the livestock (see below), it is not relevant to the issue of the date the taxpayer first became liable for the tax.

DAC Treasurer argues that the tax is not delinquent until December 10, but many claims in bankruptcy are not delinquent when the petition is filed, but they are still pre-petition claims. DAC Treasurer's reference to §101(5)(A) fails to note that the sentence includes "unliquidated" and "unmatured" obligations as claims.

The 2017 personal property tax became the personal obligation of Las Uvas Valley Dairies on January 1, 2017, so it is a pre-petition claim.

**V.     DAC Treasurer Cannot Amend Proof of Claim # 16.**

The criteria for amending a proof of claim after the bar date was explored in detail in the prior briefing by Marcus in his Memorandum Brief [Doc 581] in opposition to the DAC Treasurer's motion for summary judgment and in support of Marcus' motion for summary

9

judgment *see* pp. 10-14[2] and Marcus' Reply Brief [Doc 584], *see* pp.4-7.[3] The Tenth Circuit identified the factors to allow an amendment after the bar date in *Tanaka Brothers Farms v. Berger,* 36 F.3d 996 (10th Cir. 1994). DAC Treasurer cannot meet those tests and should not be allowed to prejudice the unsecured creditors of this bankruptcy estate, who would have been better off if DAC Treasurer had properly filed his claim and timely filed an administrative claim than if the Court now allows them.

Further, DAC Treasurer apparently has abandoned any assertion of excusable neglect. Even if he had not abandoned the assertion, he cannot meet that standard either. The Motion to Amend and Application makes no effort to show excusable neglect to amend the Proof of Claim # 16. That Proof of Claim included $8,877 of personal property taxes for 2016 but included no personal property taxes for 2017. The Affidavit of Ms. Barraza previously filed [Doc 582-1] proves that DAC Treasurer knew of the bankruptcy, flagged the personal property tax accounts, and then simply ignored those accounts when it filed its proof of claim. There is no excusable neglect.

## VI. DAC Treasurer Misunderstands *United Student Aid Funds, Inc., v. Espinosa*

The United States Supreme Court ruled in *United Student Aid Funds, Inc., v. Espinosa*, 559 U.S. 260, 130 S.Ct. 1367 (2010) that even though the bankruptcy court had not found undue hardship justifying the discharge of the student loan, the confirmation order discharging that debt was *res judicata* and binding. The student loan was discharged. The confirmation of a plan is *res judicata* just like any court judgment. If the judgment is "wrong" the remedy is a timely appeal, not merely ignoring the judgment. The same is true with the confirmation of a plan.

---

[2] Marcus incorporates herein his prior Partial Objection to Claim [Doc 566] and Marcus' Memorandum Brief in Opposition to DAC Treasurer's Motion for Summary Judgment and in Support of His Motion for Summary Judgment [Doc 581], and Marcus' Reply Brief in Support of His Motion for Summary Judgment [Doc 584].

[3] At the time of that briefing, it was no clear that the $8,877.22 of 2016 taxes was for personal property taxes. The Motion to Amend and Application clarifies in Section I.a. on page 1 that it was for personal property taxes. That claim did not give notice of the "amount" of the taxes DAC Treasurer now asserts for 2017.

10

That is why the "legal imperatives" cited by DAC Treasurer are overruled. The proper avenue for DAC Treasurer would have been an objection to confirmation and, if his objection was overruled, an appeal of the confirmation order, not an ignoring of the Plan provisions and now asking this Court to overrule the Plan.

### VII. DAC Treasurer Misunderstands *In re Otero County Hospital Association*

DAC Treasurer attempts to distinguish the dealing with the claim of Cody Landrum by relying on the "statutory privilege" that the Plan set aside. Again, DAC Treasurer fails to heed the lesson that the confirmation of the Plan overrides any contrary statute. This case is analogous to *In re Otero County Hospital Association*, and the claim must be denied.

### VIII. Equity Does Not Trump the Plan, But Equity Would Deny the Claim.

As discussed above, allowing the claim of DAC Treasurer would prejudice the unsecured creditors of LUVD. They would be worse off than if DAC Treasurer had properly asserted its claim. Also, it is still unknown why the personal property tax claim skyrocketed up from the 2016 amount. The Liquidating Trustee simply does not know why or how that happened.

In any event, the proper administration of a liquidation requires that the party distributing money to claimants be able to rely on the claimants following proper procedures. Otherwise chaos results.

### IX. Incorporation of Previous Pleadings

Marcus also incorporates the previous pleadings filed in this contested matter and asks the Court to take judicial notice of the pleadings in the docket.

### X. Conclusion

The 2017 personal property taxes became the "personal obligation" of Las Uvas Valley Dairies January 1, 2017, almost nine months before the bankruptcy was filed. They are a pre-petition claim. DAC Treasurer failed to file any proof of claim for the 2017 pre-petition personal

11

property taxes. His application to amend must be denied under *Tanaka* and because of a total failure to show excusable neglect.

Similarly, the post-petition claim for 2018 personal property taxes (and the claim for 2017 personal property taxes if the Court finds they are post-petition rather than pre-petition) must be denied. The Amended Plan overrode any statute contrary to its terms, and the Court has no justification to ignore the Plan terms that are *res judicata.*

A ruling that a governmental unit is not bound by bar dates or confirmed plans of reorganization would result in chaos. As in this case, the bankruptcy process requires that those paying creditors with scarce resources be able to rely on the obligation of those seeking some of those scarce resources to pay attention. As in this case, too often the distribution already made cannot be done over when a delinquent claimant finally decides to come forward. The bankruptcy process requires that parties comply with the rules.

It bears repeating once again. As a fiduciary of the bankruptcy estate of LUVD, Mr. Marcus believes that he would be prejudiced by such a serious reduction in the amount to be distributed to the unsecured creditors. He takes his obligations to those parties very seriously and considers damage to them as damage to himself. He also feels it would be unjust to give DAC Treasurer a windfall when it ignored Orders of this Court and merely sat on its hands doing nothing, to the prejudice of the unsecured creditors.

WHEREFORE, Robert Marcus not individually, but solely as the Successor Trustee of the Las Uvas Liquidating Trust, prays that the Court determine that Dona Ana County Treasurer, has no further claims against the LUVD bankruptcy estate other than for $8,877.22, denying the Motion to Amend and denying the Application for an Administrative claim.

Respectfully submitted,

                                **MODRALL SPERLING ROEHL HARRIS & SISK, P.A.**

                                By:      */s/ Paul M. Fish*
                                    Paul M. Fish
                                    500 Fourth Street, N.W., Suite 1000
                                    P.O. Box 2168 (87103-2168)
                                    Albuquerque, New Mexico 87102
                                    (505) 848-1800
                                    *Attorneys for the Robert Marcus, not Individually,
                                    but Solely in his capacity as Liquidating Trustee of
                                    the Las Uvas Valley Dairies Liquidating
                                    Trust*

In accordance with NM LBR 9036-1 and
Fed. R. Civ. P. 5(b)(2)(D), this certifies that
service of the foregoing document was made
this 1st day of July, 2020, via the
notice transmission facilities of the case
management and electronic filing system
of the Bankruptcy Court.


*/s/ Paul M. Fish*
Paul M. Fish

*W3770383.DOCX*