UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

LAS UVAS VALLEY DAIRIES,　　　　　　　　　　　　　Case No. 17-12356-t11

　　　Debtor.

## OPINION

Before the Court are Doña Ana County's motion to amend its proof of claim and application for an administrative expense. Both relate to 2016-2018 personal property taxes assessed on cattle. Robert Marcus, the successor liquidating trustee in this bankruptcy case, objected to the motion/application. The Court took the matter under advisement after oral argument. Being sufficiently advised, the Court finds that the motion/application should be denied.

### I.　　FACTS

For the limited purpose of ruling on the motion/application, the Court finds:[1]

In New Mexico, assessment and collection of property taxes occur at the county level. *See* NMSA §§ 7-38-35 and 36. While most personal property is not taxed in New Mexico, cattle are. The tax year is the calendar year. Cattle located in New Mexico are valued for tax purposes every year on January 1. For any tax year, half the tax is due November 10 of that year and the other half is due the following April 10.

Debtor operated a dairy in Doña Ana County, New Mexico. It filed this chapter 11 case on

---

[1] The Court takes judicial notice of its docket in this case. *See Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) ("We take judicial notice of court records in the underlying proceedings."); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.") As explained in greater detail *infra*, the majority of the Court's facts are derived from uncontested affidavits filed by the parties which have been incorporated by reference in subsequent pleadings.

September 15, 2017. The County received notice of the filing by September 19, 2017. It promptly suspended billing and collection activity on all of the Debtor's real and personal property tax accounts.

Debtor filed schedules on October 4, 2017. Debtor's Schedule D listed the County as a secured creditor, with a "Tax Lien on all property in Dona Ana," securing a debt of $216,975.10.

The County filed a secured proof of claim for $234,816.03 on October 18, 2017. "Real Property" was the stated basis for the claim, for taxes owed under § 507(a)(8).[2] The proof of claim includes 27 pages of real property tax bills for 2016 and 2017. Each bill is for a separate parcel of real estate. There is no indication that the proof of claim was an estimate. The claim does not mention personal property taxes.

Debtor gave notice to the County and other creditors of a claims bar date. The claims bar date was January 3, 2018, for general creditors and March 14, 2018, for governmental units like the County.

Debtor was not able to reorganize. In June 2018 the Unsecured Creditors Committee and Debtor's two largest secured creditors, Production Credit Association of Southern New Mexico and Metropolitan Life Insurance Company ("MetLife"), filed a plan of liquidation. The plan provided for the sale of Debtor's assets and the distribution of net proceeds to creditors in accordance with the Bankruptcy Code priority scheme, except that unsecured creditors were guaranteed at least $1,000,000. The Court confirmed the plan on June 14, 2018. Article V of the plan, as amended by the confirmation order, set a deadline of June 29, 2018, for parties to file administrative expense claims.[3]

---

[2] All statutory references are to 11 U.S.C. unless otherwise indicated.

[3] It is not clear the County received notice of the confirmation order, which set a shorter deadline for filing administrative expense claims (15 days after confirmation) than the plan (93 days after confirmation). The County did not file an administrative expense claim by either deadline.

Under the plan, a liquidating trustee was appointed and charged with selling estate assets and distributing the net proceeds to creditors. Robert Marcus is the successor liquidating trustee. Marcus sold nearly all of the Debtor's personal property, including the dairy herd, in the summer of 2018. The Court entered a final decree closing the case on July 27, 2018.

Marcus sold Debtor's real estate in March 2019 and paid all real property taxes, interest, and penalties to the County ($339,611.59). Shortly thereafter, the County notified Marcus by email that Debtor still owed personal property taxes assessed on the dairy herd. The email is not in the record and the County did not file a claim or seek relief from the Court at that time.

After the real estate was sold, Marcus negotiated with MetLife to settle a number of disputes. On May 3, 2019, Marcus filed a motion to approve a settlement with MetLife. Under the deal, MetLife agreed to accept $7,840,081, leaving an unsecured claim of $6,481,297. The settlement was approved on July 24, 2019. Marcus asserts that, had the County timely filed its claims for 2016-2018 personal property taxes, the claim would have materially affected the MetLife settlement.

On November 22, 2019, Marcus filed a partial objection to the County's proof of claim, asserting that the claim had been paid except for $8,877.22. Marcus asked for the Court to declare that the estate owed the County $8,877.22 or less. The County responded that it was still owed substantial personal property taxes assessed on the dairy herd. The parties filed cross motions for summary judgment on the issue, with the County arguing, essentially, that it should be allowed to assert claims against the liquidating trust for all unpaid personal property taxes.

