# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW MEXICO

In re:

LAS UVAS VALLEY DAIRIES, a New Mexico
General Partnership,

Case No. 17-12356-t11

Debtor.

## OBJECTION TO JEANI ANDERSON'S MOTION TO ACCEPT
## PROOF OF CLAIM AS TIMELY FILED

Robert Marcus (the "Successor Trustee"), not individually, but solely as the Successor Liquidating Trustee of the Las Uvas Liquidating Trust (the "Liquidating Trust"), by his counsel, hereby objects (the "Objection") to *Jeani Anderson's Motion to Accept Proof of Claim as Timely Filed* [Docket No. 622] (the "Motion"). In opposition to the Motion, the Successor Trustee states as follows:

### Introduction

The Motion should be denied and Jeani Anderson ("Anderson") should not be permitted to file a late claim in the above-captioned Chapter 11 case (the "Chapter 11 Case") of Las Uvas Valley Dairies, a New Mexico General Partnership (the "Debtor") because: (1) Anderson voluntarily dismissed all of her claims against the Debtor with prejudice prior to the Petition Date (defined below); (2) Anderson is not a "known" creditor and the Anderson POC is pure conjecture; and (3) even if Anderson did not dismiss all her claims against the Debtor – which she did – she cannot satisfy the *Pioneer* factors to file a late claim in the Chapter 11 Case.

### Background Facts

On April 23, 2021, more than four (4) years after Anderson dismissed *with prejudice* all of her claims against the Debtor, through her same attorney, John D. Wheeler, Anderson filed a proof of claim in the Chapter 11 Case, pending as Claim No. 55-1 (the "Anderson POC"). A copy of

the Anderson POC is attached as **Exhibit A**.[1]  Anderson's history with the Debtor and its principals, Dean and Frances Horton (the "Hortons") dated back to 1981.  Exhibit A, at p. 7 of 21 (¶ 10).  After doing business for more than 30+ years together, Anderson and the Hortons also had a personal relationship.  Exhibit A, at p. 9 of 21 (¶ 30).

Anderson was hired in 2004 to provide interior design services to the Hortons for the construction of their residence, which, according to Anderson, would be "quite possibly the largest private residence in the State of New Mexico."  Exhibit A, at p. 8 of 21 (¶ 17).  However, Anderson knew the Debtor and Hortons "became financially strained during the construction of the new residence and were unable to pay bills associated with the new residence as they became due." Exhibit A, at p. 8 of 21 (¶ 21).  To this end, as they were also friends, Anderson "assisted Defendants in negotiating payment with vendors and ensured that all vendors were eventually paid."  Exhibit A, at p. 8 of 21 (¶ 22).  Anderson also agreed to reduce her fee from $1,500,000 to $750,000, and also entered into a payment plan with the Hortons.  Exhibit A, at p. 9 of 21 (¶ 25).

The Hortons made a few payments to Anderson and then stopped paying her.  Exhibit A, at p. 9 of 21 (¶ 28).  On December 2, 2016, through attorney John D. Wheeler, Anderson filed in the United States District Court for the District of New Mexico (the "District Court") a *Complaint on Open Account, for Breach of Contract and Quantum Meruit* against the Hortons and the Debtor seeking, *inter alia*, damages in the amount of $750,000, Case No. 2:16-cv-01317 (the "2016 Litigation").  Exhibit A, at p. 6-12 of 21 (copy of the *Complaint* of 2016 Litigation)

On January 26, 2017, Anderson and the Hortons entered into a *Settlement Agreement* "to

---

[1] The Successor Trustee requests the Court take judicial notice of the Anderson POC and all other court documents and publicly-filed records attached hereto. *See Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) ("We take judicial notice of court records in the underlying proceedings."); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.").

settle and compromise *permanently* any and all claims that were brought in the [2016] Litigation or that might have been brought therein." Exhibit A, at p. 13 of 21 (¶ C) (the "Horton Settlement Agreement") (emphasis added). *See* Exhibit A, at pp. 13-21 of 21. The Horton Settlement Agreement provided that Anderson "shall dismiss with prejudice all of the claims raised in ANDERSON'S Complaint and any other claims that could have been brought as a result of the [sic] ANDERSON'S provision of services and the [2016] Litigation. . . . Notwithstanding the fact that this dismissal is with prejudice, the [Hortons and Anderson], and each of them, reserve the right to seek *judicial enforcement of this Settlement Agreement* in the" District Court. Exhibit A, at pp. 13-14 of 21 (¶ 1) (emphasis added). Despite being a defendant in the 2016 Litigation, the Debtor was not a signor to the Horton Settlement Agreement and did not have any liability or on-going obligations under the Horton Settlement Agreement.

