UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

LAS UVAS VALLEY DAIRIES,                                Case no. 17-12356-t11

    Debtor.

# OPINION

Although the bar date in this case was January 3, 2018, Jeani Anderson filed her proof of claim in April 2021. Before the Court is Anderson's motion to deem her proof of claim timely filed. Her asserted reasons for the late filing are than she did not get notice of the bar date and that she did not know she had a claim against Debtor until shortly before she filed her proof of claim. The Court held a final hearing on the motion on August 17, 2021. Being sufficiently advised, the Court finds and concludes that Anderson is not bound by the bar date because she was not given adequate notice of it. In addition, the Court finds and concludes that Anderson has shown excusable neglect in not filing her claim before she did. While the Court makes no ruling on the merits of Anderson's claim, it will not be disallowed for untimeliness.

A.    <u>Facts</u>.

    The Court finds:[1]

    Anderson is a registered interior designer, licensed in the state of Texas. Dean and Frances Horton were general partners of the Debtor Las Uvas Valley Dairies, a general partnership.

---

[1] The Court takes judicial notice of the dockets in this case, the Hortons' bankruptcy case (19-11162), and the two collection actions brought by Anderson against the Hortons in this federal district (16-cv-01317 and 18-cv-00642). *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

Anderson met the Hortons in 1980. Between 1980 and 2016, the Hortons hired Anderson to do ten or more interior design projects for them.

Anderson's interior design services included working with the Hortons to develop an aesthetic concept for each project; sourcing furniture, fixtures, and other materials; acting as the Hortons' representative with the vendors; obtaining favorable price and terms; and ensuring that the vendors were paid the correct amount. In exchange, the Hortons paid Anderson 10% of the total project cost, which rate, according to Anderson, is common in the interior design industry. With relatively few exceptions, Anderson's payments were from checks written on Debtor's operating account, rather than from the Hortons' personal account. The same was true for checks to the vendors Anderson dealt with on the Hortons' behalf.

In 2004, the Hortons hired Anderson to assist them with the interior design of a very expensive house they planned to build near their dairy in the Hatch Valley, New Mexico. The 22,000 square foot house has 88 rooms and is on at least 184 acres (the "House"). The Hortons spent about $15,000,000 on the House and furnishings, almost all of which came from Debtor.

On December 13, 2012, Debtor conveyed the House and about 184 acres to the Hortons. The Hortons moved into the House in October 2014.

The Hortons were unable to pay the construction and other costs for the House as they came due. To assist the Hortons with their financial difficulties, Anderson agreed to defer the payment of her claimed $1,500,000 fee until all vendors were paid. She also helped the Hortons negotiate with the vendors about the timing and amount of their payments.

In 2016 the Hortons made payments to Anderson totaling about $75,000. The payments were irregular and did not adhere to an informal agreement the parties had reached about paying

the fee. On December 2, 2016, Anderson sued the Hortons and Las Uvas Valley Dairy, LLC[2] in federal court to collect her fee. The docket does not show that the complaint and summonses were ever served on the defendants. Instead, Anderson and the Hortons settled the lawsuit almost immediately, whereupon Anderson dismissed it with prejudice. Under their settlement agreement, the Hortons agreed to pay Anderson $200,000 down and 48 monthly installments of $16,000, for a total of $968,000. Anderson waived the balance of her fee claim. The settlement agreement contained mutual releases between Anderson and the Hortons. Anderson's release of the Hortons did not release any claims she may have had against Debtor. The LLC did not sign the settlement agreement and was not mentioned in it. However, the dismissal with prejudice dismissed all of Anderson's claims against the LLC.

On September 15, 2017, Debtor filed this case. The claims bar date was set for January 3, 2018. Anderson did not receive written notice of the bankruptcy case or the bar date. Debtor did not publish notice of the bar date in any newspaper or other media. Anderson learned about the case from other sources about 90-120 days after it was filed, i.e., between December 15, 2017- January 15, 2018. She did not file a proof of claim by the bar date. About 50 non-insider creditors timely filed claims, which totaled about $51,800,000.[3] The largest claims were filed by Metropolitan Life Ins. Co. ($28,187,302) and Farm Credit/PCA (three claims totaling $17,565,812).

