UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

LAS UVAS VALLEY DAIRIES,	Case No. 17-12356-t11

Debtor.

# OPINION

Before the Court is whether to disqualify Dan White and Askew & White, LLC from representing Dona Ana County in its dispute with the liquidating trustee about allowance of the county's pre-and postpetition tax claims. The trustee seeks a disqualification order because Askew & White represented the debtor in possession in this case. The matter has been fully briefed and argued. After an evidentiary hearing, the Court concludes that the disqualification motion should be denied.

A.  Facts.[1]

For the limited purpose of ruling on the motion, the Court finds:[2]

On September 15, 2017, Las Uvas Valley Dairies, a New Mexico general partnership ("Debtor"), filed this chapter 11 case. The petition was signed by Askew & Mazel, LLC, the predecessor to Askew & White, LLC (together, "A&W"). On October 25, 2017, the Court approved the Debtor's motion to employ A&W as general bankruptcy counsel. Dan White was an associate of the firm at the time. A&W represented the Debtor in the bankruptcy case until about July 2019.

---

[1] The Court takes judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

[2] Some of the Court's findings are in the discussion portion of the opinion. They are incorporated by this reference.

Debtor filed its schedules on October 4, 2017. Schedule D listed Dona Ana County (the "County") as having a $216,975.10 secured claim. Debtor described the County's security as a "lien on all property in Dona Ana county."

The County filed proof of claim #16 on October 18, 2017, asserting a secured claim of $234,816.03. The claimed collateral was "Real Property." Attached to the proof of claim are summaries of real property taxes due for each parcel of real property Debtor owns in Dona Ana County.

Debtor served notice of the bar date in this case on November 17, 2017. The general bar date was January 3, 2018. The bar date for governmental units was March 15, 2018.

An unsecured creditors' committee ("UCC") was appointed in the case. On January 29, 2018, the UCC and the Debtor filed a joint plan of reorganization. The accompanying disclosure statement listed the County as having a secured claim of $234,816.03, based on the County's proof of claim. The plan proposed to pay the claim when the collateral securing it was sold.

The Debtor withdrew as a co-proponent of the plan it filed with the UCC. On March 12, 2018, Debtor filed its own plan and disclosure statement. Because of its financial difficulties, it was not able to pursue confirmation of its plan.

On May 9, 2018, The Metropolitan Life Insurance Company ("Met Life"), the Production Credit Association of New Mexico ("PCA"), and the UCC filed a Creditor Plan of liquidation (the "Creditor Plan"). The accompanying draft disclosure statement listed the County as having a secured claim of $234,816. The Court entered an order approving the disclosure statement for the Creditor Plan on May 9, 2018. The UCC mailed out the Creditor Plan, disclosure statement, order, and ballots to all creditors, including the County, on May 15, 2018.

The Court confirmed the Creditor Plan on June 14, 2018. Under the plan, all of Debtor's

assets were transferred to a liquidating trust (the "Trust"), to be managed and eventually sold by a liquidating trustee. Robert Marcus is the successor liquidating trustee ("Trustee"). Among the assets transferred to the Trust was the right to assert the attorney-client privilege with A&W formerly held by Debtor. All allowed secured, priority, and general unsecured claims against Debtor are to be paid from the Liquidating Trust, to the extent funds are available.

A&W continued to represent Debtor after confirmation of the Creditor Plan. For example, on March 22, 2019, A&W appeared for Debtor in an adversary proceeding filed by the Trustee. The Trustee objected to A&W's representing Debtor, but the Court overruled the objection. Similarly, on May 30, 2019, Debtor, acting through A&W, objected to a motion filed by the Trustee to approve a settlement among him, the litigation committee created under the Creditor Plan, and Met Life. A&W withdrew the objection on July 19, 2019.

On November 22, 2019, the Trustee objected to the County's proof of claim, arguing that all but $8,877.22 of the claim had been paid when Debtor's real property was sold. The County responded that, although it had received the prepetition taxes due on Debtor's real property, it had not been paid personal property taxes on Debtor's dairy herd for 2016, 2017, and 2018, and that all of such amounts should be allowed and paid. The general partners of Debtor supported the County's position. The Trustee and the County filed cross-motions for summary judgment.

