UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

LAS UVAS VALLEY DAIRIES,　　　　　　　　　　　　　Case No. 17-12356-t11

　　　Debtor.

## OPINION

The liquidating trustee moved the Court to disqualify Daniel White and Askew & White, LLC from representing Dona Ana County in its dispute about allowance of the county's pre- and postpetition tax claims. The Court denied the motion, for reasons given in a written opinion entered December 2, 2022. The trustee now asks the Court to reconsider its ruling. The Court has reviewed the trustee's arguments and concludes that the Court's decision and reasoning were correct. The motion to reconsider therefore will be denied.

A.　　Facts.[1]

For the limited purpose of ruling on the motion, the Court finds:[2]

On September 15, 2017, Las Uvas Valley Dairies, a New Mexico general partnership ("Debtor"), filed this chapter 11 case. The petition was signed by Askew & Mazel, LLC, the predecessor to Askew & White, LLC (together, "A&W"). On October 25, 2017, the Court approved the Debtor's motion to employ A&W as general bankruptcy counsel. Mr. White was an associate of the firm at the time.

Debtor filed its schedules on October 4, 2017. Schedule D listed Dona Ana County (the

---

[1] The Court takes judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

[2] Some of the Court's findings are in the discussion portion of the opinion. They are incorporated by this reference.

"County") as having a $216,975.10 secured claim. Debtor described the County's security as a "lien on all property in Dona Ana county."

The County filed proof of claim #16 on October 18, 2017, asserting a secured claim of $234,816.03. The claimed collateral was "Real Property." Attached to the proof of claim are summaries of real property taxes due for each parcel of real property Debtor owns in Dona Ana County.

Debtor served notice of the bar date in this case on November 17, 2017. The general bar date was January 3, 2018. The bar date for governmental units was March 15, 2018.

An unsecured creditors' committee ("UCC") was appointed in the case. On January 29, 2018, the UCC and the Debtor filed a joint plan of reorganization. The accompanying disclosure statement listed the County as having a secured claim of $234,816.03, based on the County's proof of claim. The plan proposed to pay the claim when the collateral securing it was sold.

The Debtor withdrew as a co-proponent of the plan it filed with the UCC. On March 12, 2018, Debtor filed its own plan and draft disclosure statement. Because of its financial difficulties, it was not able to pursue confirmation of its plan.

Exhibit D of Debtor's draft disclosure statement lists the claims against the Debtor by class. The list of Class 3 creditors (secured claims) included the County, with a claim amount of $539,650.03. Daniel Behles, of counsel to A&W, filed a certificate of service on March 19, 2018, certifying that he mailed the plan and draft disclosure statement to, inter alia, the County treasurer.

On May 9, 2018, The Metropolitan Life Insurance Company ("Met Life"), the Production Credit Association of New Mexico ("PCA"), and the UCC filed a Creditor Plan of liquidation (the "Creditor Plan"). The accompanying draft disclosure statement listed the County as having a secured claim of $234,816. The Court entered an order approving the disclosure statement for the

Creditor Plan on May 9, 2018. The UCC mailed out the Creditor Plan, disclosure statement, order, and ballots to all creditors, including the County, on May 15, 2018.

The Court confirmed the Creditor Plan on June 14, 2018. Under the plan, all of Debtor's assets were transferred to a liquidating trust (the "Trust"), to be managed and eventually sold by a liquidating trustee. Robert Marcus is the successor liquidating trustee ("Trustee"). Among the assets transferred to the Trust was the right to assert the attorney-client privilege with A&W formerly held by Debtor. All allowed secured, priority, and general unsecured claims against Debtor are to be paid from the Liquidating Trust, to the extent funds are available.

A&W continued to represent Debtor after confirmation of the Creditor Plan. For example, on March 22, 2019, A&W appeared for Debtor in an adversary proceeding filed by the Trustee. The Trustee objected to A&W's representing Debtor, but the Court overruled the objection. Similarly, on May 30, 2019, Debtor, acting through A&W, objected to a motion filed by the Trustee to approve a settlement among him, the litigation committee created under the Creditor Plan, and Met Life. A&W withdrew the objection on July 19, 2019.

