UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:   LAS UVAS DAIRIES,                                                        No. 17-12356-j11
        a New Mexico General Partnership,

        Debtor.

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on remand from the United States District Court for the District of New Mexico ("District Court") following a second appeal to the District Court. The District Court in its Memorandum Opinion and Order entered on March 27, 2025 ("Remand Opinion and Order" – Doc. 735) concluded that Robert Marcus, Not Individually, But Solely In His Capacity as Successor Liquidating Trustee of The Las Uvas Dairies Liquidating Trust (the "Liquidating Trustee") has not waived the laches defense and remanded this matter to this Court to consider whether laches disallows the Dona Ana County Treasurer's ("County's") administrative claim against the Las Uvas Dairies ("Debtor") for 2018 livestock taxes (the "Second Remand Issue"). The District Court previously determined in an earlier appeal that the administrative claim bar date set forth in Debtor's confirmed chapter 11 plan, as modified by the order confirming the plan, did not apply to the County's administrative claim for livestock taxes (Doc. 644).

This Court has determined that no further evidentiary hearing is necessary to decide the Second Remand Issue. For the reasons explained below, this Court concludes that laches is not available to the Liquidating Trustee as a defense to the County's administrative claim. But even if the Court were to assume that the Liquidating Trustee is entitled to assert a laches defense, the Liquidating Trustee has failed to satisfy the laches requirements.

## PROCEDURAL BACKGROUND

Debtor filed its voluntary petition under chapter 11 on September 15, 2017. The County filed a proof of claim on October 18, 2017, in the amount of $234,816, based on pre-petition property taxes.[1] (Claim No. 16-1). On May 9, 2018, Metropolitan Life Insurance Company ("MetLife") and Production Credit Association of Southern New Mexico (Debtor's largest creditors), and the Unsecured Creditors Committee, filed a liquidating plan (the "Plan"). (Doc. 376). The County received notice of the Plan and the deadline to file objections to confirmation of the Plan. The Plan fixed an administrative claims bar date of 90 days after the Plan's effective date.

The Plan was confirmed on June 14, 2018. (Doc. 440). The Las Uvas Liquidating Trust was established pursuant to the Plan, and Phillip Mitchell was appointed as liquidating trustee. In the confirmation order, the deadline to file administrative claims was changed from 90 days after the Plan's effective date to 15 days after the Plan's effective date. The County received a copy of the Plan and disclosure statement, notices of the deadline to object to the Plan, and notice of the confirmation hearing, but did not object to the Plan or appear at the confirmation hearing. The County did not receive notice of confirmation order. Phillip Mitchell resigned as liquidating trustee in July of 2018, and Robert Marcus was appointed as successor Liquidating Trustee on July 31, 2018 (Doc. 493).

The Final Decree was issued July 27, 2025. (Doc. 491). By the time the County received notice of the Motion for Final Decree, the administrative claims bar date set forth in the confirmation order and the deadline to appeal the confirmation order had both expired.

The County's proof of claim, filed October 17, 2017, only asserted a secured claim for prepetition real property taxes; it did not include a claim for livestock taxes. The County did not

---

[1] All dollar amounts are rounded to the nearest whole dollar.

file an administrative claim in the bankruptcy case. Instead, the County advised the Liquidating Trustee by email on March 25, 2019, that it expected to be paid for pre- and post-petition livestock taxes owed by the Debtor. That email prompted the Liquidating Trustee to file a Partial Objection to Claim ("Partial Objection" – Doc. 566) on November 22, 2019, asking the Bankruptcy Court[2] to determine that the Liquidating Trustee should pay the County a total of an additional $8,877 on account of the County's $234,816 secured prepetition real property tax claim and owe nothing to the County for livestock taxes. Instead of ruling on the Partial Objection, the Bankruptcy Court ordered the County, if it wished to add livestock taxes to its proof of claim and/or to assert an administrative claim, to file a motion to amend its proof of claim and/or to apply for an administrative claim for livestock taxes to which the Liquidating Trustee could object. (Doc. 585).

The County then filed a motion to amend its proof of claim to add pre-petition livestock taxes to the claim and filed an application for approval of an administrative claim for post-petition livestock taxes (Doc. 586 – the "Motion to Amend and for Administrative Expense"). The pre- and post-petition livestock tax claims totaled $488,358. The County requested approval from the Bankruptcy Court of a payment of $153,402 from the Liquidating Trustee as an administrative expense for taxes, interest, and penalties for livestock taxes due for the 2018 tax year. The Liquidating Trustee objected to the allowance of the administrative claim but not the amount of the administrative claim. (Doc. 587).

---

[2] The Honorable David T. Thuma presided over this bankruptcy case until he passed away on May 8, 2025. This case was reassigned to the undersigned judge after Judge Thuma passed away. The Court will refer to the bankruptcy court, when Judge Thuma was the presiding judge, as "the Bankruptcy Court" and will refer to the bankruptcy court, after the bankruptcy case was reassigned to the undersigned judge, as "the Court" or "this Court." The reason for making the distinction is to signify (i) what transpired while the Judge Thuma, who heard the testimony, was the presiding, and (ii) what transpired while the undersigned judge, who only reviewed the transcript of the evidentiary hearing, was presiding. As a result, this Court cannot make a finding of fact without taking additional testimony if the finding requires assessing the credibility of a witness. This Court has determined that a further evidentiary hearing is not necessary for the Court to rule on the Second Remand Issue.

The Bankruptcy Court held a hearing on the Motion to Amend and for Administrative Expense on August 6, 2020. At that hearing, the parties stipulated that no evidence was necessary for the Bankruptcy Court to decide the Motion to Amend and for Administrative Expense. The Bankruptcy Court issued an Opinion on September 18, 2020, ruling that the claim for 2017 livestock taxes was a prepetition claim and the claim for 2018 livestock taxes ("2018 Livestock Taxes") was a post-petition claim; denying the County's request to amend its proof of claim to include the prepetition claim for livestock taxes; and denying the County's administrative claim for post-petition 2018 Livestock Taxes. (Doc. 596). The Bankruptcy Court denied the administrative claim on the ground that it was time barred by the administrative claims bar date fixed in the confirmation order.