After reviewing the pleadings and the accompanying affidavits, the Court determined that proper procedure was for the County to seek permission to amend its proof of claim and/or apply for an administrative expense. The County filed the motion/application on June 12, 2020; Marcus

-3-

timely objected. Both rely on previously filed affidavits. The Court held a hearing on the motion/application on August 6, 2020. The parties made legal arguments and agreed that an evidentiary hearing was unnecessary.

The County seeks to assert claims for the following personal property taxes on Debtor's dairy herd that were not part of its proof of claim:

| Year | Amount |
| --- | --- |
| 2016 | $ 11,274.07 |
| 2017 | $323,681.57 |
| 2018 | $153,402.49 |
| Total | $488,358.13 |

There is no dispute that the 2016 taxes are prepetition, nor that the 2018 taxes are postpetition. The County argues, however, that the 2017 tax is a postpetition administrative expense, while Marcus asserts it is a prepetition claim.

## II. DISCUSSION

A. The 2017 Personal Property Tax is a Prepetition Claim.

"The [Bankruptcy] Code does not define when taxes are incurred[,]…[but m]any courts have found that a tax is incurred when it accrues and becomes a fixed liability." 4 *Collier on Bankruptcy*, ¶ 503.07[1]; *see also In re Sunnyside Coal Co.*, 146 F.3d 1273, 1278 (10th Cir. 1998) ("Although the Bankruptcy Code does not define the term 'incurred,' the Circuits addressing the issue have uniformly held a tax is incurred when it accrues"); *In re Bayly Corp.*, 163 F.3d 1205, 1208–09 (10th Cir. 1998) ("If a debtor becomes liable to a claimant before the bankruptcy petition is filed, but the liability is contingent on the occurrence of some future event, the claim to recover that debt is treated as a pre-petition claim even if the condition does not occur and the right to payment does not arise until after the bankruptcy petition is filed."); *In re Roberts*, 2020 WL 5531508, at *5 (Bankr. D.N.M.) (discussing various tests used to determine whether a debt is pre-

-4-
Case 17-12356-t11    Doc 596    Filed 09/18/20    Entered 09/18/20 15:24:41 Page 4 of 13

timely objected. Both rely on previously filed affidavits. The Court held a hearing on the motion/application on August 6, 2020. The parties made legal arguments and agreed that an evidentiary hearing was unnecessary.

The County seeks to assert claims for the following personal property taxes on Debtor's dairy herd that were not part of its proof of claim:

| Year | Amount |
| --- | --- |
| 2016 | $ 11,274.07 |
| 2017 | $323,681.57 |
| 2018 | $153,402.49 |
| Total | $488,358.13 |

There is no dispute that the 2016 taxes are prepetition, nor that the 2018 taxes are postpetition. The County argues, however, that the 2017 tax is a postpetition administrative expense, while Marcus asserts it is a prepetition claim.

## II. DISCUSSION

A. The 2017 Personal Property Tax is a Prepetition Claim.

"The [Bankruptcy] Code does not define when taxes are incurred[,]…[but m]any courts have found that a tax is incurred when it accrues and becomes a fixed liability." 4 *Collier on Bankruptcy*, ¶ 503.07[1]; *see also In re Sunnyside Coal Co.*, 146 F.3d 1273, 1278 (10th Cir. 1998) ("Although the Bankruptcy Code does not define the term 'incurred,' the Circuits addressing the issue have uniformly held a tax is incurred when it accrues"); *In re Bayly Corp.*, 163 F.3d 1205, 1208–09 (10th Cir. 1998) ("If a debtor becomes liable to a claimant before the bankruptcy petition is filed, but the liability is contingent on the occurrence of some future event, the claim to recover that debt is treated as a pre-petition claim even if the condition does not occur and the right to payment does not arise until after the bankruptcy petition is filed."); *In re Roberts*, 2020 WL 5531508, at *5 (Bankr. D.N.M.) (discussing various tests used to determine whether a debt is pre-

or postpetition.

"When the tax is a state tax, state law will determine when the tax is incurred[, but t]he time of assessment or payment may not necessarily be equivalent to the time the tax is 'incurred.'" 4 *Collier*, ¶ 503.07[1].