On February 15, 2017, through attorney John D. Wheeler, Anderson filed a *Notice of Dismissal Pursuant to Rule 41(a)(1)(A)(i) Fed R. Civ. P.* with the District Court in the 2016 Litigation dismissing the Debtor and Hortons with prejudice (the "Dismissal Notice"). A copy of the Dismissal Notice is attached as **Exhibit B**. The Dismissal Notice provided that the 2016 Litigation was dismissed with prejudice as to the Debtor, and Anderson retained the right to enforce the Horton Settlement Agreement only between herself and the Hortons, individually. Exhibit B (emphasis added). In summary, the 2016 Litigation was dismissed with prejudice as to the Debtor, and without prejudice only as to the enforcement of Horton Settlement Agreement.

On September 15, 2017 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), commencing the Chapter 11 Case. Anderson was not listed as a creditor in the Chapter 11 Case and did not receive actual notice of the Chapter 11 Case. Anderson also did not participate in the Chapter 11 Case

3

court proceedings (until filing the Motion); however, she knew about the Chapter 11 Case from its outset and the Hortons' use of Debtor funds to pay for construction of their massive residence.

On July 6, 2018, through attorney John D. Wheeler, Anderson filed a *Complaint for Breach of Contract, Prejudgment Writ of Attachment, and Declaratory Judgment* (the "2018 Complaint") against only the Hortons in the District Court, commencing Case No. 2:18-cv-0642 (the "2018 Litigation"). A copy of the 2018 Complaint is attached as **Exhibit C**. In the 2016 Litigation, Anderson alleged that she "ensured that all vendors were eventually paid" for the construction of the residence. Exhibit A, at p. 8 of 21 (¶ 22). Then, in the 2018 Litigation, she alleged that:

> Defendants, and the family dairy, have exhibited untoward conduct in the bankruptcy proceeding. For example, filings in the bankruptcy case indicate the Defendants disposed of property in violation of the court's Cash Collateral Order. Specifically, a major creditor alleged "Debtor has, contrary to the Cash Collateral Order, made unauthorized use of cash collateral substantially harmful to [moving] creditor…." . . . The same creditor also accused the dairy's partners, but primarily Defendants, of withdrawing and disposing of $10.9 million of the dairy's cash in the four (4) years preceding the bankruptcy

Exhibit C, at p. 5 (¶ 32). In other words, Anderson admits to helping the Hortons pay for the exorbitantly expensive residence and then accuses the Hortons of "disposing of $10.9 million of the dairy's cash in the four (4) years preceding the bankruptcy." *Id.* It was evident that Anderson was closely monitoring the Chapter 11 Case based on her use of the Chapter 11 Case pleadings. Furthermore, based on her own pleadings, Anderson was well-aware the Hortons used the Debtor's cash to pay for the construction of the residence and likely assisted in the "withdrawing and disposing of $10.9 million". *See* Exhibit A, at p. 8 of 21 (¶ 22)

On July 31, 2018, following the June 2018 plan confirmation, the Successor Trustee was appointed as successor trustee of the Liquidating Trust in the Chapter 11 Case.

On February 15, 2019, the Successor Trustee filed an adversary proceeding (Case No. 19-ap-1009) against the Hortons and their children for declaratory relief, injunctive relief, and

4

avoidance and recovery of preferential transfers. Anderson admits in the Motion that she was closely following the Chapter 11 Case and litigation related thereto. *See* Motion, at ¶ 17. Anderson was also aware of the Liquidating Trust's claims well before the filing of the Motion.

On May 17, 2019, the Hortons filed a joint petition for relief under Chapter 7 of the Bankruptcy Code, commencing Case No. 19-11162 (the "Chapter 7 Case"). The 341(a) meeting of creditors in the Chapter 7 Case was commenced on June 25, 2019, and continued to July 23, 2019. Both the Successor Trustee and Anderson were present at the continued 341(a) meeting of creditors. An unofficial copy of the transcript of the July 23, 2019 continued 341(a) meeting of creditors is attached as **Exhibit D**.