---

[2] Hereafter, the "LLC." The LLC was organized in November 2015 by Mitchell Horton. There is nothing in the record indicating who owns the LLC, what the LLC does, if anything, or what it, if anything. Neither Debtor's not the Hortons' bankruptcy schedules disclose any interest in the LLC.
[3] The Hortons' filed proof of equity interests totaling about $40,336,000. They did not file creditor claims.

An unsecured creditors' committee was appointed in the case. The committee and its counsel were active, negotiating with Debtor, Met Life, and PCA to maximize the dividend to unsecured creditors.

Primarily because of a lack of cash, Debtor's attempt to reorganize soon failed. On May 9, 2018, Met Life, PCA, and the UCC filed a joint plan of liquidation. The Court confirmed the plan, as amended, on June 14, 2018.

Under the confirmed plan, a liquidating trustee was appointed to liquidate Debtor's assets. On July 31, 2018, Robert Marcus became the successor liquidating trustee. The confirmed plan required a $1,000,000 partial distribution to general unsecured creditors by September 30, 2018. The payment was timely made.

The Hortons did not pay Anderson as agreed under their settlement agreement. On July 6, 2018, Anderson sued the Hortons in federal court to enforce the agreement. Unlike the first lawsuit, this one was not settled. Anderson served process on the Hortons, who answered the complaint. A scheduling order was entered and a bench trial was set for March 24, 2020. Anderson filed a motion for writ of attachment in April 2019. On May 17, 2019, before the court could rule on the motion, the Hortons filed a chapter 7 bankruptcy case. The Hortons listed the House on their bankruptcy schedules, showing a value of $6,900,000.

Clarke Coll was appointed the chapter 7 trustee in the Hortons' case. He filed a report of assets and an August 26, 2019, bar date was set. Anderson was on the creditors' list and received written notice of the bar date. She timely filed a proof of claim in the Hortons' case for $962,000.[4]

---

[4] On August 6, 2020, Marcus (not Coll) objected Anderson's proof of claim, arguing that the combination of the 2017 settlement agreement and partial payments received thereafter reduced the claim to $520,000. On October 22, 2020, the Court entered a default order sustaining the objection.

On January 31, 2020, Marcus sued the Hortons and Coll in the Hortons' bankruptcy case, alleging that the money to build and furnish the House came from the Dairy by a series of fraudulent transfers, and asking that the House be declared held in constructive trust for the benefit of Debtor's creditors. When Anderson learned of the constructive trust proceeding, she spoke to Coll about it several times. He told her he would vigorously defend the proceeding and that, in his opinion, it was unlikely the Court would impose a constructive trust on the House. He also opined that, in general, constructive trusts were not viewed favorably by bankruptcy courts.

Coll filed a motion to dismiss the adversary proceeding on May 8, 2020, arguing that Marcus had not stated a claim under a constructive trust theory. The Court denied the motion on June 26, 2020, ruling that the liquidating trustee stated a claim for constructive trust. The Court withheld judgment on Coll's argument that his § 543(a)(3) "strong arm" power could defeat any constructive trust that might burden the House, but ruled that the argument did not require dismissal under Fed. R. Civ. P. 12(b)(6).

On July 14, 2020, the Court entered a stipulated order approving a $2,625,000 sale of the House and 184 acres; certain personal property in the House; and an additional 394 acres next to the House that was titled in Debtor's name. The sale closed on or about July 20, 2020, and the net purchase price, after paying brokers' commissions, property taxes, and other closing costs, was given to Coll to hold pending resolution of the constructive trust proceeding.

On October 15, 2020, Coll and Marcus filed a joint motion to approve an agreement settling, inter alia, the constructive trust proceeding. Under the proposed settlement, Marcus would receive about $2,100,000, Coll would receive about $420,000, and the Hortons would receive $60,000.

Anderson filed an objection to the proposed settlement. The Court set a hearing on the motion and objection for January 7, 2021. Anderson withdrew the objection before the hearing and the Court entered an order approving the settlement on January 13, 2021.