Rather than rule on the cross-motions, on May 27, 2020, the Court ordered the County to file a motion to amend its proof of claim to add the additional prepetition taxes, and to file an application for payment of post-petition taxes as an administrative expense (the "Motion and Application"). The County did so on June 12, 2020. The Trustee objected to the Motion and Application, and the County replied. The resulting contested matter is still pending on remand.

The Court held a status conference on the Motion and Application on August 6, 2020, at

which the parties were invited to tell the Court whether either one wanted an evidentiary hearing. Neither did. Instead, they argued the merits of the Motion and Application. On September 18, 2020, the Court denied the Motion and Application.

The County appealed the Court's ruling. After winding its way through the United States Magistrate Court and District Court, with a brief stop at the Tenth Circuit Court of Appeals, the Court's ruling was affirmed in part and reversed in part. The matter was remanded to this Court to address (per the Tenth Circuit) the following:

- Whether to allow Dona Ana County to file its claim for 2017 taxes out of time, based on excusable neglect;
- The parties' factual dispute regarding whether the personal property taxes included in Dona Ana County's timely proof of claim were for livestock; and
- Whether there is any basis other than the Administrative Claims Bar Date on which to reject the County's postpetition claim.

A&W entered its appearance for the County on August 12, 2022. The Trustee moved to disqualify A&W on September 22, 2022, arguing that its prior representation of Debtor, together with the assignment of Debtor's assets and attorney-client privilege, created a disqualifying conflict of interest.

B.  NMRA 16-109(A).

New Mexico lawyers are governed by the New Mexico Rules of Professional Conduct, 16-100 et seq. NMRA 16-109(A) provides:

> Subsequent Representation. A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Parsing the rule, a lawyer is disqualified under NMRA 16-109(A) from representing a new client if (1) he had a former client; (2) he proposes to represent the new client in a matter that is the same

as or substantially related to a matter in which he represented the former client, and (3) the interests of the new and former clients in the matter are materially adverse. Here, the Court must decide who A&W's former client(s) is or are; whether the contested matter involving the County's tax claim is the same as or substantially related to the work A&W did for its former client(s); and whether the County's interests are materially adverse to those of A&W's former client(s).

Disqualification is a drastic remedy. *See, e.g., In re Mack Indus., Ltd.*, 606 B.R. 313, 318 (Bankr. N.D. Ill. 2019), quoting *Watkins v. Trans Union, LLC*, 869 F.3d 514, 518-19 (7th Cir. 2017). Trial courts are granted broad discretion to determine whether disqualification is required in a particular case. *Id*. The moving party bears a heavy burden to show facts warranting disqualification. *Id*., citing *In re Allboro Waterproofing Corp.*, 224 B.R. 286, 294 (Bankr. E.D.N.Y. 1998), and *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997).

1. <u>The Former Client Requirement</u>. A crucial issue in the disqualification dispute is whether the Trust is A&W's former client. If so, then the Court likely would hold that A&W could not represent the County in the contested matter. Otherwise, the representation likely is within the bounds of A&W's ethical duties.

The main argument in favor of holding that the Liquidating Trust is A&W's former client is that the Liquidating Trust received all of Debtor's assets, including the attorney-client privilege. A&W does not dispute the asset transfer, but argues that the transfer, including the assignment of the attorney-client privilege, did not create an attorney-client relationship where none existed before. This argument has some appeal. The creditors who filed the Creditor Plan (Met Life, the UCC, and PCA) were not A&W's clients. On the contrary, they were adverse to A&W's then-client. The filing and confirmation of the Creditor Plan were in some respects like a foreclosure, an assignment for the benefit of creditors, a receivership sale, or a similar involuntary disposition

of Debtor's assets. In those instances, as here, the attorney-client relationship does not necessarily follow the assets. This is shown in part by the fact that A&W continued to represent Debtor after confirmation of the Creditor Plan and the creation of the Trust.

In *In re Abengoa Bioenergy Biomass of Kansas, LLC*, 2018 WL 1321951 (Bankr. D. Kan.), Judge Nugent faced a similar issue. In *Abengoa* a Missouri debtor confirmed a plan of liquidation, which created a liquidating trust (the "MLT"). The Missouri debtor was represented by Vincent Slusher, who also represented an affiliated debtor in a Kansas bankruptcy case. The Kansas debtor, acting through Slusher, filed a plan of liquidation similar to the one confirmed in Missouri. In an unanticipated move, however, the MLT filed a competing plan of liquidation in Kansas, trying to collect an intercompany debt the Kansas debtor's plan proposed to subordinate. Shortly before the confirmation hearing on the competing plans, the MLT moved to disqualify Slusher from representing the Kansas debtor, arguing that the MLT was Slusher's former client and that Slusher therefore had a disqualifying conflict of interest. Judge Nugent denied the motion:

> Drivetrain [the liquidating trustee] has cited no case that holds a liquidating trustee appointed pursuant to a confirmed chapter 11 plan and who has succeeded to the chapter 11 estate, transforms [sic] the liquidating trustee to a "former client" of the attorneys who represented the former chapter 11 debtor through confirmation of its plan . . . . The MLT did not spring into legal existence until the Missouri liquidating plan was confirmed in the summer of 2017, the trust agreement was established, and the liquidating trustee was approved. At that point, Drivetrain became the post-confirmation designated representative of the estate, making it a separate and distinct entity from the Missouri Debtors. [citing § 1123(b)(3)(B).] The Missouri Debtors ceased to exist. At no time has [Slusher] represented the MLT. The MLT is not a "former client" of [Slusher].

2018 WL 1321951, at *7. Judge Nugent also discussed the effect of the MLT holding the Missouri debtor's attorney-client privilege. He ruled that the assignment of the privilege did not turn the MLT into Slusher's former client:

> The MLT is the successor of the Missouri debtors and operates for the benefit of their creditors. The MLT did not *become* the Missouri debtors. Rather, it succeeded

-6-
Case 17-12356-t11    Doc 675    Filed 12/02/22    Entered 12/02/22 14:47:27 Page 6 of 11

to their assets, rights, and interests (including their right to invoke the attorney-client privilege formerly held by the debtors).

*Id.* at *8 (italics in original). In this case, as in *Abengoa*, Debtor's assets were transferred to a liquidating trust and Debtor went out of business.

The Court does not necessarily have a problem with assigning the right to assert an entity's attorney-client privilege to a third party, but it raises a number of questions. As the United States Supreme Court held in *Commodity Futures Trading Comm. v. Weintraub*, the authority to assert the attorney-client privilege is an incident of corporate control that is exercised by management. 471 U.S. 343, 348-49 (1985). When a bankruptcy trustee is appointed in a corporate case, the trustee replaces management and assumes control over the privilege. *Id.* at 358. The trustee of a liquidating trust, however, does not substitute for a corporate debtor's management. Instead, he oversees the liquidation of some or all of a corporate debtor's assets, entirely free from the debtor's corporate structure. While the case law apparently treats the attorney-client privilege as an assignable right or asset, that treatment does not fit neatly into accepted ideas about corporate governance. Disputes like the one between A&W and the Trust highlight the complexities that arise when the right to assert the attorney-client privilege is severed from the client.

The Court holds that, unlike the attorney-client privilege, the attorney-client *relationship* is not assignable and was not assigned in this instance. Only the Debtor is A&W's former client, not the Trust.

2. The "Same or Substantially Related Matter" Requirement. For A&W to be disqualified, the contested matter would have to be the same as, or substantially related to, A&W's representation of Debtor. Comment 3 to NMRA 16-109 states:

> Matters are "substantially related" for purposes of this rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior

representation would materially advance the client's position in the subsequent matter. . . .

If there is a substantial relationship between the former representation and the current proceeding, an irrebuttable presumption arises that the former client revealed facts requiring the attorney's disqualification. *Living Cross Ambulance Serv. Inc. v. N.M. Pub. Regulation Comm'n*, 338 P.3d 1258, 1263 (N.M. 2014), citing *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1536 (D. Kan. 1992). "Doubts as to whether a substantial relationship exists should be resolved in favor of disqualification." *Living Cross*, 338 P.3d at 1263, quoting *Koch*, 798 F. Supp. at 1537.

Had Debtor successfully reorganized, A&W could not have represented the County in this contested matter, as the matter would have been "substantially related" to Debtor's reorganization efforts. The same is true if the Trust were A&W's former client. The Debtor did not reorganize, however, and the Trust is not A&W's former client. The contested matter is not the same as or substantially related to Debtor's failed reorganization efforts, which ended before the Creditor Plan was confirmed. The prior matter to which the contested matter *is* substantially related is the Trust's efforts to liquidate assets, review claims, and pay a dividend to creditors. The "substantially related" element of NMRA 16-109(A) does not prevent A&W from representing the County.

3. <u>The "Materially Adverse" Requirement</u>.