On November 22, 2019, the Trustee objected to the County's proof of claim, arguing that all but $8,877.22 of the claim had been paid when Debtor's real property was sold. The County responded that, although it had received the prepetition taxes due on Debtor's real property, it had not been paid personal property taxes on Debtor's dairy herd for 2016, 2017, and 2018, and that all of such amounts should be allowed and paid. The general partners of Debtor supported the County's position. The Trustee and the County filed cross-motions for summary judgment.

Rather than rule on the cross-motions, on May 27, 2020, the Court ordered the County to file a motion to amend its proof of claim to add the additional prepetition taxes, and to file an application for payment of post-petition taxes as an administrative expense (the "Motion and

-3-
Case 17-12356-t11    Doc 688    Filed 03/03/23    Entered 03/03/23 14:45:24 Page 3 of 13

Creditor Plan on May 9, 2018. The UCC mailed out the Creditor Plan, disclosure statement, order, and ballots to all creditors, including the County, on May 15, 2018.

The Court confirmed the Creditor Plan on June 14, 2018. Under the plan, all of Debtor's assets were transferred to a liquidating trust (the "Trust"), to be managed and eventually sold by a liquidating trustee. Robert Marcus is the successor liquidating trustee ("Trustee"). Among the assets transferred to the Trust was the right to assert the attorney-client privilege with A&W formerly held by Debtor. All allowed secured, priority, and general unsecured claims against Debtor are to be paid from the Liquidating Trust, to the extent funds are available.

A&W continued to represent Debtor after confirmation of the Creditor Plan. For example, on March 22, 2019, A&W appeared for Debtor in an adversary proceeding filed by the Trustee. The Trustee objected to A&W's representing Debtor, but the Court overruled the objection. Similarly, on May 30, 2019, Debtor, acting through A&W, objected to a motion filed by the Trustee to approve a settlement among him, the litigation committee created under the Creditor Plan, and Met Life. A&W withdrew the objection on July 19, 2019.

On November 22, 2019, the Trustee objected to the County's proof of claim, arguing that all but $8,877.22 of the claim had been paid when Debtor's real property was sold. The County responded that, although it had received the prepetition taxes due on Debtor's real property, it had not been paid personal property taxes on Debtor's dairy herd for 2016, 2017, and 2018, and that all of such amounts should be allowed and paid. The general partners of Debtor supported the County's position. The Trustee and the County filed cross-motions for summary judgment.

Rather than rule on the cross-motions, on May 27, 2020, the Court ordered the County to file a motion to amend its proof of claim to add the additional prepetition taxes, and to file an application for payment of post-petition taxes as an administrative expense (the "Motion and

Application"). The County did so on June 12, 2020. The Trustee objected to the Motion and Application, and the County replied. The resulting contested matter is still pending on remand.

The Court held a status conference on the Motion and Application on August 6, 2020, at which the parties were invited to tell the Court whether either one wanted an evidentiary hearing. Neither did. Instead, they argued the merits of the Motion and Application. On September 18, 2020, the Court denied the Motion and Application.

The County appealed the Court's ruling. After winding its way through the United States Magistrate Court and District Court, with a brief stop at the Tenth Circuit Court of Appeals, the Court's ruling was affirmed in part and reversed in part. The matter was remanded to this Court to address (per the Tenth Circuit) the following:

- Whether to allow Dona Ana County to file its claim for 2017 taxes out of time, based on excusable neglect;
- The parties' factual dispute regarding whether the personal property taxes included in Dona Ana County's timely proof of claim were for livestock; and
- Whether there is any basis other than the Administrative Claims Bar Date on which to reject the County's postpetition claim.

A&W sent Debtor a disengagement letter on or about December 13, 2021. There is no dispute that A&W does not currently represent Debtor.

A&W entered its appearance for the County on August 12, 2022. The Trustee moved to disqualify A&W on September 22, 2022, arguing that its prior representation of Debtor, together with the assignment of Debtor's assets and attorney-client privilege, created a disqualifying conflict of interest under NMRA 16-109.[3] A&W responded in opposition, acknowledging that the applicable rule of professional responsibility was NMRA 16-109 but arguing that the County's

---

[3] NMRA stands for the New Mexico Rules Annotated. NMRA 16-101 et seq are the Rules of Professional Conduct.

claim was not adverse to Debtor, just to the Liquidating Trust. The Liquidating Trustee replied. After an evidentiary hearing, the Court denied the motion to disqualify A&W.