On October 2, 2020, the County filed a notice of appeal ("First Appeal") to the District Court (Doc. 603). The District Court affirmed the Bankruptcy Court's ruling that the County's claim for 2017 livestock taxes was a pre-petition claim and that the claim was filed late; that the County was time-barred from amending its proof of claim to assert a claim for the pre-petition livestock taxes; and that the County's claim for 2018 Livestock Taxes was a post-petition administrative claim. However, the District Court reversed the Bankruptcy Court's denial of the County's administrative claim for the 2018 Livestock Taxes on the ground that it was time-barred by the Plan. The District Court instructed the Bankruptcy Court on remand to 1) revisit whether the personal property taxes in the County's original proof of claim were for livestock taxes, 2) consider whether the County should be permitted to file a late clam for prepetition livestock taxes based on excusable neglect; and 3) consider whether there was any reason other than the administrative claims bar date in the Plan, to disallow the County's administrative claim for 2018 Livestock Taxes (together, the "First Remand Issues").

The Liquidating Trustee appealed the District Court's decision in the First Appeal to the Tenth Circuit Court of Appeals (the "Tenth Circuit"). The Tenth Circuit dismissed the appeal on July 22, 2022, because the District Court had remanded the matter to the Bankruptcy Court, and, as a result there was no final appealable order.

The Bankruptcy Court held an evidentiary hearing on the First Remand Issues on October 5, 2023 (the "Remand Hearing"). On December 1, 2023, the Bankruptcy Court issued an Opinion and Order on the First Remand Issues ruling that 1) the County's original proof of claim did not include livestock taxes; 2) the County's failure to timely amend its proof of claim was not due to excusable neglect; and 3) the administrative claims bar date fixed in the confirmation order was the only reason to reject County's administrative claim for the 2018 livestock taxes, so the County's administrative claim should be allowed. On December 15, 2023, the Liquidating Trustee filed a notice of appeal (the "Second Appeal" – Doc. 723). The County did not appeal the Bankruptcy Court's decision that its failure to timely amend its proof of claim was not due to excusable neglect.

On March 27, 2025, the District Court issued its decision in the Second Appeal. It remanded the case to the Bankruptcy Court to consider the Second Remand Issue (whether the County's administrative claim should be disallowed under the Liquidating Trustee's laches defense). This Court held a status conference on the Second Remand Issue on May 21, 2025. At the status conference, the parties stipulated that the Second Remand Issue should be decided based on the transcript of the evidentiary Remand Hearing held on October 5, 2023, and on briefs the parties would submit, and without the Court taking further evidence. The Court issued an order based on the parties' stipulation and ordered further that the Court would hold oral argument if requested. The parties fully briefed the laches issue. The Liquidating Trustee requested oral argument.

On September 11, 2025, the Court held oral argument on the Second Remand Issue. The Liquidating Trustee asked the Court to take further evidence on the issue, to which the County objected. The Court decided it would consider whether to take additional evidence without holding the Liquidating Trustee to his prior stipulation that the Court should decide the Second Remand Issue without taking additional evidence and took under advisement the issue of whether to take additional evidence and the Second Remand Issue. On September 25, 2025, the Court issued an order denying the Liquidating Trustee's request to consider further evidence with the proviso that if after reviewing the evidence from the Remand Hearing in greater detail, the Court may, *sua sponte*, reconsider that ruling.[3] (Doc. 758).

## FINDINGS[4]

Pursuant to Fed. R. Civ. P 52(a)(1), made applicable to this contested matter by Fed. R. Bank. P. 7052 and 9014(c), the Court makes the following findings of fact.[5]

The Court's findings of fact include this chart as a timeline of events:

---

[3] Judge Thuma presided over the hearing that provides the evidentiary basis for this Court to decide the Second Remand Issue.

[4] Any facts set forth in the Procedural Background are incorporated herein by this reference and constitute findings of fact. The Court's findings are based on the Stipulated Facts made in connection with a non-evidentiary hearing held August 6, 2020, evidence admitted at the October 5, 2023, Remand Hearing, and the matters of which the Court has taken judicial notice. The Court takes judicial notice of its docket in this case, of the documents filed on the docket, and the dockets in the appeals of Bankruptcy Court orders. *See Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) ("We take judicial notice of court records in the underlying proceedings."); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.")

[5] Any additional findings of fact contained in the Discussion section of this Memorandum Opinion not expressly set forth in the Findings of Fact section are hereby incorporated by reference into the Findings of Fact section and adopted as the Court's findings of fact made. Fed. R. Civ. P. 52(a)(1), made applicable to this contested matter by Fed. R. Bank. P. 7052 and 9014(c).