The New Mexico tax code does not define "incur" or "accrue," nor does state case law clarify the question. However, NMSA § 7-38-47 provides:

> Property taxes imposed are the personal obligation of the person owning the property on the date on which the property was subject to valuation for property taxation purposes….The sale or transfer of property after its valuation date does not relieve the former owner of personal liability for the property taxes imposed for that tax year.

The valuation date for the dairy herd was January 1. NMSA § 7-36-21. The Debtor therefore became liable for the 2017 property tax on cattle on January 1, 2017. Like the game of "hot potato," whoever happens to own taxable New Mexico property on January 1 owes the property tax for that year.

The County probably is correct that the 2017 personal property taxes were contingent and/or unliquidated on the petition date, but that is irrelevant; the issue is when Debtor became liable to pay the tax. NMSA §§ 7-36-21 and 7-38-47 make clear that Debtor's liability for 2017 personal property taxes accrued on January 1, 2017. The liability is a prepetition claim, not a postpetition administrative expense.

B.   Law on Amending a Claim After the Bar Date.

The County asks that, if the 2017 personal property tax is a prepetition claim, it be allowed to amend its proof of claim to include the tax. The Tenth Circuit has developed a body of case law on post-bar date claim amendments. The main points are:

- Discretion. The bankruptcy court's decision whether to allow an amended proof of

claim is reviewable under an abuse of discretion standard. *In re Tanaka Bros. Farms, Inc.*, 36 F.3d 996, 998 (10th Cir. 1994), citing *In re Unioil, Inc.*, 962 F.2d 988, 992 (10th Cir. 1992).

- The general rule. Ordinarily, "amendment of a proof of claim is freely permitted so long as the claim initially provided adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable." *Unioil*, 962 F.2d at 992; *Tanaka Bros.*, 36 F.3d at 998 (quoting *Unioil*). Leave to amend should be "freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *LeaseAmerica Corp. v. Eckel*, 710 F.2d 1470, 1473 (10th Cir. 1983) (quoting *Matter of Commonwealth Corp.*, 617 F.2d 415, 420 (5th Cir. 1980)); *see Unioil*, 962 F.2d at 993 (quoting *LeaseAmerica*); *Tanaka Bros.*, 36 F.3d at 998 (same). If the content of a proof of claim is unaltered, an amendment should be allowed. *Unioil*, 962 F.2d at 992.

- Factors to consider. Factors to consider when deciding whether to allow a claim to be amended after the bar date include:

   (1) Whether the parties or creditors relied on the initial claim, or whether they had reason to know subsequent proofs of claim would follow pending the completion of the audit;
   (2) Whether other creditors would receive a windfall to which they are not entitled on the merits by the Court not allowing this amendment to the proof of claim;
   (3) Whether the movant intentionally or negligently delayed in filing its amended claim;
   (4) The justification, if any, for the failure to request the timely extension of the bar date; and
   (5) Any other general equitable considerations.

*Tanaka Bros.*, 36 F.3d at 998–99 (with alterations) (quoting *In re Oasis Petroleum Corp*, 130 B.R. 89, 92 (Bankr. C.D. Cal. 1991) and *In re Miss Glamour Coat Co., Inc.*, 1980 WL 1668, at *5 (S.D.N.Y.)). Courts have also considered whether the initial claim was designated as an estimate,[4]

---

[4] *See Tanaka Bros.*, 36 F.3d at 1000 (designating a claim as an estimate puts the trustee and

the relative size of the proposed increase,[5] and whether a plan had been confirmed.[6]

- <u>New claims not allowed</u>. Courts "should not allow truly new claims to proceed under the guise of amendment." *Unioil,* 962 F.2d at 992 (citing *Int'l Horizons*, 751 F.2d at 1216–17); *Limited Gaming*, 213 B.R. at 376 (quoting *Unioil*); *Easy Street*, 2011 WL 1618843, ¶ 2 (same).[7]

C. The County's Proposed Amended Claim is a New Claim, Which Cannot be Filed After the Bar Date.

1. <u>The claim is a new claim</u>. The County's original claim was a secured claim[8] for real

---

creditors on notice that the claim amount could change); *Easy Street Holding, LLC*, 2011 WL 1618843, ¶ 2 (Bankr. D. Utah) ("courts in this circuit have only permitted substantive claim amendments post-bar date when the claimant initially provided adequate notice that its claim was subject to amendment."); *In re Stauffer*, 378 B.R. 340, 350–51 (Bankr. D. Utah 2007) (denying amendment of a claim that did not state it was an estimate); *In re Limited Gaming of America, Inc.*, 213 B.R. 369, 374–75 (Bankr. N.D. Okla. 1997) (same).