At the continued 341(a) meeting of creditors, Anderson was provided an opportunity to question the Hortons under oath. She asked the Hortons to confirm that they underreported the amount Anderson was owed on their bankruptcy schedules. Exhibit D, at pp. 7-8. The Successor Trustee was then provided an opportunity to question the Hortons. With Anderson present, the Successor Trustee had the following exchange with Frances Horton confirming that the Hortons used the Debtor's funds to pay for the residence:

| Marcus: | How did you make payments for the construction of the home? |
|---|---|
| Frances Horton | We wrote dairy checks for them. |

Exhibit D, at p. 10. Besides the construction cost, Frances Horton also confirmed that the Hortons used the Debtor's funds to pay for their furniture and personal property:

| Marcus: | Regarding the household goods that you list, the trustee has asked a few questions already . . . And how was all this paid for? |
|---|---|
| Frances Horton | I think it was paid for by dairy checks or one of my credit cards. I can't remember. |
| Marcus: | And your credit card, was often paid by dairy checks as well? |

5

> Frances Horton    I use the credit card for dairy expenses interchangeably.

Exhibit D, at pp. 11-12. Anderson boasts in the 2016 Litigation that she was responsible for ensuring that all vendors for the construction of the residence were paid. Exhibit A, at p. 8 of 21 (¶ 22). On July 23, 2019, Anderson listened to Frances Horton testify under oath that construction of the residence and personal property was paid for using the Debtor's funds. Anderson did not attempt to clarify or disagree with the record at the continued 341(a) meeting of creditors. *See* Exhibit D, at pp. 10-12.

On October 31, 2019, the Successor Trustee commenced an adversary proceeding in the Hortons' Chapter 7 Case against the Hortons objecting to their discharge and the dischargeability of debt owed to the Liquidating Trust, which was pending as Case No. 19-ap-01007-t (the "Discharge Litigation"). On January 31, 2020, the Successor Trustee commenced another adversary proceeding in the Hortons' Chapter 7 Case against the Chapter 7 Trustee for the Hortons (the "Horton Trustee") and the Hortons for declaratory relief that the residence and all personal property at the residence was property of the Chapter 11 Case, which was pending as Case No. 20-ap-01004-t (the "Constructive Trust Litigation").

On October 15, 2019, the Successor Trustee and Horton Trustee filed an identical *Joint Motion to Approve Settlement Agreement* in both the Chapter 7 Case [Docket No. 147] and the Chapter 11 Case [Docket No. 606] (the "Joint Settlement Motion"). The Joint Settlement Motion sought the approval of a settlement agreement between the Successor Trustee, Horton Trustee, and Hortons to resolve all outstanding issues between the parties, including, without limit, the Discharge Litigation and Constructive Trust Litigation. The Joint Settlement Motion did not request or require a ruling on any of the issues in the Constructive Trust Litigation. On November 9, 2020, Anderson filed an objection to the Joint Settlement Motion in the Chapter 7 Case [Docket

6

No. 182] (the "Anderson Objection").  Anderson did not file an objection to the Joint Settlement Motion in the Chapter 11 Case.

The Anderson Objection was focused primarily on challenging the Liquidating Trust's rights to a constructive trust over the residence and, as such, the funds being transferred out of the Chapter 7 Case and to the Chapter 11 Case.  *See, e.g.* Horton Docket No. 182, at p. 7 ("Nothing in Marcus' complaint establishes how the Debtors' business creditors stand on any different footing than their personal creditors.")  Anderson may have had an opportunity to seek a potential ruling on the constructive trust issue; however, on January 7, 2021, Anderson withdrew the Anderson Objection [Horton Docket No. 193] and at the hearing her counsel, John D. Wheeler, confirmed her withdrawal of the Anderson Objection.  On January 13, 2021, the Court entered an order approving the joint settlement agreement in the Chapter 7 Case or Chapter 11 Case.  Nothing in the order or joint settlement agreement established or sought to establish a constructive trust.