Anderson filed her proof of claim on April 23, 2021, along with her motion to deem the claim timely filed. In the motion, Anderson waived any right she may have had to participate in the initial $1,000,000 distribution to general unsecured creditors.

B.  Due Process.

> A fundamental right guaranteed by the Constitution is the opportunity to be heard when a property interest is at stake. Specifically, the [bankruptcy] reorganization process depends upon all creditors and interested parties being properly notified of all vital steps in the proceeding so they may have the opportunity to protect their interests.

*Selman v. Delta Airlines*, 2008 WL 6022017, at *13 (D.N.M.), citing *Reliable Elec. Co., Inc. v. Olson Const. Co.*, 726 F.2d 620, 623 (10th Cir. 1984). "Generally, due process requires:

> notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance."

*Selman,* 2008 WL 6022017, at *13, quoting *In re Barton Indus., Inc.,* 104 F.3d 1241, 1245 (10th Cir.1997) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

In bankruptcy, "[a] creditor who does not receive proper notice of the claims bar date is not bound thereby." *In re Nortel Networks, Inc.*, 531 B.R. 53, 62 (Bankr. D. Del. 2015), citing *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953); *see also Eagle Bus Mfg. v. Rogers*, 62 F.3d 730, 735 (5th Cir. 1995) ("A creditor's claim can be barred for untimeliness only upon a showing that it received reasonable notice."); *Oppenheim, Appel, Dixon & Co. v. Bullock (In re Robintech, Inc.)*, 863 F.2d 393, 396 (5th Cir. 1989) ("In general, due process requires that

reasonable notice is that which is reasonably calculated to reach all interested parties, reasonably conveys all of the required information, and permits a reasonable amount of time for response.").

"For purposes of notice, bankruptcy law differentiates between 'known' and 'unknown' creditors." *Nortel Networks*, 531 B.R. at 62, citing *Chemetron Corp v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995); *see also Selman*, 2008 WL 6022017, at *14 (discussing the notice requirements for known and unknown creditors).

1. <u>Known Creditors</u>. A "known" creditor is one whose identity is either known or "reasonably ascertainable by the debtor." *Chemetron*, 72 F.3d at 346, citing *Tulsa Professional Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988).

> A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n.4, 77 L. Ed. 2d 180, 103 S. Ct. 2706 (1983). Reasonable diligence does not require "impracticable and extended searches . . . in the name of due process." *Mullane*, 339 U.S. at 317. A debtor does not have a "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." *In re Charter Co.*, 125 Bankr. 650, 654 (M.D. Fla. 1991).

*Chemetron*, 72 F.3d at 346.

Due process requires that known creditors be given written or "actual" notice of the bar date. *See In re HNRC Dissolution Co.*, 3 F.4th 912, 919 (6th Cir. 2021) (due process for known creditors "generally requires that the debtor attempt to provide notice directly"); *Chemetron*, 72 F.3d at 345 ("If claimants were 'known' creditors, then due process entitled them to actual notice of the bankruptcy proceedings."); *Bosiger v. U.S. Airways*, 510 F.3d 442, 451 (4th Cir. 2007) (for known creditors, "actual, written notice is required"); *Mission Towers v. Grace*, 2007 WL 4333817, at *6 (D. Del.) ("Known creditors must be provided with actual written notice of a debtor's bankruptcy filing and bar claims date"); *Selman*, 2008 WL 6022017 at *14 (same). Even if known creditors learn of a bankruptcy case, they "have a right to assume that the statutory

'reasonable notice' will be given them before their claims are forever barred." *City of New York*, 344 U.S. at 297; *see also Reliable Elec.*, 726 F.2d at 622 (quoting *City of New York*); *In re Unioil*, 948 F.2d 678, 683 (10th Cir. 1991) (quoting *Reliable Elec.*).

    2.    <u>Unknown Creditors</u>. An "unknown" creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to [the debtor's] knowledge." *Chemetron*, 72 F.3d at 346, citing *Mullane*, 339 U.S. at 317; *see also Selman*, 2008 WL 6022017, at *15, citing *Mullane*. Constructive notice by publication complies with the due process rights of unknown creditors. *See, e.g., Nortel*, 531 B.R. at 64 ("It is well settled that constructive notice of the claims bar date by publication, while less direct than actual notice, generally satisfies the requirement of due process for unknown creditors."); *Bosiger*, 510 F.3d at 451 (notice by publication is sufficient); *Chemetron*, 72 F.3d at 345-46 (same).