In addition, for A&W to be disqualified, Debtor's interests would have to be materially adverse to the County's in the contested matter. They are not. Debtor did not receive a discharge, *see* 11 U.S.C. § 1141(d)(3), and is out of business. It is an empty shell, indifferent to the outcome of the contested matter. Indeed, to the extent the interests of Debtor's general partners are relevant to the inquiry, the partners support the Motion and Application. The Court finds and concludes that the County's interests and the Debtor's are not materially adverse. In contrast, the County's

interests *are* materially adverse to the Trust's. Had A&W represented the Trust, it would be disqualified from representing the County.

C. <u>Confidential Communications and Information</u>.

Despite the fact that the Trust is not A&W's former client and is not prohibited by NMRA 16-109(A) from representing the County in the contested matter, the Court would disqualify A&W if it thought the representation likely would result in an improper use or disclosure of confidential information. The Court therefore will review the restrictions on A&W's handling of information gained during its representation of Debtor.

1. <u>The Attorney-Client Privilege</u>. The Trust has the right to assert Debtor's attorney-client privilege.[3] The Trustee has made it clear he does not waive the privilege, so A&W may not disclose, to the County or anyone else, any privileged communications between Debtor and A&W.

2. <u>Using Confidential Information</u>. NMRA 16-109(C) provides:

> <u>Former Representation</u>. A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
> (1) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client, or when the information has become generally known; or
> (2) reveal information relating to the representation except as these rules would permit or require with respect to a client.

Subsection (C)(1) prohibits A&W from using "information relating to the representation to the disadvantage of the former client." As discussed above, Debtor is a shell and likely would not be disadvantaged by A&W's use of information related to its former representation. This restriction is not a substantial concern.

---

[3] *See* NMRA 11-503.

3. <u>Revealing Confidential Information</u>. On the other hand, subsection (C)(2) prohibits A&W from "reveal[ing] information relating to the representation." Unlike the prohibition in subsection (C)(1), the prohibition against revealing information is not limited by the "to the disadvantage of the former client" language. It is a blanket prohibition against disclosure.[4]

Between the attorney-client privilege and the vague prohibition against revealing information relating to the representation, A&W should not disclose or use in this contested matter any information obtained during its representation of Debtor. If A&W determines that it needs or wants to use or disclose any such information, it should seek prior Court approval before doing so, after notice to the Trustee and an opportunity to object. By the same token, if the Trustee obtains information that A&W is using or disclosing confidential information improperly, it should seek relief from the Court. Finally, if A&W determines that its obligation not to use or disclose confidential information is materially limiting its representation of the County, it should seek to withdraw. *See* NMRA 16-107(A)(2) ("[A] lawyer shall not represent a client if . . . there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to . . . a former client[.]").

D.     <u>The Trustee's Motivation</u>.

A word about the Trustee's motivation in bringing the disqualification motion is in order. In *Abengoa*, Judge Nugent found that the disqualification motion was brought as a litigation tactic. 2018 WL 132951, at *10 ("I did not err in finding Drivetrain's objection to the Slusher/DBR

---

[4] Comment 8 to NMRA 16-109 states in part: "Paragraph C of this rule provides that information acquired by the lawyer in the course of representing a client may not subsequently be used or revealed by the lawyer to the disadvantage of the client." This may be what the drafters of the rule intended, but it is not what the rule says.

employment or this Motion to disqualify DLA and AT to be more tactical than substantive.").[5] That is not the case here. The Trustee is legitimately concerned that A&W may use confidential information improperly against the Trust in the contested matter. As the holder of the attorney-client privilege, the Trust has the right to take steps to prevent such improper use. The Trustee may have a different view than the Court about the effect of the assignment of the attorney-client privilege, but the disqualification motion was brought in good faith, to protect the Trust against the misuse of confidential information.

## Conclusion

The outcome of this dispute turns primarily on who A&W's former client is. The Court holds that the Debtor is A&W's only former client. A&W never represented the Trust. Because of that, NMRA 16-109(A) does not prohibit A&W from representing the County in the contested matter. Nevertheless, A&W has a continuing duty not to use or disclose confidential information obtained during its representation of Debtor. The motion to disqualify will be denied by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 2, 2022
Copies to: counsel of record

---

[5] Elsewhere Judge Nugent said: "Most courts regard tactical disqualification motions with disdain." *Id.* at 5.