B. The Order Denying the Motion to Dismiss is Interlocutory and Can be Reconsidered.

The Court's order denying the Liquidating Trustee's motion to disqualify A&W was interlocutory. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 375 (1981) (order denying motion to disqualify counsel if not subject to appeal prior to resolution of the merits); *In re Harwell*, 298 Fed. App'x 733, 736 (10th Cir. 2008) (unpublished) (citing and following *Firestone*).

Under Rule 54(b),[4] an order adjudicating fewer than all claims of all parties "may be reviewed at any time before entry of a judgment . . ." The rule applies to reconsideration of interlocutory orders. *See, e.g., C & A Const. Co. v. DHC Dev.*, 501 Fed. App'x 763, 779 (10th Cir. 2012) (applying Rule 54(b) to the district court's interlocutory order); *Raytheon Constructors, Inc. v. ASARCO, Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003) (Rule 54, not Rule 60, provides the basis for reconsidering an interlocutory order); *Trujillo v. Board of Educ. of Albuquerque Public Schools*, 212 Fed. App'x 760, 765 (10th Cir. 2007) (unpublished) (same). "[I]nterlocutory orders are not subject to the law of the case doctrine and may always be reconsidered prior to final adjudication." *Filebark v. United States Dept. of Transp.,* 555 F.3d 1009, 1013 (D.C. Cir. 2009), *cert. denied, 558 U.S. 1007* (2009) (quoting *Langevine v. District of Columbia,* 106 F.3d 1018, 1023 (D.C. Cir. 1997)). "District courts generally remain free to reconsider their earlier interlocutory orders." *Naylor Farms, Inc. v. Anadarko OGC Co.,* 2011 WL 7053794, at *1 (W.D. Okla. 2011) (citing *Rimbert v. Eli Lilly and Co.,* 647 F.3d 1247, 1251

---

[4] A "Rule" refers to the Federal Rules of Civil Procedure, while a "Bankruptcy Rule" refers to the Federal Rules of Bankruptcy Procedure.

(10th Cir. 2011)). The Court may reconsider its interlocutory order denying the Liquidating Trustee's motion to disqualify.

C.  The Standard for Reviewing Interlocutory Orders.

Tenth Circuit courts may rely on their general discretionary authority to reconsider interlocutory orders, as justice requires. *See, e.g., Friedman v. Dollar Thrifty Automotive Group, Inc.,* 2015 WL 8479746, at*2 (D. Colo. 2015) ("In deciding a motion to reconsider an interlocutory order, the court is not bound by the stricter standards for considering a Rule 59(e) or 60(b) motion. . . . Instead, a court has plenary power to revisit and amend interlocutory orders as justice requires."); *Trujillo v. Board of Educ. of the Albuquerque Public Schools*, 470 F. Supp. 2d 1270, 1275 (D.N.M. 2005) (applying the discretionary standard and determining that it was in the interests of justice to grant a motion to reconsider in part), *aff'd and remanded*, 212 Fed. App'x 760 (10th Cir. 2007); *Dombos v. Janecka,* 2012 WL 1372258, at *3 (D.N.M. 2012) ("Notably, neither rule 59 nor rule 60 apply to interlocutory orders a district court reconsiders before entry of final judgment."); *In re Saavedra*, 2022 WL 1051092, at **3-4 (Bankr. D.N.M.) (same, citing *Friedman* and *Trujillo*); *see generally* Rule 60, Advisory Committee Notes for 1946 Amendment to Subdivision (b) (fifth paragraph) ("[I]nterlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires").

D.  A&W's Use of "Privileged and Confidential Information."

The Liquidating Trustee argues that allowing A&W to represent the County will permit "A&W to utilize the Trust's privileged and confidential information to the detriment of the estate and its constituents." This argument confuses the attorney-client privilege and the prohibitions

contained in NMRA 16-109 against using or revealing information gained while representing a former client.

  1. <u>The attorney-client privilege</u>. The New Mexico attorney-client privilege, found in NMRE[5] 11-503, protects the *disclosure* of "confidential communications" (written or oral) between a lawyer and her client. There is nothing in the record indicating that any confidential communications between Debtor and A&W will be disclosed if A&W represents the County. The Liquidating Trust, as the holder of the privilege, has not waived it, so A&W is strictly prohibited from disclosing privileged communications to anyone, including the County.