-6-

| Date | Event |
|------|-------|
| 09-15-2017 | Petition Date (chapter 11 case commenced) (Doc. 1) |
| 09-17-2017 | County receives notice of the bankruptcy case |
| 10-18-2017 | County files a proof of claim limited to a claim for unpaid real estate taxes in the amount of $234,816 (Claim No. 16-1) |
| 03-14-2018 | Proof of claim bar date for governmental units (set in an order issued by the Bankruptcy Court – Doc. 102) |
| 05-09-2018 | Joint Plan filed by MetLife and the Unsecured Creditors Committee, filed after all proof of claim bar dates fixed by court had passed (Doc. 376) |
| 05-2018 | County receives a copy of the plan and disclosure statement and notice of deadline to object and of the confirmation hearing |
| 06-13-2018 | Confirmation hearing held. County did not object to the plan or attend the hearing |
| 06-14-2018 | Confirmation order entered that fixed an administrative claims bar date of 15 days after the Plan's effective date (the effective date was June 14, 2018, the date the confirmation order was entered on the docket) (Doc. 440) |
| 07-27-2018 | Bankruptcy case is closed |
| 07-31-2018 | Marcus appointed as Successor Liquidating Trustee (Doc. 493) |
| 5-2018 through 8-2018 | Liquidating Trustee sells livestock |
| 11-2018 (first week) | County mails a bill for 2018 Livestock Taxes in the amount of $126,257 to the Debtor (Las Uvas Dairies) in the ordinary course of business the same as if Las Uvas Dairies had not filed a bankruptcy case |
| 03-2019 | Liquidating Trustee sells real estate and from the proceeds pays the County all 2016-2019 real estate taxes owed by the Debtor |
| 03-2019 | County informs the Liquidating Trustee by telephone that 2018 Livestock Taxes and other taxes have not been paid and are still owed |
| 03-25-2019 | County follows up the telephone call with an email to the Liquidating Trustee, attaching spreadsheets and a copy of the 2018 tax bill, requesting payment of $438,453, including among other things, post-petition 2018 Livestock Taxes in the amount of $126,257 and other prepetition livestock taxes. |
| 05-03-2019 | Motion to Approve Settlement between Liquidating Trustee and MetLife. County receives notice but does not object to the motion. The MetLife Settlement was premised on known, filed or deemed allowed, claims, including administrative claims filed by the administrative claims bar date fixed by the plan and confirmation order (Doc. 531) |
| 07-24-2019 | Bankruptcy Court approves the MetLife Settlement (Doc. 549) |
| 11-22-2019 | The Liquidating Trustee files a Partial Objection to the County's claim (Doc 566). The Partial Objection asserts the Liquidating Trustee should pay the County a total of an additional $8,877 on account of the County's $234,816 proof of claim for secured prepetition real property tax claim and owed nothing to the County for prepetition or post-petition livestock taxes |

| | |
|---|---|
| 12-23-2019 | The County files a response to the Partial Objection. This was the County's first filing in the Bankruptcy Case since it filed its Prepetition Claim for property taxes. (Doc. 570) |
| 05-27-2020 | A Bankruptcy Court order requires the County to file a motion to amend its prepetition claim and/or an application for approval and payment of administrative expenses for the Bankruptcy Court to consider the same. (Doc. 585) |
| 06-12-2020 | The County files a motion to amend its prepetition claim and an application for payment of an administrative claim (Doc. 586) |
| 08-06-2020 | The Bankruptcy Court holds a non-evidentiary hearing on the County's motion to amend its prepetition claim and an application for payment of an administrative claim and the Liquidating Trustee's objection thereto |
| 09-18-2020 | The Bankruptcy Court denies the County's motion to amend its Proof of Claim, finding no excusable neglect and denies the administrative claim as barred by the administrative claim bar date in the plan and confirmation order (Doc. 596) |

The Plan. The Debtor operated a large dairy in Doña Ana County, New Mexico. It filed this chapter 11 case on September 15, 2017. (Doc. 1). The County received notice of the bankruptcy case and flagged Debtor's accounts as being part of a bankruptcy. After receiving the Notice of Debtor's chapter 11 case, the County printed reports reflecting the taxes Debtor owed at the time of filing and filed its proof of claim for pre-petition real property taxes totaling $234,816 on October 18, 2017. (Claim No. 16-1).

The County received a notice of deadline to file proofs of claim for government units. The County did not have counsel review the notice or review its proof of claim. The County simply placed notice of deadline to file proofs of claim in a file. On May 9, 2018, MetLife, Production Credit Association of Southern New Mexico, and the Unsecured Creditors' Committee filed a liquidating Plan. (Doc. 376). Included in the Plan was a deadline to file administrative claims of 90 days after the effective date[6] of the Plan. The County received a copy of the Plan, the disclosure

---

[6] The Plan (Doc. 376) defined the "effective date" as three business days after the entry of the confirmation order; however, the confirmation order substituted a revised definition for "effective date" as the date the confirmation order was entered on the docket. (Doc. 440).

statement, and a notice of the deadlines to object. The County, again, placed the documents in the file with the other documents, without review by the County's counsel. The County did not file any objections to the Plan. The County received notice of the June 13, 2018, final hearing on confirmation of the Plan. The County did not appear at the final hearing.

Confirmation. On June 14, 2018, the Court confirmed the Plan. The confirmation order changed the deadline to file administrative claims from 90 days after the effective date of the Plan to 15 days after the effective date. (Doc. 440). Neither notice of the confirmation of the Plan, nor the confirmation order, were sent to the County, and the Plan proponents did not serve the County with a copy of the confirmation order.[7] The Final Decree was entered on July 27, 2018. (Doc. 491). The County received notice of the final decree and removed the bankruptcy flag from Debtor's tax accounts, which resulted in the County sending tax bills and reminder tax notices to Debtor in the normal course of business without regard to Debtor's bankruptcy case. On July 31, 2018, Robert Marcus was appointed as successor Liquidating Trustee, replacing Phillip Mitchell who resigned on July 18, 2018 (Doc. 493).

County's request for payment of 2018 livestock taxes. The Liquidating Trustee was aware or should have been aware that the Debtor owned livestock in 2018 for which taxes were owed to the County, as the Liquidating Trustee sold livestock between May and August 2018. By October 1 of each year, the County receives current livestock tax rates; and by November of each year sends tax bills for the year's livestock and other taxes. After the County removed its bankruptcy flag relating to Debtor, the County resumed sending tax bills to Debtor per its normal procedure. The Liquidating Trustee caused Debtor's mail to be forwarded to him prior to November 2018.

---

[7] This lack of notice to Dona Ana of the confirmation of the plan and the changed deadline for administrative claims in the confirmation order was the due process issue discussed in the Proposed Findings and Recommended Disposition adopted in the September 30, 2021, final judgment of the District Court. (Doc. 644).

During the first week of November 2018, the County mailed a tax bill to Debtor, which was forwarded by the U.S. Postal Service to the Liquidating Trustee.[8] The tax bill included Debtor's 2018 livestock tax assessment of $126,257, which was a portion of Debtor's total outstanding tax bill in the amount of $438,453. The total amount payable stated in the tax bill included unpaid 2018 livestock taxes.