[5] *Stauffer*, 378 B.R. at 350 ("[T]o be within the scope of a permissible amendment, the second claim should not only be of the same nature as the first but also reasonably within the amount to which the first claim provided notice.") (quoting *In re AM Int'l, Inc.,* 67 B.R. 79, 82 (N.D. Ill. 1986) (citing *In re Int'l Horizons, Inc.,* 751 F.2d 1213, 1217–18 (11th Cir. 1985))); *see also Tanaka Bros.*, 36 F.3d at 1000; *Limited Gaming*, 213 B.R. at 373–75.

[6] Although this factor is not emphasized in the Tenth Circuit, the Court agrees with courts elsewhere that post-confirmation claim amendments should rarely be allowed. *See*, *e.g.*, *Holstein v. Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993) (post-confirmation, amendments "should be allowed only for compelling reasons"); *In re Winn-Dixie Stores, Inc.*, 639 F.3d 1053, 1056–57 (11th Cir. 2011) ("Therefore, we hold that post-confirmation amendment—while not prohibited—is not favored, and only the most compelling circumstances justify it."). This is because "[c]onfirmation of a chapter 11 plan is the equivalent of a final judgment in ordinary civil litigation" and is entitled to res judicata effect. *In re New River Shipyard, Inc*, 355 B.R. 894, 909, 912 (Bankr. S.D. Fla. 2006); *see generally Federal Practice and Procedure* (Wright & Miller) § 4470.3, n.36 (noting the res judicata effect of a confirmed plan). "The creditor's pre-confirmation claim is subsumed in and replaced by the new contract created by the confirmed plan." *New River Shipyard*, 355 B.R. at 912; *In re Benjamin Coal Co.*, 978 F.2d 823, 827 (3d. Cir. 1992) ("However, once the reorganization plan is approved by the bankruptcy court, each claimant gets a 'new' claim, based upon whatever treatment is accorded to it in the plan itself.").

[7] Courts have held that taxes owed for each taxable year can constitute separate claims. *See In re Sunwest Hotel Corp.*, 1998 WL 982905, at *9 (D. Kan.); *Limited Gaming*, 213 B.R. at 373.

[8] *See* N.M.S.A. § 7-38-48(A) (Property taxes are a first lien against real property from January 1).

property taxes.[9] As the County had a first lien on the taxed property, there was no question it would be paid when the real property was sold. That is what happened. Debtor's unsecured creditors never had to worry about the County's proof of claim.

The County now wishes to file an unsecured[10] priority[11] claim for $334,955.64. Changing an unsecured claim to a secured claim is tantamount to filing a new claim, and should not be permitted after the bar date. *See, e.g., In re Nat'l Merch. Co., Inc.*, 206 B.R. 993, 999 (Bankr. M.D. Fla. 1997); *In re Brown,* 159 B.R. 710, 714–15 (Bankr. D.N.J. 1993); see also *In re Alliance Operating Corp.*, 60 F.3d 1174, 1175 (5th Cir. 1995) (changing a claim from general unsecured to priority is not permitted after the bar date); *In re Walls & All, Inc.*, 127 B.R. 115, 118 (W.D. Pa. 1991) (same); *In re Metro Transp. Co.*, 117 B.R. 143, 148 (Bankr. E.D. Pa. 1990) (same). Here, the County not only wants to change the nature of the claim from secured to unsecured priority, it wants to substitute a large unpaid priority claim for a paid secured claim. The two claims have nothing in common except that they are both for property taxes. Because the claims are so different, the Court concludes that the proposed claim for unpaid personal property taxes is a new claim.

    2.    <u>There are no "excusable neglect" grounds to extend the bar date</u>. As the County seeks to file a new claim after the bar date, the analysis is governed by Fed. R. Bankr. P. 9006(b)(1), not the claim amendment law cited above. In relevant part, Rule 9006(b)(1) provides: "when an act is required or allowed to be done at or within a specified period . . . the court for cause shown may at any time . . . permit the act to be done where the failure to act was the result of excusable

---

[9] The Court has carefully reviewed the claim and its attachments and cannot find any mention of an unsecured priority claim for personal property taxes.