On April 23, 2021, through her counsel John D. Wheeler, Anderson filed the Motion and Anderson POC.  She filed it exactly one-hundred (100) days after the Court approved the Joint Settlement Motion, more than five (5) months after filing the Anderson Objection, one (1) year and two (2) months after the Successor Trustee filed the Constructive Trust Litigation, one (1) year and nine (9) months after she heard Frances Horton testify at the 341(a) meeting of creditors that the Debtor paid for the residence construction, two (2) years and nine (9) months after she alleged in the 2018 Litigation that the Hortons were withdrawing and disposing of the Debtor's money, and four (4) years and two (2) months after she dismissed all claims against the Debtor with prejudice.

**Objection**

The Court should deny the Motion because: (1) Anderson voluntarily dismissed all of her claims against the Debtor with prejudice; (2) Anderson is not a "known" creditor and the Anderson POC is pure conjecture; and (3) even if Anderson did not dismiss all her claims against the Debtor – which she did – she cannot satisfy the *Pioneer* factors to file a late claim in the Chapter 11 Case.

## I. Anderson Voluntarily Dismissed All of Her Claims Against the Debtor with Prejudice.

The Court should deny the Motion because Anderson voluntarily dismissed all of her claims against the Debtor with prejudice prior to the Petition Date. Anderson asserts that she is a known creditor and the Debtor erred in September 2017, when it filed the Chapter 11 Case, by not providing Anderson notice as a purported "known creditor." However, Anderson, represented in the Motion by the same counsel who filed the 2016 Litigation, fails to inform the Court that seven (7) months prior to the Petition Date, Anderson dismissed with prejudice *all of her claims* arising from the residence and 2016 Litigation against the Debtor. See Exhibit B. Anderson is not a known or unknown creditor of the Debtor and is barred from filing the Anderson POC.

Under Fed. R. Civ. P. Rule 41(a)(1)(A)(i), a plaintiff may dismiss an action voluntarily before the defendant files an answer or a motion for summary judgment. The dismissal is without prejudice, unless the notice of dismissal states otherwise. *See* Fed. R. Civ. P. 41(a)(1)(B). Anderson's Dismissal Notice clearly stated that the dismissal of the 2016 Litigation was with prejudice. "A voluntary dismissal with prejudice operates as a final adjudication on the merits . . . and is thus a 'final judgment'" *Schmier v. McDonald*, 569 F.3d 1240, 1242 (10th Cir. 2009) (internal quotation marks omitted); *see also* 8 James Wm. Moore et al., Moore's Federal Practice § 41.33[6][c] at 41–84 ("A dismissal by notice made with prejudice operates as an adjudication on the merits."). "A dismissal with prejudice, unless the court has made some other provision, is

subject to the usual rules of *res judicata* and is effective not only on the immediate parties to the action but also on their privies." *In re Funderburgh*, 526 B.R. 361, 371 (BAP 10th Cir. 2015).

In this case, the Dismissal Notice filed voluntarily by Anderson in the 2016 Litigation, in which the Debtor was a defendant, expressly provided that "the dismissal is with prejudice to the underlying claims brought in Plaintiff's Complaint." Exhibit B. The only reservation was "with respect to actions brought to enforce the agreement between the [Hortons and Anderson]." Id. All claims brought against the Debtor in the 2016 Litigation were dismissed with prejudice. The Debtor had no on-going obligations under the Horton Settlement Agreement and, as such, no claims were preserved against the Debtor.

Anderson is barred by *res judicata* from filing the Anderson POC and the Motion should be denied. The entire basis of the Anderson POC is the 2016 Litigation. *See* Exhibit A, at pp. 4-5 of 21. Since Anderson is attempting to collect on the claims raised in the 2016 Litigation, she is barred by the voluntary dismissal with prejudice of all claims against the Debtor. The Anderson POC is based entirely on the 2016 Litigation, claims which were fully and finally adjudicated on the merits through the dismissal with prejudice. Anderson cannot seek to recover against the Debtor (or Liquidating Trust) the fully adjudicated claims raised in the Anderson POC. *See Schmier*, 569 F.3d at 1242.

The Court should deny the Motion and require the immediate withdraw and expungement of the Anderson POC based on Anderson's voluntary dismissal with prejudice all claims against the Debtor related to the 2016 Litigation.

## II. Anderson is Not a "Known" Creditor and the Anderson POC is Pure Conjecture

Even if Anderson had not dismissed with prejudice all of her claims against the Debtor – which she did – Anderson is not a "known" creditor and the Anderson POC is pure conjecture.