    A thorny question is whether learning about a case (e.g., from publicity about the filing or word of mouth) puts an unknown creditor on notice, sufficient to satisfy due process, even if there has been no publication notice and the unknown creditor learned nothing about where, when, or how to file a proof of claim. A number of cases have held that it does. *See, e.g., In re Gregory*, 705 F.2d 1118, 1123 (9th Cir. 1983); *In re National Spa & Pool Inst.*, 257 B.R. 784, 792 n. 6 (Bankr. E.D. Va. 2001); *In re W. Coast Video Enter., Inc.*, 174 B.R. 906, 910 (E.D. Pa. 1994); *In re Larsen*, 80 B.R. 784, 787 (Bankr. E.D. Va. 1987); *In re Siouxland Beef Processing Co.*, 55 B.R. 95, 100 (Bankr. N.D. Iowa 1985). At least one case has held to the contrary. *See Second Chance Body Armor, Inc. v. American Body Armor Equipment, Inc.*, 1999 WL 608718, at *5 (N.D. Ill.) (publication notice to unknown creditors is sufficient for due process, but not learning about the bankruptcy case from third parties); and *Second Chance Body Armor, Inc. v. American Body*

*Armor Equipment, Inc.*, 1999 WL 967521, at **2-8 (N.D. Ill.) (expounding on the court's earlier ruling, in response to a motion to reconsider). The Court agrees with the *Second Chance* court that, just as informal notice is not good enough for known creditors, it is not good enough for unknown creditors. There is no principled reason why unknown creditors should be discriminated against when it comes to informal notice. As it is, unknown creditors are bound by publication notice, which is a significant, albeit necessary, burden on their due process rights. There is no reason to further erode those rights by saddling them with inquiry notice. After all, publishing notice is relatively inexpensive and published notices contain vital information, i.e., the case name and number; the venue; the bar date; contact information for debtor's counsel; and the court clerk's mailing address. Requiring unknown creditors to obtain this information on their own creates an undue burden. If a debtor wants to bind unknown creditors to a bar date, it must give those creditors a reasonable publication notice that includes the necessary information.

In any event, in the cases where courts imposed inquiry notice on unknown creditors who learned of the bankruptcy, the informal notice was received well before the bar date. *See Siouxland Beef*, 55 B.R. at 100 (creditor who was deemed on inquiry notice learned of the bankruptcy filing "almost contemporaneous with the act"); *Gregory,* 705 F.2d at 1119 (creditor received notice of the bankruptcy filing the day after the petition date); *W. Coast Video*, 174 B.R. at 910 (publicity which formed the basis for finding of notice occurred one day after the petition date); and *Larsen*, 80 B.R. at 787 (creditor did not claim to be unaware of the bankruptcy before the bar date). The Court has not come across any cases holding unknown creditors to inquiry notice about the claims bar date when they first learned of the bankruptcy shortly before, or after, the bar date.

3. <u>Anderson was an Unknown Creditor</u>. When Debtor filed this case, it could not reasonably have anticipated that Anderson might assert a claim against it. Indeed, at the time no

-9-
Case 17-12356-t11   Doc 645   Filed 10/01/21   Entered 10/01/21 13:28:44 Page 9 of 15

one (least of all Anderson) considered her a creditor of Debtor. Her client was the Hortons, who had already acknowledged that they owed her money for her work on the House. For Anderson to realize that she might have a claim against Debtor, the liquidating trustee had to sue Coll seeking a constructive trust remedy; the Court had to deny Coll's motion to dismiss; Coll had to settle the action on terms Anderson perceived as favorable to Marcus; and the Court had to approve the settlement. These events occurred long after the bar date.