  2. <u>Use of information related to the representation</u>. Rule 16-109(C)(1) provides:

> C. Former representation. A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>  (1) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client, or when the information has become generally known.

Rule 16-109(C)(1) prohibits, with certain exceptions not applicable here, an attorney from *using* information relating to the representation of a former client to the disadvantage of that former client. The Court previously held, and still holds, that there is no risk of A&W using information relating to its representation of Debtor to Debtor's disadvantage, for the simple reason that Debtor can no longer be disadvantaged by anything. Debtor is a shell and has no interest in the outcome of the County claim objection matter.

  3. <u>Revealing information related to the representation</u>. Rule 16-109(C)(2) provides:

> C. Former representation. A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
> . . .

---

[5] New Mexico Rules of Evidence.

(2) reveal information relating to the representation except as these rules would permit or require with respect to a client.

Rule 16-109(C)(2) prohibits an attorney from *revealing* information relating to the representation "except as these rules would permit or require with respect to a client." Neither side asserts that an exception applies to this prohibition. Thus, A&W may not reveal information relating to its representation of Debtor. This result was ordered in the Court's prior ruling.

In sum:

- A&W cannot *disclose* any privileged communications between it and Debtor;
- A&W can *use* information related to its representation of Debtor; but
- A&W cannot *reveal* information related to the representation.

It does not appear to the Court that A&W's representation of the County would be materially limited by adherence to these permissions and prohibitions.

E. The "Substantially Related" Requirement.

Rule 16-109(A) provides:

> A. Subsequent representation. A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.

The Liquidating Trustee cites comment 3 in support of its argument that the County claim objection is substantially related to Debtor's failed efforts to reorganize:

> Matters are "substantially related" for purposes of this rule if they involved the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. . .

The Liquidating Trustee argues:

> The Court clearly erred in not considering the second possibility for "substantially related," particularly in light of White's testimony at the Hearing. White has

-8-
Case 17-12356-t11    Doc 688    Filed 03/03/23    Entered 03/03/23 14:45:24 Page 8 of 13

admitted that A&W remains in possession of Debtor's work product and, possibly, privileged documents. . . The Court also heard White disclose facts and utilize his knowledge of Debtor's records to advance the position of DAC-testimony that requires disqualification.

The testimony referred to is Mr. White's answer to the Court's question about where the Debtor came up with the $539,650.03 figure for the County's secured claim. Mr. White testified that he had "a couple ideas", although he also testified that he had not prepared the disclosure statement and didn't really know. He opined that maybe part of the figure came from 2017 livestock taxes that had accrued but not yet been billed; part of it could have been post-petition livestock taxes; and part of it could have been real property taxes. This testimony is shows Mr. White's intelligence and grasp of the basic issues in the contested matter, but does *not* show that he or A&W, or the Debtor have confidential factual information that could materially advance the County's position in the claim objection.

If the County were allowed to amend is proof of claim, it is possible that the parties would disagree about how much pre-petition tax is owed on the dairy herd. Possible, but not likely, as the size of the herd is well documented. The same goes for the post-petition personal property tax claim. Furthermore, if there is a disagreement about the amount of the tax (as opposed to the County's ability to file claims for it), the County would have to prove up its claim amount with its own records, using nothing from Debtor's files that could in any way be deemed privileged or within the work product doctrine. In short, Mr. White's response to the Court's question does not show that the matters are substantially related.

Furthermore, whether the matters are substantially related is a moot point. Because the outcome of the County claim objection, whatever it might be, could not be materially adverse to the Debtor, there is no need to decide the "substantially related" issue.

F. <u>Material Adversity</u>.

The Liquidating Trustee argues that A&W cannot represent the County because it is materially adverse to the Liquidating Trust. Beating this equine carcass once again, the Court acknowledges that the County is materially adverse to the Liquidating Trust, but renews its holding that the County is not materially adverse to Debtor, A&W's former client. The Liquidating Trust is not A&W's former client.

The Liquidating Trust cites *In re Prairie Cent. Ry.*, 209 B.R. 232, 234 (Bankr. N.D. Ill. 1997), and *Harrington v. Kapila*, 2006 WL 5849320, at *1 (S.D. Fla.) in support of its argument. The cases are distinguishable, as they involved chapter 11 estate's counsel seeking to represent creditors after the cases converted to chapter 7. The estate in a converted chapter 7 case is the same as the one created when the debtor filed the original chapter 11 case. Here, in contrast, Debtor's assets were involuntarily transferred to a newly created trust, which had no legal, equitable, historical, or other relation to the Debtor or Debtor's partners. The Liquidating Trust is not the successor or continuation of Debtor. Having represented Debtor and established an attorney-client relationship does not mean that A&W has or ever had an attorney-client relationship with the Liquidating Trust.