In January 2019, the Liquidating Trustee received (in Debtor's mail that was forwarded to him via the United States Postal Service) the County's 2019 New Mexico Livestock Report form. The Liquidating Trustee completed the form and filed it, reporting to the County that the Liquidating Trust owned no livestock as of January 1, 2019.

At some time in early 2019, someone from the County spoke to the Liquidating Trustee by telephone about personal property taxes for 2016, 2017, and 2018 due for cattle on three specific tax accounts.[9] The Liquidating Trustee does not dispute this.[10] The Liquidating Trustee did not know about the specific tax accounts but in general terms disputed the Liquidating Trust's liability for any taxes that were not part of the County's filed proof of claim. The Liquidating Trustee believed that any unfiled claims were barred by filing deadlines, such as the claims bar date applicable to governmental units, and the administrative claims bar date fixed in the confirmed Plan.

The Liquidating Trustee sold Debtor's real estate in March 2019. From the sales proceeds the Liquidating Trustee paid the County all 2016-2019 real property taxes in the amount of

---

[8] There is a rebuttable presumption that properly addressed mail placed in the care of the postal service is received. *Farrow v. Tulupia*, No. 21-1027, 2022 WL 274489, at *2 (10th Cir. Jan. 31, 2022) *citing Witt v. Roadway Express*, 136 F.3d 1424, 1429-30 (10th Cir. 1998). The Successor Trustee never presented evidence to rebut the presumption.

[9] Doc. 730 Transcript of October 5, 2020, Final Hearing, pp. 148 – 152.

[10] Doc. 743 Reply Brief of Robert Marcus p. 3 of 14, ¶ 3 *citing* Doc. 742, Dona Ana County Treasurer's Response pp 4-5.

$339,612, including taxes not identified in the County's filed proof of claim. The "unclaimed" 2018-19 real property taxes were paid because they were secured under New Mexico law by a first lien on the real property the Liquidating Trustee sold. By the end of March 2019, all bankruptcy estate property had been sold; all real property taxes had been paid; and the Liquidating Trust was no longer accruing taxes by owning taxable real or personal property.

On March 25, 2019, the County sent an email to the Liquidating Trustee to follow up on its telephone conversation with the Liquidating Trustee regarding outstanding taxes. The email informed the Liquidating Trustee that the Debtor still owed personal property taxes for 2016, 2017, and 2018 totaling $438,453, and provided documentation that supported the request for payment. Attached to the email, among other things, was a copy of Debtor's 2018 tax bill which showed 2018 Livestock Taxes due in the amount of $126,257. Although he did not respond to the email, the Liquidating Trustee disagreed that the bankruptcy estate was liable for the livestock taxes. In his view the livestock tax claims were barred by the proof of claim filing deadline fixed by the Bankruptcy Court and by the administrative claims bar date set forth in the Plan and the order confirming the Plan.

Prior to May 2019, the Liquidating Trustee negotiated a settlement with MetLife. The parties reached a settlement subject to Court approval. On May 3, 2019, the Liquidating Trustee filed a motion to approve the settlement between the Liquidating Trustee and Met Life. (Doc. 531). The Plan required the Liquidating Trustee to make monthly payments to MetLife and to pay MetLife the net proceeds from the sale of its collateral. Ultimately, pursuant to the settlement, MetLife was allowed a nonpriority unsecured claim in the amount of $6,481,297 in full satisfaction of the remainder of its allowed secured claim. The Bankruptcy Court approved the settlement on July 24, 2019. (Doc. 549). Had the County filed an administrative claim for the 2018 Livestock

Taxes before the administrative claims bar date fixed by the order confirming the Plan, the Liquidating Trustee would have taken that claim into account when negotiating the settlement with MetLife. He is confident Met Life would have agreed to reduce the payment on account of its secured claim, and to increase its nonpriority unsecured claim, by the amount of the County's administrative claim for 2018 Livestock Taxes. The Court assumes MetLife would have so agreed. This would have increased the funds remaining to pay the class of nonpriority unsecured claims. Because MetLife would only be paid pro rata for its increased nonpriority unsecured claim, instead of 100% of that amount had it been included in its secured claim, the estate funds remaining to pay other holders of allowed nonpriority unsecured claims would have increased.

Prior to the final negotiations of the settlement with Met Life, the Liquidating Trustee was aware that the County had requested payment of its 2018 livestock taxes. The County mailed its bill for 2018 Livestock Taxes and delinquent property taxes to the Debtor, which was forwarded to the Successor Trustee, in November of 2018; the County had informed the Liquidating Trustee by telephone that personal property taxes, including the 2018 Livestock Taxes, were still outstanding; and subsequently, on March 25, 2019, the County emailed the Liquidating Trustee a request for payment with documents attached that included a copy of Debtor's 2018 tax bill. The Liquidating Trustee disregarded those requests for payment of 2018 Livestock Taxes because the County had not filed an administrative claim by the administrative claim bar date fixed by the Plan and order confirming the Plan.

**DISCUSSION**

**A.    The Issues on Remand and the Parties' Contentions**

In the First Appeal, the District Court determined the County was not bound by the administrative claims bar date fixed by the Plan and order confirming the Plan. In the Second

Appeal, the District Court determined that the Bankruptcy Court erred by not deciding whether the County's claim for 2018 Livestock Taxes is barred under the doctrine of laches. If it is so barred, the claim should be disallowed. If it is not so barred, the claim should be allowed. On remand, this this Court is tasked with determining whether the County's administrative claim for 2018 Livestock Taxes should be allowed after adjudicating the Liquidating Trustee's laches defense.

There are two sub-issues before this Court: (1) whether, under the circumstances of this case, the doctrine of laches available as a defense to the payment of an administrative expense claim of a governmental unit; and, (2) if the equitable defense of laches is available to the Liquidating Trustee, whether the Liquidating Trustee has shown that the elements of laches are satisfied.