[10] Nothing in the New Mexico property tax statutes give counties a lien on personal property to secure payment of personal property taxes. Rather, §§ 7-38-53 through 59 give county treasurers the right to issue demand warrants for delinquent taxes, seize the subject personal property, and sell it.

[11] § 507(a)(8)(B).

-8-
Case 17-12356-t11    Doc 596    Filed 09/18/20    Entered 09/18/20 15:24:41 Page 8 of 13

neglect."

In *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993), the Supreme Court weighed the following factors to determine when neglect is excusable:

(1) The danger of prejudice to the non-moving party;
(2) The length of delay and its potential impact on judicial proceedings;
(3) The reason for delay, including whether it was within the reasonable control of the movant; and
(4) Whether the movant acted in good faith.

*Id.* (with alterations); *see also In re Wooten*, 2020 WL 4462919, at **4–5 (Bankr. D.N.M.) (weighing the factors); *In re Franco*, 2019 WL 1207862, at **5–6 (Bankr. D.N.M.) (same, assigning the most weight to the third factor). The Court weighs the *Pioneer* factors as follows:

| Factor | Discussion |
|---|---|
| The danger of prejudice to the nonmoving parties. | This factor weighs against the County. A plan has been confirmed in this case, partially in reliance on the claims filed. Creditors would be prejudiced if the Court were to allow a large new claim to be filed post-confirmation. Similarly, Marcus negotiated his settlement with MetLife based on claims filed. Injecting a new $334,955.64 priority claim at this late date would be prejudicial. |
| The length of the delay and the potential impact on judicial proceedings. | The County did not tell Marcus about its failure to file a claim for a year after the bar date. It did not file the motion to amend for another 15 months. |
| The reason for the delay and whether it was within the reasonable control of the County. | The County was aware of the Debtor's bankruptcy from the beginning. It was listed as a creditor in the Debtor's schedules. It filed a proof of claim about a month after the petition date. The County has never given any reason for its failure to file a claim for personal property taxes. The reason appears to be negligence. |
| Whether the County acted in good faith. | The County acted in good faith. |

Overall, the *Pioneer* factors weigh against allowing the County to file its late priority claim for nearly $335,000.

D.      Even if the Claim Was Not New, the Motion to Amend Should be Denied.

Assuming arguendo that what the County proposes is an amendment rather than a new claim, the Court weighs the *Tanaka Bros.* factors thusly:

| Factor | Discussion |
|---|---|
| Reliance on the initial claim. | Creditors relied on the filed claims when deciding whether to accept the liquidating plan. The County's initial claim was not labeled an estimate. Had the County filed an unsecured priority claim for $334,955.64, creditors would have negotiated and/or voted differently. The plan proponents might have proposed a different treatment for unsecured creditors. Finally, Marcus would have negotiated a different deal with MetLife. |
| Unentitled windfall to other creditors. | It is impossible to know if denial of the County's motion to amend would create a windfall for creditors. As Marcus points out, had the County filed its claim timely, he would have negotiated differently with MetLife. Perhaps unsecured creditors would have gotten the same under that hypothetical negotiation. As the courts did in *Limited Gaming*, 213 B.R. at 375 and *Easy Street*, 2011 WL 1618843, ¶ 11, the Court gives little weight to this factor. |
| Whether the creditor delayed intentionally or negligently. | The County did not delay intentionally and had nothing to gain by doing so. The delay was due to negligence. |
| Justification for the failure to request timely extension of the bar date. | The County has offered no justification for the delay. It knew about the case and filed a secured claim for real property taxes, but failed to file an unsecured claim for personal property taxes. |
| Any other general equitable considerations. | The County was dilatory once it realized it had not filed a claim for 2016 and 2017 personal property taxes. It should have filed a motion to amend in March 2019. Instead, the County forced Marcus to object to its proof of claim and did not formally file a motion to amend until June 2020. Moreover, the County wants to amend its claim after confirmation of a chapter 11 plan. Given these circumstances, there is no compelling reason to allow a post-confirmation amendment, and a number of good reasons not to. |

The *Tanaka Bros.* factors weigh heavily against allowing the County to amend its proof of claim.

E.     <u>The County May Not File an Administrative Expense Claim for the 2018 Taxes</u>.

Although the 2016 and 2017 personal property taxes are prepetition claims, there is no question that the 2018 personal property tax liability accrued postpetition. The confirmed plan set a deadline for filing administrative expense claims, including tax claims, which the County did not meet. Article V of the plan provides that administrative expense claims filed after the deadline are "forever barred and discharged."