9

262976845.v1
Case 17-12356-t11    Doc 625    Filed 05/19/21    Entered 05/19/21 09:54:39 Page 9 of 14

The Motion blithely concludes that Anderson was a "known" creditor and was entitled to actual notice of the Debtor's claims bar date. *See, e.g.,* Motion, at p. 4 ("Because Ms. Anderson was a "known" creditor in this case she was entitled to actual, written notice of the Bar Date.") However, Anderson fails to provide the Court any factual or legal basis how Anderson could have been a "known" creditor. All facts demonstrate her purported claims against the Debtor are pure conjecture.

As characterized by the U.S. Supreme Court, a "known" creditor is one whose identity is either known or "reasonably ascertainable by the debtor." *Tulsa Professional Collection Serv., Inc. v. Pope,* 485 U.S. 478, 490 (1988). An "unknown" creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. at 317. A debtor does not have a "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." *Selman v. Delta Airlines*, No. 07-1059, 2008 WL 6022017, at *14 (D. N.M. Aug. 13, 2008) (citing *In re Charter Co.,* 125 B.R. 650, 654 (M.D. Fla. 1991)).

In this case, even assuming, *arguendo*, Anderson did not dismiss all claims against the Debtor, Anderson was, at best, an "unknown" creditor and, most likely, only a party-in-interest. Anderson has not provided the Court or Successor Trustee any facts or theory to support her position of being a "known creditor." If Anderson was a creditor, the Debtor would have the burden of providing Anderson notice of the claim bar date; however, nothing in the Motion provides the Court or Successor Trustee anything to determine or even consider Anderson a creditor of the Debtor. First, as set forth above, Anderson dismissed all claims she had against the Debtor with prejudice. There was no basis for the Debtor to list Anderson as a creditor or the

10

262976845.v1
Case 17-12356-t11    Doc 625    Filed 05/19/21    Entered 05/19/21 09:54:39 Page 10 of 14

Successor Trustee to provide her any notice in the Chapter 11 Case since she held no claims against the Debtor and Anderson voluntarily dismissed all of her claims with prejudice.

Second, even assuming the dismissal with prejudice did not occur, any claim Anderson would assert based on "constructive trust" is pure conjecture. On the Petition Date, the Debtor, who was controlled by the Hortons, could not predict that the Successor Trustee, appointed one year later, would file the Constructive Trust Litigation against the Hortons in a bankruptcy case that would be filed two (2) years in the future. There was no basis for the Debtor or Successor Trustee to "know" at any time that Anderson would assert the Anderson POC. Anderson was not a "known" creditor as of the Petition Date and her claim was both conjectural and future.

The Court should deny the Motion because Anderson is not a "known" creditor and – even assuming that Anderson did not dismiss all claims against the Debtor with prejudice – Anderson was not entitled to notice of the claim bar date as of the Petition Date or at any other time.

## III. Anderson Cannot Satisfy the *Pioneer* Requirements to File a Late Claim

The Court should also deny the Motion because Anderson cannot satisfy the *Pioneer* requirements to file a late claim. In relevant part, Fed. R. Bankr. P. 9006(b)(1) provides: "when an act is required or allowed to be done at or within a specified period . . . the court for cause shown may at any time ... permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). In *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993), the Supreme Court weighed the following factors to determine when neglect is excusable:

(1) The danger of prejudice to the non-moving party;
(2) The length of delay and its potential impact on judicial proceedings;
(3) The reason for delay, including whether it was within the reasonable control of the movant; and
(4) Whether the movant acted in good faith.

*Pioneer*, 507 U.S. at 395; *see also In re Las Uvas Valley Dairies*, 620 B.R. 367, 374 (Bankr. D. N.M. 2020); *In re Wooten*, 620 B.R. 351, 356–57 (Bankr. D. N.M. 2020) (weighing the factors); *In re Franco*, 2019 WL 1207862, at **5–6 (Bankr. D.N.M.) (same, assigning the most weight to the third factor).