As an unknown creditor, Anderson was entitled to constructive (i.e., publication) notice of the bar date in Debtor's bankruptcy case, in time to file a claim. No publication notice was ever given. Thus, Anderson's claim is not time-barred. Furthermore, Anderson's uncontradicted testimony is that she learned about Debtor's case shortly before, or after, the bar date. Even if learning about the case put Anderson in inquiry notice, she did not have enough time to file a claim, so cannot be held to the bar date.

C.     Bankruptcy Rule 9006(b).

Anderson's alternative argument is that her failure to file a claim before she did was due to "excusable neglect," so the filing deadline should be enlarged under Fed. R. Bankr. P. 9006(b)(1). The rule provides:

> Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

"[B]y empowering the courts to accept late filings where the failure to act was the result of excusable neglect, Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as

circumstances beyond the party's control." *In re Wooten*, 620 B.R. 351, 356 (Bankr. D.N.M. 2020), quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) (internal quotations and citations omitted). "Whether a late filing is attributable to excusable neglect is an 'equitable inquiry,' requiring a court to 'tak[e] account of all relevant circumstances surrounding the party's omission.'" *Id.*, quoting *Pioneer* at 389, 395. Under *Pioneer*, courts analyze four factors when determining whether an untimely claim is due to excusable neglect: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer* at 395.

1. <u>Prejudice to the Debtor</u>. Under the first *Pioneer* factor, "the central inquiry is whether the *debtor* will be prejudiced." *Eagle Bus Mfg.*, 62 F.3d at 737 (italics in original). "[P]otential redistribution of money among creditors is not *Pioneer* prejudice." *In re Wooten*, 620 B.R. 351, 357 (Bankr. D.N.M. 2020), citing *In re Spring Ford Indus., Inc.*, 2003 WL 2149002, at *3 (Bankr. E.D. Penn 2003); *In re Cable & Wireless USA, Inc.*, 338 B.R. 609, 614 (Bankr. D. Del. 2006). Other relevant inquiries are "(i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated, (ii) whether the payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; (iii) whether payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether allowance of the claim would adversely impact the debtor actually or legally; and (v) whether allowance of the claim would open the floodgates to other future claims." *In re Energy Future Holdings Corp.*, 619 B.R. 99, 110 (Bankr. D. Del. 2020).

Under the above standards, allowing Anderson to file her claim would not be prejudicial. It was foreseeable that, once Marcus obtained a favorable settlement of his constructive trust

theory, creditors with claims relating to the House might assert them in Debtor's case. Payment of Anderson's claim, if allowed, would not force the return of amounts already paid. Allowing Anderson's claim would not harm Debtor or jeopardize Debtor's reorganization because Debtor has been liquidated. Finally, it does not seem likely that allowing Anderson to file a claim would open the floodgates to future claims. Her claim is unique.

2. <u>Length of Delay and Potential Impact on Judicial Proceedings</u>. "The length of the delay must be examined in 'absolute terms' or in an 'absolute sense,' meaning that the extent of the delay should be considered in isolation." *Energy Future Holdings*, 619 B.R. at 110, quoting *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 332 (3d Cir. 2012). The claims bar date was January 3, 2018, while Anderson filed her claim April 23, 2021, three years and three months later. That is a significant delay. On the other hand, Anderson filed her claim about three months after the Court approved the settlement between Marcus and Coll (January 13, 2021), a much less significant delay. Furthermore, the final distribution to creditors has not yet occurred and Anderson has waived any right she might otherwise have had to participate in the initial $1,000,000 distribution. Allowing the late filing would not adversely affect judicial proceedings.

3. <u>Reason for Delay</u>. In the Tenth Circuit, courts give the most weight to the third *Pioneer* factor, the "reason for delay including whether it was within the reasonable control of the movant." *See, e.g., In re Otero County Hosp. Ass'n, Inc.*, 2013 WL 74579 at *5 (Bankr. D.N.M.) ("The *Pioneer* factors do not necessarily carry equal weight; the reason for the delay, and in particular whether the movant was at fault, typically is the most important factor."); *U.S. v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) ("[F]ault in the delay remains a very important factor-perhaps the most important single factor-in determining whether neglect is excusable."); *In re*

*Monge*, 2020 WL 1649616 at *4 (Apr, 2, 2020) ("In this circuit, the third factor is of critical importance in determining whether neglect is excusable.").