The Liquidating Trustee's "materially adverse" argument is overruled.

G.  A&W's Irreparable Conflict.

For the first time, the Liquidating Trustee argues that A&W cannot represent the County because Mr. Behles, of counsel to A&W, might be called as a witness at the final hearing on the claim objection. A motion for reconsideration is not an appropriate time to make a new legal argument. Nevertheless, the Court will address it.

Rule 16-307 provides:

A.  Necessary witnesses. A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.
>
> B. Associate lawyer. A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 16-107 NMRA or Rule 16-109 NMRA of the Rules of Professional Conduct.

If Dan Behles is called to testify about mailing a draft disclosure statement to the County, Mr. White could still represent the County, per Rule 16-307(B).[6] If receipt of the disclosure statement is uncontested, Mr. White could represent the County pursuant to Rule 16-307(A)(1). Finally, if Mr. Behles' testimony is limited to his mailing the draft disclosure statement to the County, Mr. White could represent the County pursuant to Rule 16-307(A)(2). Based on the current record, the possibility that Mr. Behles may be being called as a fact witness is insufficient to disqualify A&W from representing the County.

H.  Public Policy Concerns.

The Court mentioned at the final hearing on the Liquidating Trustee's motion to disqualify A&W that "in this day and age I don't want to take any work away from anyone that practices here because there's so little work, but I want to be careful about this . . .." The Liquidating Trustee apparently asserts that this comment is tantamount to a ruling that the Court would not disqualify A&W even if it should, to prevent local attorneys from losing work. The frivolous argument is overruled. What the Court said was that it wanted to be careful in how it ruled, given the scarcity of work. Courts should not order counsel to terminate a representation without just cause. That is very different, however, from saying that the Court would allow a law firm to continue a

---

[6] Neither Rule 16-107 (Conflict of interest; current clients) nor Rule 16-109 (Duties to former clients) precludes the representation.

representation if it violated the Rules of Professional Conduct and/or the attorney-client privilege. As set out in the Court's December 2, 2022, opinion and this opinion, the Court finds and concludes that A&W can represent the County without violating either.

I.  Other.

The Court concludes that A&W is not disqualified from representing the County in part because the major issues to be determined on remand have little or nothing to do with Debtor and its counsel and very much to do with whether and/or why the County did or did not take certain actions. Does the County's proof of claim include the personal property taxes on Debtor's livestock? If not, why didn't the County include the personal property taxes in its proof of claim? Do its reasons constitute excusable neglect? With respect to its administrative claim, did the County make a due process argument to this Court or was it raised for the first time on appeal?[7] None of these issues relate to A&W's prior representation of Debtor.

## Conclusion

With the Liquidating Trustee's new argument about Rule 16-307, the Court has addressed every way the Liquidating Trustee has thought of to disqualify A&W from representing the County. Based on the current record, all the arguments fail. The motion to reconsider will be denied.

---

[7] *See, e.g., United States v. Rising*, 824 Fed. App'x 547 (10th Cir. 2020) (unpublished) (discussing appellant's due process claim, the court held that "Because he raises this argument for the first time on appeal, we do not consider it"); *Tele-Communications, Inc. v. C.I.R.*, 104 F.3d 1229, 1232 (10th Cir. 1997) ("Generally, an appellate court will not consider an issue raised for the first time on appeal"); *Scotia Group Mgt. LLC v. Willems*, 487 Fed. App'x 412, 413 (9th Cir. 2012) (unpublished) ("Willems waived her due process claim by raising it for the first time on appeal"); *Haddad v. River Forest Police Dept*, 384 Fed. App'x 513 (7th Cir. 2010) (unpublished) (discussing appellant's due process argument, the court held that "issues raised for the first time on appeal are waived"); *United States v. King*, 51 F.3d 269 n.1 (4th Cir. 1995) (unpublished) ("because these [due process] issues were not first raised below, appellate review is waived").

_/s/ David T. Thuma_
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: March 3, 2023
Copies to: counsel of record