**B.    Whether the Laches Defense is Available to the Liquidating Trustee**

_Section 503(b)(1)(D) placed the burden on the Liquidating Trustee to ascertain whether the County was entitled to an administrative expense claim for 2018 Livestock Taxes_

To analyze whether the laches defense is available to the Liquidating Trustee, the Court begins by examining 28 U.S.C. § 960 and 11 U.S.C. § 503(b)(1)(D)[11] to determine whether the Debtor or Liquidating Trustee had the initial burden to ascertain whether the County was entitled to an administrative expense claim for 2018 Livestock Taxes. If the Liquidating Trustee was obligated to find out whether the Debtor owed the 2018 Livestock Taxes as an administrative expense of the bankruptcy estate, the Liquidating Trustee might not be able to rely on laches as a defense to payment of the claim because the doctrine of laches is an equitable defense.[12]

---

[11] Unless otherwise indicated, all statutory references are to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., known as the United States Bankruptcy Code ("Code").

[12] _See Mile High Indus. v. Cohen_, 222 F.3d 845, 857 (10th Cir. 2000) ("Laches is considered 'an equitable defense, controlled by equitable considerations.'" (quoting _Halstead v. Grinnan_, 152 U.S. 412, 417 (1894))).

-13-

Section 960 of Title 28 was amended effective April 20, 2005, the same date that § 503(b)(1)(D) was signed into law. Section 960, as amended, provides:

> (a) Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation.
>
> (b) A tax under subsection (a) shall be paid on or before the due date of the tax under applicable nonbankruptcy law unless—
>
>> (1) the tax is a property tax secured by a lien against property that is abandoned under section 554 of title 11, within a reasonable period of time after the lien attaches, by the trustee in a case under title 11; or
>>
>> (2) payment of the tax is excused under a specific provision of title 11.

28 U.S.C. § 960. With exceptions not applicable here, 28 U.S.C. § 960 obligates any officers or agents conducting any business under authority of a United States court to pay taxes as required by applicable nonbankruptcy law. Trustees and debtors in bankruptcy fall within 28 U.S.C. § 960.[13]

In 2005, Congress amended the Bankruptcy Code by enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). BAPCPA was signed into law on April 20, 2005, and became effective 180 days later, on October 15, 2005. Among the amendments to the Bankruptcy Code made by BAPCPA was the adoption of § 503(b)(1)(D). That section provides:

> (D) notwithstanding the requirements of subsection (a) [of § 503], a governmental unit shall not be required to file a request for the payment of an expense described in subparagraph (B) or (C), as a condition of its being an allowed administrative expense.

---

[13] *See In re Mansfield Tire & Rubber Co.*, 85 B.R. 437, 441 (Bankr. W.D. Ohio 1987) ("The liability of the trustee for . . . taxes results from his succession to the title of the debtor in possession, who, as an officer of the bankruptcy court, was clearly subject to such taxes under the provision of 28 U.S.C. § 1960." (quoting *Nicholas v. United States*, 384 U.S. 678 n. 27 (1966))). The 2005 amendment to 28 U.S.C. § 960 did not change subsection (a).

-14-

503(b)(1)(D). Section 503(b)(1)(D) is an exception to the requirement under § 503(a) that to be entitled to an allowed administrative expense claim, an entity[14] must file a timely request for payment of administrative expenses (or file a tardy request if permitted by the court for cause). Section 503(b)(1)(D) provides that governmental units are *not required* to file a request for payment of administrative tax claims of the type described § 503(b)(1)(B) or § 503(b)(1)(C). This exception was made for certain tax claims because 28 U.S.C. § 960(b) requires debtors and trustees to pay those taxes during the pendency of the bankruptcy case on or before the date due under nonbankruptcy law.[15] Such payment requirement on the part of the debtor and trustee under 28 U.S.C. § 960(b) to pay post-petition administrative expense taxes on or before the due date of the tax obviates the need for a an administrative expense filing requirement for the taxing authorities otherwise imposed by § 503(a) because the payment requirement is not dependent on the filing of an administrative expense tax claim.

Because § 503(b)(1)(D) excludes governmental units from having to file a request for payment of an administrative expense tax claim of the type described in § 503(b)(1)(B) or § 503(b)(1)(C) as a condition to allowance of the claim, and the trustee or debtor has the duty to pay the taxes when due, the trustee or debtor bears the initial burden to ascertain whether there are any administrative expense taxes of that type that need to be paid.[16] A debtor or trustee who is

---

[14] The Bankruptcy Code defines "entity" as including a person, estate, trust, governmental unit, and United States Trustee" and defines "person" as including an individual, partnership, and corporation" other than certain governmental units. §§ 101(15) and 101(41), respectively.

[15] *In re BH S & B Holdings LLC*, 435 B.R. 153, 161 (Bankr. S.D.N.Y. 2010) (The exception to the filing requirements under § 503 "is because 28 U.S.C. § 960(b) requires debtors to pay most taxes on or before when they are due under nonbankruptcy law while the bankruptcy case is pending.").

[16] *See In re Abraham Petroleum Corp.*, No. 09-05928, 2012 WL 2501130, at *4 (Bankr. D.P.R. June 28, 2012); *In re Halabu*, 501 B.R. 685, 693 (Bankr. E.D. Mich. 2012), supplemented, No. 11-59449, 2013 WL 780757 (Bankr. E.D. Mich. Mar. 1, 2013) quotes 4 *Collier on Bankruptcy* ¶ 503.02[3], at 503–11 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) as stating: "Subsection (b)(1)(D) puts the burden on the trustee to ascertain whether there are any administrative expense taxes and to have the amount of any such taxes determined." That language in Collier has since been revised to read: "*Arguably*, section 503(b)(1)(D) puts the burden on the trustee to ascertain whether there are any administrative expense

unaware of an administrative expense tax claim or the amount owed, or who in good faith disputes that administrative expense taxes are owed, could meet that burden, for example, by filing a motion to fix an administrative claims bar date, providing notice to taxing authorities with an opportunity to object.[17] The court would fix the bar date in the absence of an objection, or, if an objection were timely filed, the court would set a hearing. That would initiate a dialogue about the administrative expense tax claim to establish a procedure to resolve any disputes.