Relying on § 503(b)(1)(D), the County argues that it is excused from any administrative expense filing requirement or deadline. Section 503(b)(1)(D) provides:

> Notwithstanding the requirement of subsection (a),[12] a governmental unit shall not be required to file a request for the payment of an expense described in subparagraph (B)[13] or (C),[14] as a condition of its being an allowed administrative expense.

The confirmed plan provision conflicts with § 503(b)(1)(D). Unsurprisingly, Marcus argues that the confirmed plan controls, while the County counters that the Court must ignore the confirmed plan and follow § 503(b)(1)(D).

The Supreme Court has shown courts what to do when the terms of a confirmed plan conflict with the Bankruptcy Code. In *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), the Supreme Court considered a confirmed chapter 13 plan that discharged a student loan debt, despite the fact that the Bankruptcy Code prohibits the discharge without an adversary proceeding judgment of "undue hardship." The Supreme Court held that even though the plan violated the Code, the confirmation order was res judicata and bound the student loan creditor:

> Where, as here, a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate, and the party's failure to avail itself of that opportunity will not justify [ ] relief.

*Id.* at 276. In short, the Supreme Court held that a properly noticed and confirmed plan is binding on the noticed parties even if the plan contains provisions contrary to the Bankruptcy Code.

Here, Article V of the plan required all administrative expense claimants to file claim notices. There is no exception for governmental units. The County received the proposed plan and disclosure statement and did not object. To the extent Article V is contrary to § 503(b)(1)(D),

---

[12] Allowing "[a]n entity" to "timely file a request for payment of an administrative expense."
[13] In general, postpetition taxes.
[14] In general, fines or penalties relating to postpetition taxes.

*Espinosa* teaches that the confirmed plan controls.[15] Because the County did not file a notice of an administrative expense claim by the deadline, its claim is "barred and discharged."[16]

The County also argues that other provisions in the confirmed plan obligate Marcus to pay postpetition taxes. The Court has reviewed the provisions the County relies upon and concludes that they do not override the central requirement that administrative expense claims be paid only if notices are timely filed.

Finally, the County argues that 28 U.S.C. § 960(a) requires Marcus to pay the postpetition taxes.[17] Assuming without deciding that Marcus comes within the terms of the statute, the Court concludes that he *was* required to pay pre- and postpetition taxes, but only if the taxing authorities gave him timely notice of the taxes due, per the confirmed plan. To the extent 28 U.S.C. § 960(a) conflicts with the confirmed plan, the plan controls.[18]

### III. CONCLUSION

The County seeks leave to tardily amend its proof of claim, tardily apply for payment of

---

[15] The County's reliance on *Collins v. Tenn. Dept. of Rev.*, 555 B.R. 670 (W.D. Tenn. 2016), is misplaced because *Collins* did not address *Espinosa*.

[16] At least two potential problems can arise if governmental units do not timely notify debtors or plan proponents of postpetition tax claims and/or object to plan provisions affecting their interests. First, their claims could get discharged on plan confirmation, *see* § 1141(d)(1), in which case enforcing their rights under § 503(b)(1)(D) would be futile. Second, they could be bound by plan terms limiting their collection rights. *See, e.g., In re Abraham Petroleum Corp.*, 2012 WL 2501130, at **4–5 (Bankr. D.P.R.) (taxing authority prevented from filing post-confirmation liens on property under the terms of a confirmed plan). Thus, even if § 503(b)(1)(D) is not directly pre-empted by a proposed plan, a taxing authority should file an administrative expense claim promptly and object to plan provisions as needed.

[17] The statute provides: "[a]ny officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation."

[18] Marcus is not the Debtor and cannot be expected to know about Debtor's post-petition expenses and liabilities, tax or otherwise. It is reasonable to allow him to rely on filed administrative expense claims rather than forcing him to investigate all potential postpetition liabilities.

an administrative expense, or both. The proposed claim amendment is really a new claim, however, and the County did not show the excusable neglect needed to file a very late claim. Alternatively, equitable factors weigh heavily against allowing the County to file an amended claim long after the bar date and plan confirmation. Finally, the County may not file an administrative expense application so far past the deadline set by the confirmed plan, § 503(b)(1)(D) notwithstanding. The Court will enter a separate order denying the motion/application.

_____
Hon. David T. Thuma
United States Bankruptcy Court

Entered: September 18, 2020

Copies to: counsel of record