The Court recently undertook an analysis of the *Pioneer* factors in this case (*Las Uvas Valley Dairies*, 620 B.R. at 374) and the facts here weigh even heavier against Anderson:

| **The danger of prejudice to the nonmoving parties** | This factor weighs against Anderson. A plan has been confirmed in this case, partially in reliance on the claims filed. Creditors would be prejudiced if the Court were to allow a large new claim to be post-confirmation. Additionally, Anderson has dismissed her claim with prejudice and allowing it would be greatly prejudicial to the Debtor/Liquidating Trust and other creditors. |
|---|---|
| **The length of the delay and the potential impact on judicial proceedings.** | This factor weighs against Anderson. At best, Anderson waited one hundred (100) days after she withdrew the Anderson Objection. Anderson also knew about the Hortons' use of Debtor funds well-before the Chapter 11 Case was filed as she took the responsibility to ensure all vendors for the construction of the residence were paid in full. She also waited more than four (4) years since the dismissal of the 2016 Litigation to try and bring the claim. The impact on judicial proceeding would be significant as the Successor Trustee is winding down the administration of the estate and is simply waiting on the results of an appeal and now this Motion before closing the estate. |
| **The reason for the delay and whether it was within the reasonable control of Anderson** | This factor weighs against Anderson. Anderson asserts the delay was caused because she had no reason to know the Successor Trustee would assert a constructive trust on the residence. However, the facts belie this excuse. Anderson was aware for years of the Hortons' use of Debtor funds. Additionally, the Constructive Trust Litigation was filed in |

|  | January 2020, more than fifteen (15) months prior to filing the Anderson POC. Anderson voluntarily dismissed the 2016 Litigation four (4) years ago. She has also not provided any reason why she waited one hundred (100) days since withdrawing the Anderson Objection to file the Anderson POC/Motion. There is no reasonable excuse for her delay in filing the Anderson POC and all of the delay and actions, including the dismissal with prejudice of all claims, were well-within the control of Anderson. |
|---|---|
| **Whether Anderson acted in good faith** | This factor weighs against Anderson. Anderson cannot have acted in good faith. First, Anderson has unclean hands in that she took part in ensuring that all construction vendors were paid in full. Frances Horton testified that these same vendors were paid with dairy checks. Anderson had first hand knowledge of the Hortons' use of Debtor funds to pay for the residence. Second, Anderson never disclosed to the Court that the 2016 Litigation was dismissed with prejudice against the Debtor despite having the same counsel and despite using the 2016 Litigation as the basis for her claim. |

Anderson cannot meet the *Pioneer* requirements to file a late claim. The dispositive gating issue is that Anderson dismissed all of her claims against the Debtor with prejudice in February 2017. In addition, all of the *Pioneer* requirements weigh heavily against Anderson. The Liquidating Trust and its beneficiary would be prejudiced, Anderson waited a *minimum* of 100 days to file the Anderson POC and likely significantly more, Anderson has no reasonable excuse for delay, and it is unlikely that Anderson has acted in good faith in pursing the Anderson POC.

The Court should deny the Motion because Anderson cannot meet the requirements of *Pioneer* and each of the factors weigh heavily in favor of the Successor Trustee.

## Conclusion

Anderson failed to disclose to the Court the dismissal with prejudice of all of her claims against the Debtor. Yet, through the same attorney who dismissed the 2016 Litigation, she seeks to prosecute those same dismissed claims through the Anderson POC. The Court should deny the Motion because: (1) Anderson voluntarily dismissed all of her claims against the Debtor with prejudice prior to the Petition Date; (2) Anderson is not a "known" creditor and the Anderson POC is pure conjecture; and (3) even if Anderson did not dismiss all her claims against the Debtor – which she did – she cannot satisfy the *Pioneer* factors to file a late claim in the Chapter 11 Case. For the reasons set forth above, the Court should deny the Motion, order the expungement of the Anderson POC, and provide such other and further relief as appropriate under the circumstances.

Respectfully submitted,
CLARK HILL PLC


By: */s/ filed electronically 5/19/2021*
    Kevin H. Morse (admitted *pro hac vice*)
    130 E. Randolph Street, Suite 3900
    Chicago, Illinois 60601
    Telephone: 312-985-5556
    E-mail: kmorse@clarkhill.com

*Attorneys for Robert Marcus, not Individually,*
*but Solely in his capacity as Liquidating Trustee of*
*the Las Uvas Valley Dairies Liquidating Trust*

I hereby certify that, on May 19, 2021, in accordance with NM LBR 9036-1 and Fed. R. Civ. P. Rule 5(b)(3), a true copy of the foregoing was served via the Court's CM/ECF notification facilities to those parties who are registered CM/ECF participants in this case and otherwise as indicated above.

*/s/ filed electronically 5/19/2021*
Kevin H. Morse