Here, Anderson did not file a proof of claim earlier because she did not think she had a claim against Debtor. This view was shared by Debtor, the Hortons, and Marcus. Anderson changed her mind when the Court approved the settlement between Marcus and Coll. Regardless of the merit of her claim, Anderson was not at fault for the delay in filing it. Anderson acted when it became clear that the Marcus/Coll settlement was based in significant part on the constructive trust theory.

4. <u>Good Faith</u>. Marcus argues that Anderson lacks good faith because "she took part in ensuring that all construction vendors were paid in full. Frances Horton testified that these same vendors were paid with dairy checks and Anderson had first hand knowledge of the Hortons' use of Debtor funds to pay for the residence." This argument fails. It was not Anderson's place to oversee how the Hortons' spent their and Debtor's money. She was an independent contractor. The Hortons owned and ran the dairy—it was their duty to do so consistent with the rights of creditors. They breached that duty, but their malfeasance cannot be laid at the feet of the people they did business with. Anderson tried to make the best of a bad situation by helping get vendors paid and deferring her own fee. This is more consistent with good faith than otherwise.

Marcus also argues that Anderson lacked good faith because she released all claims against Debtor. That argument is addressed below. The Court concludes that Anderson acted in good faith.

Weighing the *Pioneer* factors, the Court finds that Anderson has demonstrated excusable neglect, so to the extent she is bound by the bar date, it will be extended until the date she filed her claim.

D. <u>Release of Anderson's Claims Against Debtor</u>.

Marcus argues that Anderson released all her claims against Debtor. Although this argument goes to the merits of Anderson's claim rather than her right to file it, the Court will address it because Marcus emphasizes the argument in his objection to Anderson's motion and points to the alleged dismissal as evidence of Anderson's bad faith.

The main thrust of Marcus' argument is that "Debtor was a defendant" in the 2016 collection action, which Anderson dismissed with prejudice.[5] The assertion is wrong. As noted above, the LLC was a defendant, not Debtor. It is not clear why Anderson named the LLC as a defendant, but the LLC and Debtor are not one and the same. Debtor is a general partnership that operated a large dairy for many years. The LLC, on the other hand, is a limited liability company formed in 2015 (ownership unknown) that apparently never did much of anything.

Marcus also argues that Anderson released Debtor because it and the LLC were "privies."[6] There is no evidence of privity, however. The evidence in the record indicates that the two entities share nothing except a name. The Court cannot conclude that Anderson released her claims against Debtor when she released her claims against the LLC.

## Conclusion

Anderson, an unknown creditor of Debtor, wishes to assert a claim filed long after the bar date passed. As she was never given actual or constructive notice of the bar date, her late claim is

---

[5] Marcus' objection to the motion, doc. 626, at pp. 2, 3, 9.

[6] Black's Law Dictionary defines a privy as "[a] person having a legal interest of privity in any action, matter, or property; a person who is in privity with another. Traditionally, there were six types of privies." *Black's Law Dictionary* 1394 (10th ed. 2014). The most applicable type of privy to the current situation is "privies in law." *Id.* The listed examples of privies in law are "husband and wife[,]" or in the context of litigation, "someone who controls a lawsuit though not a party to the lawsuit, someone whose interests are represented by a party to the lawsuit; and a successor in interest to anyone having a derivative claim." *Id. See also Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 10471052-54 (9th Cir. 2005) (discussing privity in the context of binding nonparties to litigation dismissal).

not barred. Furthermore, Anderson's failure to file the claim before she did was excusable. It did not occur to Anderson until recently that Debtor might owe her money for work on the House, under an unjust enrichment or quantum meruit theory. The potential claim arose in Anderson's mind when Marcus sued Coll to impose a constructive trust on the House and the trustees reached a settlement that gave the lion's share of the House's sale proceeds to Debtor's estate. Because Anderson worked on the House and may have a colorable claim against any owner thereof, her claim arguably followed the House and its sale proceeds.

Anderson's motion will be granted. Ruling on the merits of the claim is reserved for any claims objection that might be filed.

*/s/ David T. Thuma*

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: October 1, 2021
Copies to: counsel of record