A debtor or trustee who is unaware of an administrative expense tax claim, or who in good faith disputes that administrative expense taxes are owed, could also meet that burden, for example, by filing a motion to disburse funds to creditors that does include payment of administrative expense taxes, and provide notice to taxing authorities of an objection deadline that specifically states that if the motion is granted the distribution will not include payment of any administrative expense taxes. That would shift the burden to the taxing authorities who receive notice to object if they assert payment of administrative expense taxes should be included in the distribution.

In this matter the County is a governmental unit, and its post-petition claim for 2018 Livestock Taxes is a claim for taxes of the type described in § 503(b)(1)(B) or § 503(b)(1)(C).[18]

---

taxes and to have the amount of any such taxes determined" (emphasis added). Collier on *Bankruptcy* ¶ 503.02[3], at 503–14. In this Court's view *Collier* got it right the first time. *Cf. Nicholas v. United States,* 384 U.S. 678 n. 27 (reviewing 28 U.S.C. § 960, and stating that "[i]n general, the trustee himself is under a duty to seek out and pay taxes accruing against the bankrupt estate during the bankruptcy itself.").

[17] Although such a bar date may contravene § 503(b)(1)(D), it nevertheless would be binding if imposed after notice and an opportunity to object because § 503(b)(1)(D) is not jurisdictional. *Cf. MOAC Mall Holdings LLC v. Transform Holdco LLC,* 598 U.S. 288, 143 S. Ct. 927, 929, 215 L. Ed. 2d 262 (2023) (holding that § 363(m) is not jurisdictional.

[18] Section 503(b)(1)(B)(i) requires payment as an administrative expense of "any tax . . . incurred by the estate, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both, except a tax of a kind specified in section 507(a)(8) of this title[.]" The exception in § 503(b)(1)(B)(i) is for tax claims "which must be treated as a prepetition administrative expense priority claim under section 507(a)(8)." 4 Collier on Bankruptcy, ¶ 503.07[1] (Richard Levin & Henry J. Sommer, eds. 16th ed.). "Thus, for a tax claim to be entitled to administrative expense priority [under § 503(b)(1)(B)] a court must determine that (1) the tax was 'incurred' by the estate; and (2) the tax claim is not a claim which must be treated as a prepetition priority claim under section 507(a)(8)." *Id. See also In re N. New England Tel. Operations LLC*, 504 B.R. 372, 379 (Bankr. S.D.N.Y. 2014) ("Section

-16-

The District Court held on appeal that the administrative claims bar date fixed by the Plan and order confirming the Plan did not bind the County. That is now law of the case. No separate administrative claims bar date order that would bind the County was sought or fixed by the Court. Accordingly, under § 503(b)(1)(D), the Liquidating Trustee had the burden to ascertain whether any 2018 Livestock Taxes should be paid as an administrative expense, and the County was not required to file of record in the bankruptcy case an administrative expense claim for post-petition livestock taxes incurred by the bankruptcy estate.

<u>The laches defense is not available to the Liquidating Trustee to bar<br>the County's administrative expense claim for 2018 Livestock Taxes</u>

The County asserts that a laches defense cannot be used to create a deadline for a governmental unit to file an administrative tax claim which, under § 503(b)(1)(D), the governmental unit is not required to file. Further, the County argues that the equitable doctrine of laches is unavailable as a defense to its administrative expense tax claim owed to a governmental unit because the County is enforcing a public right and protecting public interests. The Liquidating Trustee responds that the lack of any deadline for the County to file an administrative tax claim coupled with the County's egregious delay in this bankruptcy case is what makes the laches available as a defense to the County's claim.

The doctrine of laches as applied to claims made by a government has a long history. In general, laches does not apply to claims made by a government.[19] The policy reason laches is

_____

503(b)(1)(B) of the Code provides administrative priority for all taxes except for those specified under § 507(a)(8) that are 'incurred by the estate.'"), *aff'd sub nom. In re N. New England Tel. Operations, LLC*, No. 09-16365-CGM, 2014 WL 3952925 (S.D.N.Y. Aug. 12, 2014), *aff'd sub nom. In re N. New England Tel. Operations LLC*, 795 F.3d 343 (2d Cir. 2015).

[19] *See Illinois v. Kentucky*, 500 U.S. 380, 381(1991); *United States v. Kirkpatrick*, 22 U.S. 720, 723, 735 (1824). Although some courts have found exceptions to the general rule. See *Clearfield Trust Co. v. United States*, 318 U.S. 363, 369 (1943) (laches may be asserted against United States as drawee of commercial paper); *In re Santos*, 589 B.R. 413, 423 (Bankr. D. Colo. 2018) (courts have applied laches to public bodies when certain circumstances are present); *United States v. New Mexico State Univ.*, 2018

generally inapplicable to governmental units is because public rights, revenue, and property should be preserved and protected from injury or loss due to the negligence of public officers.[20] The government can only perform its public services through its agents; the enormity of government operations requires so many individuals acting on behalf of the government that it is not possible to oversee every detail and every act; and, if the laches doctrine could be applied to government transactions, the cost to the public could be enormous.[21]

Nonetheless, there are some circumstances where a laches defense may be used against a government claim. In 1976, the Tenth Circuit recognized that the strict rule that laches does not apply as a defense against a government claim might be relaxing.[22] The Tenth Circuit also determined that the question of whether laches applies in the circumstances of a particular case is primarily left to the sound discretion of the trial court.[23]

In 2005, the Second Circuit, relying on a decision by the Seventh Circuit, recognized "three main possibilities for when laches might apply against the United States":

> [T]here are three main possibilities for when laches might apply against the United States: first, 'that only the most egregious instances of laches can be used to abate a government suit'; second, 'to confine the doctrine to suits against the government in which ... there is no statute of limitations'; and third, 'to draw a line between government suits in which the government is seeking to enforce either on its own behalf or that of private parties what are in the nature of private rights, and government suits to enforce sovereign rights, and to allow laches as a defense in the former class of cases but not the latter.'[24]

---

WL 941702, at *3 (D. N.M. 2018) (holding that, despite that tradition, laches did apply against the EEOC as an agency enforcing a private, rather than public, right); *In re Sharpe*, 160 B.R. 614, 624–25 (Bankr. W.D. Mo. 1993) (IRS claim barred by laches after nine-year delay in collection effort).

[20] *See, e.g., Guar. Tr. Co. of New York v. United States*, 304 U.S. 126, 132 (1938).

[21] *United States v. Kirkpatrick*, 22 U.S. 720, 735-36 (1824).

[22] *Roberts v. Morton*, 549 F.2d 158, 163 (10th Cir. 1975).

[23] *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1338 (10th Cir. 1982).

[24] *Cayuga Indian Nation of N.Y. v. Pataki*, 413 F.3d 266, 278–79 (2nd Cir. 2005) (*quoting United States v. Admin. Enters., Inc.*, 46 F.3d 670, 673 (7th Cir. 1995).

The Liquidating Trustee urges that the laches defense is available to him because otherwise there would be no limitation on when the County could assert its administrative claim where, as here, the administrative claims bar date imposed by the Plan and order confirming the Plan does not apply to the County's administrative claim for post-petition 2018 Livestock Taxes. The Liquidating Trustee further contends that laches applies because of the egregious nature of the County's delay. This Court disagrees.

The exceptions that might allow a party to assert a laches defense against a governmental unit are not applicable here. The Liquidating Trustee was aware or should have been aware that the Debtor owned livestock in 2018 for which taxes were owed to the County. Section 503(b)(1)(D) together with 28 U.S.C. § 960 placed the initial burden on the Liquidating Trustee to ascertain the amount of administrative expense taxes to be paid to the County for 2018 Livestock Taxes. No bankruptcy court-imposed equitable laches limitation on when the County could assert a claim for 2018 Livestock Taxes is appropriate or necessary. There could be no unreasonable delay by the County in taking the first step by asserting a claim for payment of 2018 Livestock Taxes because the Liquidating Trustee, not the County, was required to act in the first instance to determine whether and in what amount administrative expense taxes were to be paid to the County. Further, by seeking payment of the 2018 Livestock Taxes, the County was not acting to benefit private parties or to assert something in the nature of private rights.

The Court therefore concludes that the equitable defense of laches is not available to the Liquidating Trustee as a defense to the County's claim for payment of 2018 Livestock Taxes as an administrative expense of the bankruptcy estate.

-19-

**C.**     **Assuming the laches defense is available to the Liquidating Trustee, whether the Liquidating Trustee established the required laches elements**

Even assuming the laches defense is available to the Liquidating Trustee, the Liquidating Trustee did not establish the elements of laches. To successfully use the affirmative defense of laches, the Liquidating Trustee must satisfy the following two elements: (1) lack of diligence by the party against whom the defense is asserted; and (2) prejudice to the party asserting the defense.[25] Both elements must be satisfied to successfully assert a laches defense.[26]

The Liquidating Trustee contends the County exhibited egregious lack of diligence in unreasonably delaying the assertion of its right to be paid for the 2018 Livestock Taxes and generally throughout the bankruptcy case. The County received a copy of the Plan, which fixed an administrative claim bar date, but did not object to the Plan. The County waited two years after the Plan was confirmed on June 14, 2018, to file of record in the bankruptcy case an application for payment of an administrative expense on June 12, 2020. That was long after the Liquidating Trustee sold the cattle in the summer of 2018, long after the 2018 Livestock Taxes were due, and more than a year after the Liquidating Trustee filed a motion to approve his settlement with MetLife on May 3, 2019. Further, the bar date for filing governmental unit proofs of claim lapsed without any amendments to the County's original proof of claim limited to pre-petition real estate taxes. In addition, even though the Plan proposed only to pay the County's claim secured by real

---

[25] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122, (2002)); *Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1091 (10th Cir. 2014); *In re Flanders*, No. AP 13-01456, 2015 WL 4641697, at *9 (10th Cir. BAP (Colo.) Aug. 5, 2015), *aff'd in part, remanded in part on other grounds*, 657 F. App'x 808 (10th Cir. 2016); *In re Kit Carson Home & Museum, Inc.*, No. 20-12130-T11, 2021 WL 955416, at *5 (Bankr. D.N.M. Mar. 12, 2021); *Pueblo of Jemez v. United States*, No. CIV 12-0800 JB\JHR, 2019 WL 1128359, at *3 (D.N.M. Mar. 12, 2019); *In re Templeton*, 538 B.R. 578, 592 (Bankr. N.D. Ala. 2015); *In re Project Homestead, Inc.*, 374 B.R. 193, 209 (Bankr. M.D.N.C. 2007).
[26] *See Ketonatural Pet Foods, Inc. v. Hill's Pet Nutrition, Inc.*, 756 F.Supp.3d 1128, 1152 (D. Kan. 2024) ("Delay, by itself . . . does not constitute laches and an actin generally will not be defeated by laches alone unless some prejudice has resulted therefrom to the rights or interests of the adverse party." (quoting *Cosgrove v. Young*, 230 Kan. 705, 719, 642 P.2d 75, 86 (1982))).

property and never mentioned taxes for personal property or administrative claims, the County did not object to confirmation of the Plan. The County also disregarded bankruptcy notices, putting them in a file without understanding them and without consulting counsel.

The County does not dispute the Liquidating Trustee's assertions regarding its general lack of diligence in the bankruptcy case but contends that such conduct is not relevant to whether the County's administrative expense claim for 2018 Livestock Taxes should be denied based on laches. The County argues that the doctrine of laches does not apply in the circumstances of this case, but even if it did, there was no unreasonable delay due solely to the County. The County contends that that the delay the Liquidating Trustee alleges is partially due to ancillary litigation the Liquidating Trustee pursued; that the Liquidating Trustee was aware of the County's administrative expense claim long before the County filed its motion for allowance of administrative expense claim; and that, after the Liquidating Trustee was aware of that claim, and he waited eight months to file an objection to the claim. The Liquidating Trustee counters that if he had not filed his Partial Objection to the County's administrative expense claim, the County would have delayed even longer in asserting its right to be paid for the 2018 Livestock Taxes.[27]

---

[27] *In re Halabu*, 501 B.R. 685, 692–95 (Bankr. E.D. Mich. 2012), *supplemented*, No. 11-59449, 2013 WL 780757 (Bankr. E.D. Mich. Mar. 1, 2013) ("Bankruptcy scholars have noted the peculiar situation created by § 503(b)(1)(D). For example, Collier's treatise on bankruptcy notes the following: Subsection (b)(1)(D) puts the burden on the trustee to ascertain whether there are any administrative expense taxes and to have the amount of any such taxes determined. It should be noted that subsection (b)(1)(D) does not abrogate the requirement of the preamble to section 503(b) that requires notice and a hearing before allowance of an administrative expense. It will be the trustee's responsibility, rather than the governmental unit's responsibility, to provide the notice and obtain the hearing. 4 *Collier on Bankruptcy* ¶ 503.02[3], at 503–11 to 503–12 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).") The delay in filing notice of this claim on the record might be due to the Liquidating Trustee waiting eight months from the date the County requested payment to file the Partial Objection.

<u>Lack of diligence</u>

Assuming the laches defense is available to the Liquidating Trustee, he has the burden of proving that the County delayed for an unreasonable amount of time in asserting its right to be paid an administrative expense for the 2018 Livestock Taxes. The Liquidating Trustee has not satisfied that burden.

The laches issue is not whether the County acted diligently throughout the bankruptcy case. The issue is whether it lacked diligence in the assertion of its administrative expense claim for 2018 Livestock Taxes. The Liquidating Trustee was aware or should have been aware in the summer of 2018 when the livestock was sold that the Debtor owed 2018 Livestock Taxes to the County. The County was not required to file of record an administrative expense claim for those taxes. In accordance with its standard operating procedures for taxpayers who are not debtors in a bankruptcy case, the County sent a tax bill in the amount of $126,257 for 2018 Livestock Taxes to the Debtor in the first week of November of 2018, which the United States Postal Service forwarded to the Liquidating Trustee. The County followed up by inquiring of the Liquidating Trustee by telephone about unpaid taxes, including the 2018 Livestock Taxes, and then, on March 25, 2019, followed up again by sending an email to the Liquidating Trustee that included a request for payment of the 2018 Livestock Taxes. Attached to the email, among other things, were documents supporting that request for payment. Nothing further was required of the County at that time with respect to its administrative expense claim for 2018 Livestock Taxes.

The burden was on the Liquidating Trustee to ascertain whether the 2018 Livestock Taxes should be paid as an administrative expense. The Liquidating Trustee did not do so before he filed his Partial Objection to the County's claims on November 22, 2019, based on his incorrect belief that the claim was barred by the administrative claim bar date fixed by the Plan and Order

-22-

confirming the Plan.[28] In these circumstances, the County did not lack diligence in asserting its administrative expense claim for 2018 Livestock Taxes.

Prejudice

Regarding the second prong of the laches defense, prejudice to the party asserting the defense, the Liquidating Trustee asserts he was prejudiced by the County's delay in asserting a claim for 2018 Livestock Taxes because if the County had filed a claim for the livestock taxes before he negotiated a settlement with MetLife, then the settlement would have resulted in MetLife reducing its secured claim by the amount of the County's claim for 2018 Livestock Taxes and increasing its nonpriority unsecured claim by that amount. That would have resulted a greater distribution to the nonpriority unsecured creditors.[29]

But the Liquidating Trustee was aware before he negotiated the settlement with MetLife in May 2019 that that County expected payment for the 2018 Livestock Taxes and of the amount the County claimed was due. The Liquidating Trustee had the burden to ascertain whether the 2018 Livestock Taxes should be paid as an administrative expense and to take that into account in negotiating the settlement. The Liquidating Trustee disregarded the County's requests for payment of the taxes in his negotiations with MetLife because he mistakenly believed the County's 2018 Livestock Tax claim was barred by the Plan and order confirming the Plan. The County's actions do not constitute prejudicial conduct by the County. The County did what it was required to do

---

[28] The Court is not suggesting that the Liquidating Trustee's delay in filing the Partial Objection was unreasonable. The Bankruptcy Court agreed with the Liquidating Trustee that the administrative claim bar date fixed by the Plan and order confirming the Plan was binding on the County. But the District Court ruled otherwise on appeal.

[29] A portion of the County's administrative claim requested in its motion for allowance of administrative expense was for prepetition 2017 livestock taxes. The Bankruptcy Court determined that the prepetition claims were time barred. That ruling was affirmed on appeal. The County's administrative expense claim at issue before the Court is based solely on the 2018 Livestock Taxes in the amount of $126,257.

prior to the negotiation of the settlement. Consequently, the Liquidating Trustee cannot successfully claim that any prejudice to nonpriority unsecured creditors resulting from the negotiated settlement with MetLife is properly attributable to the County.

## CONCLUSION

The Court concludes that the laches defense is not available to the Liquidating Trustee, but even if it is, the Liquidating Trustee has not satisfied either of the two requirements for the defense to bar the County's administrative claim for 2018 Livestock Taxes. The Liquidating Trustee did not object to the amount of the County's claim for 2018 Livestock Taxes. The objection to the claim was limited to barring the claim based on the administrative claim bar date in the Plan and order Confirming the Plan and under a laches defense. Because the District Court ruled on appeal that the Plan administrative claim bar date did not apply to the County's claim and this Court has denied the laches defense, the Court will allow the County's administrative expense claim for 2018 Livestock Taxes in the amount claimed.

The Court will enter a separate order consistent with this Memorandum Opinion.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: December 12, 2025

COPY TO: counsel of record